No. 13-1739

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellant,

vs.

ANGELA JOHNSON,

Appellee.

_____

*Appeal from the United States District Court
for the Northern District of Iowa
Honorable Mark W. Bennett, Judge*
_____

*BRIEF OF APPELLANT*
_____

C.J. WILLIAMS
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, IA  52401
(319) 363-6333
(319) 363-1990 (fax)
CJ.Williams@usdoj.gov

Appellate Case: 13-1739    Page: 1    Date Filed: 06/14/2013 Entry ID: 4045609

# SUMMARY OF THE CASE

This is a capital case. Defendant was tried, convicted, and sentenced to death for murdering five people, and her conviction and sentences were affirmed on appeal. In post-conviction relief litigation, however, the district court granted a new sentencing hearing after finding defendant's trial attorneys rendered ineffective assistance of counsel. The district court later entered an order, however, limiting the sentencing rehearing to the so-called selection phase, and holding it would not include the eligibility phase. The district court further concluded the government would therefore be barred from presenting evidence to prove the statutory aggravating factor of substantial planning and premeditation of the July 1993 murders because the original jury did not unanimously find that factor during the original eligibility phase.

The United States appeals the district court's order. The statute does not provide for partial capital sentencing hearings. Capital juries are to determine for itself whether aggravating factors exist which would justify the death penalty. The government

i

Appellate Case: 13-1739    Page: 2    Date Filed: 06/14/2013 Entry ID: 4045609

should not be barred from asserting and proving substantial planning and premeditation of the July 1993 murders because defendant was not acquitted of that aggravating factor at the original trial.

The government requests oral argument and, because of the complexity of this case and the legal issues raised, requests one-half hour for argument.

ii

Appellate Case: 13-1739    Page: 3    Date Filed: 06/14/2013 Entry ID: 4045609

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . vii

JURISDICTIONAL STATEMENT.. . . . . . . . . . . . . . . . . . . . . . 1

    The Decision Appealed. . . . . . . . . . . . . . . . . . . . . . . . . 1

    Jurisdiction of the Court Below.. . . . . . . . . . . . . . . . . . . . 1

    Jurisdiction of this Court Pursuant to 18 U.S.C. § 3731. . . . 1

    Jurisdiction of this Court Pursuant to Collateral Order
    Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Jurisdiction of this Court Pursuant to Writ of Mandamus. . . 9

STATEMENT OF THE ISSUE.. . . . . . . . . . . . . . . . . . . . . . . . 11

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . 12

    Nature of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Course of the Proceedings.. . . . . . . . . . . . . . . . . . . . . . 12

        Indictment and Pretrial Matters. . . . . . . . . . . . . . . . 12

        Trial and Appeal . . . . . . . . . . . . . . . . . . . . . . . . 13

        Habeas Litigation. . . . . . . . . . . . . . . . . . . . . . . . 14

iii

Appellate Case: 13-1739    Page: 4    Date Filed: 06/14/2013 Entry ID: 4045609

Post-Habeas Criminal Proceedings. . . . . . . . . . . . . . 16

Disposition Below. . . . . . . . . . . . . . . . . . . . . . . . . . 17

STATEMENT OF THE FACTS.. . . . . . . . . . . . . . . . . . . . . . 20

Drug Enterprise 1992-93. . . . . . . . . . . . . . . . . . . . 21

Honken Prosecution. . . . . . . . . . . . . . . . . . . . . . . 23

The Hunt for Nicholson. . . . . . . . . . . . . . . . . . . . . 23

The July 1993 Murders.. . . . . . . . . . . . . . . . . . . . . 24

Continuing Investigation. . . . . . . . . . . . . . . . . . . . 25

The November 1993 Murder. . . . . . . . . . . . . . . . . . 25

Continuation of Drug Enterprise.. . . . . . . . . . . . . . . 26

Murder Investigation.. . . . . . . . . . . . . . . . . . . . . . 28

Defendant Johnson's Indictment and Arrest. . . . . . . . . . 29

Discovery of the Bodies. . . . . . . . . . . . . . . . . . . . . 31

Guilt Phase of Trial. . . . . . . . . . . . . . . . . . . . . . . 31

Sentence Phase of Trial.. . . . . . . . . . . . . . . . . . . . 32

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . 34

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Appellate Case: 13-1739    Page: 5    Date Filed: 06/14/2013 Entry ID: 4045609

After Granting Defendant a New Capital Sentencing Hearing on Grounds That Trial Counsel Was Ineffective in Investigating and Presenting Mitigating Evidence, the District Court Erred in Ruling That the New Sentencing Rehearing Will be Limited to the "Selection Phase," so That the Newly-Impaneled Jury Will Not Make Any Determination Regarding Defendant's Eligibility for the Death Penalty, Including on the "Substantial Planning and Premeditation" Aggravating Factor as to Which the Original Jury Failed to Return a Unanimous Verdict With Regard to the July 1993 Murders.................... 36

    A.    Standard of Review...................... 37

    B.    The Court's Decision Deprives the Jury of the Ability to Decide Aggravating Factors it is Required to Weigh in Deciding Whether to Execute a Person. ...................... 37

    C.    The District Court's Remedial Discretion Under Section 2255 Does Not Permit it to Order a Partial Capital Sentencing Hearing in Contravention of the Statutory Language....................... 48

    D.    A District Court's Discretion to Bifurcate Presentation of Evidence in a Capital Sentencing Hearing Does Not Authorize the Creation of Multiple Sentencing Hearings....................... 51

    E.    Striking of the Statutory Aggravating Factor is not Constitutionally Required.................. 57

CONCLUSION............................................ 62

CERTIFICATE OF FILING AND SERVICE. ................. 63

Appellate Case: 13-1739   Page: 6   Date Filed: 06/14/2013 Entry ID: 4045609

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS. . . . . . . . . . . . . . . . . . . . . . 64

ADDENDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

vi

Appellate Case: 13-1739    Page: 7    Date Filed: 06/14/2013 Entry ID: 4045609

# TABLE OF AUTHORITIES

**Federal Cases**:                                                    **Page**

*Bobby v. Bies*, 556 U.S. 825 (2009). . . . . . . . . . . . . . . . . . . . . .  60

*Booth-El v. Nuth,* 140 F. Supp. 2d 495 (D. Md. 2001). . . . . . . . . .  55

*Central Microfilm Serv. Corp. v. Basic/Four Corp.*, 688 F.2d 1206
      (8th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*In re Cessna Distributing Antitrust Litigation,* 532 F.2d 64
      (8th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Cheny v. United States District Court,* 542 U.S. 367 (2004). . . . . . .  9

*Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978). . . . . . . . . . . .  8

*Julian v. Bartley,* 495 F.3d 487 (7th Cir. 2007).  . . . . . . . . . . . . .  48

*Knapp v. Cardwell,* 667 F.2d 1253 (9th Cir. 1982). . . . . . . . . . . .  58

*Poland v. Arizona,* 476 U.S. 147 (1986). . . . . . . . . . . . . . . . . . . .  58

*Ring v. Arizona,* 536 U.S. 584 (2002). . . . . . . . . . . . . . . . . . . . . .  46

*Sanabria v. United States,* 437 U.S. 54 (1978).  . . . . . . . . . . . . . .  6

*United States v. Acosta-Martinez,* 252 F.3d 13 (1st Cir. 2001). . . . .  7

*United States v. Allen,* 247 F.3d 741 (8th Cir. 2001). . . . . . . . . . .  37

*United States v. Barnette,* 390 F.3d 775 (4th Cir. 2004). . . . . . . .  40

Appellate Case: 13-1739     Page: 8     Date Filed: 06/14/2013 Entry ID: 4045609

*United States v. Basciano*, 763 F. Supp. 2d 303
  (E.D. N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 52, 57

*United States v. Bodkins*, No. 4:04CR70083, 2005 WL 1118158
  (W.D. Va. May 11, 2005). . . . . . . . . . . . . . . . . . . . . 53

*United States v. Bolden*, 545 F.3d 609 (8th Cir. 2008). . . 40, 52, 54

*United States v. Ceccolini*, 435 U.S. 268 (1978). . . . . . . . . . . . . . . 5

*United States v. Davis*, 912 F. Supp. 938 (E.D. La. 1996). . . . . . . 53

*United States v. DeCologero*, 364 F.3d 12 (1st Cir. 2004). . . . . . . . 5

*United States v. Delatorre*, 157 F.3d 1205 (10th Cir. 1998). . . . . 3, 4

*United States v. Fast*, 709 F.3d 712 (8th Cir. 2013). . . . . . . . . . 8, 9

*United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002). . . . . . . . 43

*United States v. Fell*, 360 F.3d 135 (2nd Cir. 2004). . . . . . . . . . . . 7

*United States v. Fell*, 531 F.3d 197 (2nd Cir. 2008). . . . . . . . . . . 55

*United States v. Green*, 407 F.3d 434 (1st Cir. 2005). . . . . . . . . . 43

*United States v. Henderson*, 485 F. Supp. 2d 831
  (S.D. Ohio 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Jackson*, 638 F. Supp. 2d 514
  (W.D. N.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States v. Johnson*, 555 U.S. 828 (2008). . . . . . . . . . . . . . 14

*United States v. Johnson*, 338 F.3d 918 (8th Cir. 2003). . . . . . . . 13

Appellate Case: 13-1739    Page: 9    Date Filed: 06/14/2013 Entry ID: 4045609

*United States v. Johnson,* 352 F.3d 339 (8th Cir. 2003). . . . . . . . 13

*United States v. Johnson,* 495 F.3d 951 (8th Cir. 2007). . . . . 13, 14

*United States v. Johnson,* 378 F. Supp. 2d 1051
(N.D. Iowa 2005). . . . . . . . . . . . . . . . . . . . . . . . 13, 54

*United States v. Johnson,* 860 F. Supp. 2d 663
(N.D. Iowa 2012). . . . . . . . . . . . . . . . . . . . . 14, 15, 49

*United States v. Johnson,* 900 F. Supp. 2d 949
(N.D. Iowa 2012). . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Lanier,* 520 U.S. 259 (1997). . . . . . . . . . . . . 43

*United States v. Lujan,* 603 F.3d 850 (10th Cir. 2010). . . . . . . . . . 2

*United States v. Mayhew,* 380 F. Supp. 2d 936
(S.D. Ohio 2005).. . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Morrison,* 449 U.S. 361 (1981).. . . . . . . . . . . . 48

*United States v. Moussaoui,* 382 F.3d 453 (4th Cir. 2004). . . . . . . 7

*United States v. Natson,* 444 F. Supp. 2d 1296 (M.D. Ga. 2006).. 52

*United States v. Pepin,* 514 F.3d 193 (2nd Cir. 2008). . . . . . . . . . . 2

*United States v. Rodriguez,* 581 F.3d 775 (8th Cir. 2009). . . . . . . 37

*United States v. Sablan,* 555 F. Supp. 2d 1205 (D. Colo. 2007). . 56

*United States v. Solomon,* No. 0 2007 WL 1228029
(W.D. Pa. Apr. 25, 2007). . . . . . . . . . . . . . . . . . . . . . 55

Appellate Case: 13-1739    Page: 10    Date Filed: 06/14/2013 Entry ID: 4045609

*United States v. Stitt*, 760 F. Supp. 2d 570 (E.D. Va. 2010).. . . . . 59

*United States v. Tebeau*, 713 F.3d 955 (8th Cir. 2013). . . . . . . . . 37

*United States v. Williams*, 400 F.3d 277 (5th Cir. 2005). . . . . . 9, 10

*United States v. Williams*, No. Cr-05-920, 2008 WL 4644830, at *12 (C.D. Cal. Oct. 15, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States v. Young*, 424 F.3d 499 (6th Cir. 2005). . . . . . . . 8, 10

*Will v. United States*, 389 U.S. 90 (1967). . . . . . . . . . . . . . . . . . . 9

## STATE CASES

*New Jersey v. Biegenwald*, 542 A.2d 442 (N.J. 1988).. . . . . . . . . 59

*Preston v. Secretary, Department of Corrections*, No. 6:08-cv-2085, 2012 WL 1549529 (M.D. Fla. May 1, 2012). . . . . . . . . . . . . . . . 58

## FEDERAL STATUTES

21 U.S.C. § 848. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

21 U.S.C. § 848(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 38

21 U.S.C. § 848(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41

21 U.S.C. § 848(g)-(o).. . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 49

21 U.S.C. § 848(h). . . . . . . . . . . . . . . . . . . . . . . . . 15, 39, 49, 61

21 U.S.C. § 848(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

21 U.S.C. § 848(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 61

Appellate Case: 13-1739   Page: 11   Date Filed: 06/14/2013 Entry ID: 4045609

21 U.S.C. § 848(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

21 U.S.C. § 848(n). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

21 U.S.C. § 848(p). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 50

21 U.S.C. § 848 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 3591. . . . . . . . . . . . . . . . . . . . . . . . . 17, 40, 42

18 U.S.C. § 3593. . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 42

18 U.S.C. § 3595. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

18 U.S.C. § 3731. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Pub. L. No. 107-273, div. B, tit. III, § 3004, 116 Stat.
1758 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.R. Rep. No. 107-685, § 3004 (2002). . . . . . . . . . . . . . . . . . 6

**MISCELLANEOUS**

Restatement (Second) of Judgments § 27 (1980). . . . . . . . . . . . 60

Appellate Case: 13-1739     Page: 12     Date Filed: 06/14/2013 Entry ID: 4045609

# JURISDICTIONAL STATEMENT

<u>The Decision Appealed</u>: The United States of America appeals the exclusion of evidence by the Honorable Mark W. Bennett, United States District Court Judge for the Northern District of Iowa. The order excluding evidence was filed on January 16, 2013, and the district court's order denying the government's motion to reconsider was filed on March 5, 2013.

<u>Jurisdiction of the Court Below</u>: The district court had jurisdiction over the federal prosecution of defendant pursuant to 18 United States Code, Section 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States.").

<u>Jurisdiction of this Court Pursuant to 18 U.S.C. § 3731</u>:

The government timely filed its notice of appeal on April 2, 2013. This Court has jurisdiction over this criminal appeal pursuant to 18 U.S.C. § 3731 (granting jurisdiction "to a court of appeals from a decision or order of a district court suppressing or excluding evidence"). In the capital context – and consistent with

1

Appellate Case: 13-1739    Page: 13    Date Filed: 06/14/2013 Entry ID: 4045609

the statute's explicit direction that its provisions be "liberally construed" to favor appeal in the absence of a constitutional bar – the courts of appeal have held that Section 3731's jurisdictional grant extends to orders excluding evidence at capital sentencing hearings. *See, e.g.,* United *States v. Lujan*, 603 F.3d 850, 852 (10th Cir. 2010) (finding order excluding evidence of uncharged murders in the sentencing hearing to establish "future dangerousness" aggravating factor appealable pursuant to Section 3731); *United States v. Pepin*, 514 F.3d 193, 198-202 & n.12 (2nd Cir. 2008) (finding order excluding evidence establishing the existence of "child abuse" as a non-statutory aggravating factor was appealable pursuant to Section 3731).

The district court unequivocally held that evidence of "substantial planning and premeditation" for the July 1993 murders "will not be admissible for the purpose of reopening the consideration of that 'statutory aggravating factor' as to those [ ]

2

murders." (DCcrD 951, at 21-22).[1] Although the district court later suggested in an email[2] that it "doubt[ed] that much of the evidence, if any, will be excluded," that only means the evidence might be admissible for some other permissible purpose, but not for the purpose of proving the statutory aggravating factor of substantial planning and premeditation of the July 1993 murders charged in the indictment.

In *United States v. Delatorre*, 157 F.3d 1205 (10th Cir. 1998), the Tenth Circuit Court of Appeals found the government had jurisdiction to appeal pursuant to Section 3731 when the district court suppressed the use of evidence for a particular purpose in a capital case. In *Delatorre*, the district court excluded evidence of

---

[1] Each of the following references is followed by the applicable page numbers:

"DCcrD" refers to the district court criminal docket in case number 01-CR-3046; and

"DCcvD" refers to the district court civil docket in case number 09-CV-3064.

"Tr." refers to the 2005 trial transcript in case number 01-CR-3046.

[2] Email of March 21, 2013, 3:03 PM, Addendum, at p. 7).

3

Appellate Case: 13-1739    Page: 15    Date Filed: 06/14/2013 Entry ID: 4045609

the defendant's participation in a murder "for the purpose of proving his guilt on the substantive elements of the crime," but "reserved ruling on whether the Government, which [sought] the death penalty against Delatorre for his role in another murder charged in the indictment, could introduce evidence of Garcia's murder at any penalty phase of trial to show future dangerousness." *Delatorre*, 157 F.3d at 1207. The defendant moved to dismiss the government's appeal, arguing there was no jurisdiction under § 3731 because "the district court's order [did] not suppress or exclude evidence of Delatorre's participation in Garcia's murder for all purposes, but only for the purpose of proving his guilt on substantive elements of the crimes . . .." 157 F.3d at 1208. The *Delatorre* Court rejected the defendant's argument. It reasoned:

> Delatorre effectively asks us to add to § 3731's plain language the requirement that an order suppressing or excluding evidence must do so for all purposes. Such a construction, however, would contravene not only § 3731's plain language, but also Congress' express desire to allow Government appeals from all pretrial

4

Appellate Case: 13-1739     Page: 16     Date Filed: 06/14/2013   Entry ID: 4045609

orders suppressing or excluding evidence in criminal proceedings.

*Id.* *See also United States v. DeCologero*, 364 F.3d 12, 22 (1ˢᵗ Cir. 2004) (holding appellate jurisdiction proper under § 3731 in RICO prosecution when district court barred submission of certain racketeering acts for the purpose of establishing a "pattern of racketeering," even though the evidence of the acts "might still be admissible for other purposes," concluding that "'exclusion' within the meaning of section 3731 need not be complete exclusion."); *cf. United States v. Ceccolini*, 435 U.S. 268, 271-72 (1978) (holding there was jurisdiction to review suppression of evidence under § 3731, even though the evidence would still be admissible for impeachment and other purposes).

Alternatively, jurisdiction lies in this Court from the appeal of an "order of a district court dismissing an indictment . . . or any part thereof . . .." 18 U.S.C. § 3731. Congress added the "any part" language to Section 3731 in 2002 in part to resolve a split in the circuit courts of appeal about whether the government could appeal

5

a district court's dismissal of racketeering acts from an indictment charging a "series" of racketeering acts. *See*; H.R. Rep. No. 107-685, § 3004 (2002). *c.f. Sanabria v. United States*, 437 U.S. 54, 69 n.23 (1978) (stating that Section 3731 appears to reflect Congress's intent "to authorize appeals from any order dismissing an indictment in whole or in part").

By holding that the government will not be permitted to assert as a statutory aggravating factor "substantial planning and premeditation" for the July 1993 murders, as properly charged in the indictment, the district court has effectively dismissed that part of the indictment. Absent the district court's order, the jury would have the opportunity to consider how, if established, that statutory aggravating factor would affect its evaluation of whether defendant should be executed. There are no reported cases where a court has altered the capital sentencing procedures as the district court has done in this case. When courts have stricken portions of a capital indictment in other contexts, however, courts have "liberally construed" Section 3731 to favor appeal. *See, e.g., United States v.*

6

*Moussaoui,* 382 F.3d 453, 463 (4ᵗʰ Cir. 2004) (order "dismissing the death notice" is appealable under a "liberal construction of the term 'dismissing'" in § 3731) (citing cases); *United States v. Fell,* 360 F.3d 135, 139 (2ⁿᵈ Cir. 2004) (finding order striking the death penalty appealable pursuant to Section 3731 because the government may appeal an order that "dismisses any part of a criminal indictment"); *United States v. Acosta-Martinez,* 252 F.3d 13, 16-17 (1ˢᵗ Cir. 2001) (finding an order striking the death penalty as a possible punishment was appealable pursuant to Section 3731 because the order "removed a discrete basis of criminal liability" and "materially altered the conduct of the trial" by "rendering inapplicable the FDPA.").

Jurisdiction of this Court Pursuant to Collateral Order Doctrine:

This Court also has jurisdiction to review the district court's order under the collateral order doctrine. This doctrine provides that "prejudgment appellate review is allowed in a criminal case for trial court orders which (1) conclusively determine the disputed

7

Appellate Case: 13-1739    Page: 19    Date Filed: 06/14/2013 Entry ID: 4045609

question, (2) resolve an important issue completely separate from the merits of the action, and (3) are effectively unreviewable on appeal from final judgment." *United States v. Fast*, 709 F.3d 712, 718 (8th Cir. 2013) (citation and quotation marks omitted); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468-69 (1978) (setting forth standard). Here, the district court's order conclusively determined the scope of the sentencing hearing and what aggravating factors the jury can consider, resolved important issues separate from the merits, and is unreviewable on appeal from final judgment. Where district courts have similarly attempted to reformulate the jury selection and hearing procedures of the parallel Federal Death Penalty Act ("FDPA") so that a non-death penalty qualified jury would be empaneled to hear the guilt-innocence phase of a capital trial and a different, death-qualified jury would be empaneled for the sentencing hearing, courts of appeal have granted review pursuant to the collateral order doctrine. *See, e.g., United States v. Young*, 424 F.3d 499, 503-504 (6th Cir. 2005) ("appellate jurisdiction exists over this matter

8

Appellate Case: 13-1739     Page: 20     Date Filed: 06/14/2013 Entry ID: 4045609

whether under the collateral order exception or as a request for mandamus relief."); *United States v. Williams*, 400 F.3d 277, 280-81 (5th Cir. 2005) (finding district court's separate-jury order "satisfies all three requirements of the collateral order doctrine").

Jurisdiction of this Court Pursuant to Writ of Mandamus:

Finally, this Court has jurisdiction over this matter pursuant to mandamus review. Mandamus review is appropriate in this case because the "district court exceed[ed] 'the sphere of its discretionary power.'" *In re Cessna Distrib. Antitrust Litig.*, 532 F.2d 64, 68 (8th Cir. 1976) (quoting *Will v. United States*, 389 U.S. 90, 104 (1967)). A writ of mandamus is appropriate if there is (1) "no other adequate means to attain the relief" requested; (2) the party's "right to issuance of the writ is 'clear and indisputable,'" and (3) the issuing court is "satisfied that the writ is appropriate under the circumstances." *Cheny v. United States Dist. Court*, 542 U.S. 367, 380-81 (2004); accord *United States v. Fast*, 709 F.3d 712, 718 (8th Cir. 2013) (mandamus in criminal case). "Other factors which bear on the appropriateness of mandamus review include the need to

9

correct error which is likely to recur and to provide guidelines for the resolution of novel and important questions." *Central Microfilm Serv. Corp. v. Basic/Four Corp.*, 688 F.2d 1206, 1212 (8th Cir. 1982); *see also Young*, 424 F.3d at 503-504 (finding alternatively that appellate jurisdiction existed over matter "as a request for mandamus relief"); *Williams*, 400 F.3d at 280-81 (finding "mandamus jurisdiction would exist" to review district court's separate-jury order).  The government will be unable to seek review of this decision after trial because, if the jury does not unanimously recommend death, double jeopardy would bar retrial.

10

Appellate Case: 13-1739    Page: 22    Date Filed: 06/14/2013 Entry ID: 4045609

## STATEMENT OF THE ISSUE

***Whether, After Granting Defendant a New Capital Sentencing Hearing on Grounds That Trial Counsel Was Ineffective in Investigating and Presenting Mitigating Evidence, the District Court Erred in Ruling That the New Sentencing Rehearing Will be Limited to the "Selection Phase," so That the Newly-Impaneled Jury Will Not Make Any Determination Regarding Defendant's Eligibility for the Death Penalty, Including on the "Substantial Planning and Premeditation" Aggravating Factor as to Which the Original Jury Failed to Return a Unanimous Verdict With Regard to the July 1993 Murders.***

*Poland v. Arizona*, 476 U.S. 147 (1986)

*United States v. Bolden*, 545 F.3d 609 (8th Cir. 2008)

*United States v. Green*, 407 F.3d 434 (1st Cir. 2005)

Title 21, United States Code, Section 848(g) - (o)

11

**Nature of the Case**

The United States appeals an order restricting the scope of, and suppressing evidence admissible during, a capital sentencing rehearing.

**Course of the Proceedings**

Indictment and Pretrial Matters

On August 30, 2001, a grand jury returned an indictment against defendant charging her with, inter alia, murdering five people in furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(e). (DCcrD 1). Defendant assisted in murdering four people in July 1993 (the "July 1993 murders"), and a fifth person in November 1993. (*Id.*) On April 25, 2002, the United States filed a notice of intent to seek the death penalty. (DCcrD 49). On August 13, 2002, the district court entered an order suppressing evidence. (DCcrD 95). The United States appealed and this Court reversed the district court, remanding the

12

Appellate Case: 13-1739    Page: 24    Date Filed: 06/14/2013 Entry ID: 4045609

case for trial.  *United States v. Johnson*, 338 F.3d 918 (8th Cir. 2003); *United States v. Johnson*, 352 F.3d 339 (8th Cir. 2003).

Trial and Appeal

On May 5, 2005, defendant proceeded to trial.  (DCcrD 467). On May 24, 2005, the jury returned guilty verdicts on all counts, and the matter proceeding to a capital sentencing hearing.  (DCcrD 527).  Over the government's objection, the district court ordered presentation of evidence to be bifurcated during the sentencing hearing.  *United States v. Johnson*, 378 F. Supp.2d 1051, 1056 (N.D. Iowa 2005).  On May 31, 2005, the jury found defendant eligible for the death penalty.  (DCcrD 545).  On June 21, 2005, the jury returned a verdict finding defendant should be sentenced to death for four of the five murders.  (DCcrD 593).

Defendant appealed her conviction and sentences.  This Court affirmed her convictions and sentences.  *United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007).  This Court found that the convictions for murders in furtherance of a drug conspiracy in counts 1 through 5 of the indictment were, however, multiplicitious of

13

defendant's convictions for murders in furtherance of a Continuing Criminal Enterprise ("CCE") in counts 6 through 10. *Johnson*, 495 F.3d at 980-81. This Court remanded the case to the district court for an order vacating the convictions on counts 1 through 5. *Johnson*, 495 F.3d at 981. On October 6, 2008, the United States Supreme Court denied defendant's petition for a writ of certiorari. *United States v. Johnson*, 555 U.S. 828 (2008). On June 12, 2009, the district court entered an amended judgment, vacating the convictions on counts 1 through 5 of the indictment. (DCcrD 777).

Habeas Litigation

On October 5, 2009, defendant filed a petition seeking habeas relief, pursuant to 28 U.S.C. § 2255. (DCcvD 1). On March 22, 2012, the district court entered an order granting in part and denying in part defendant's petition. (DCcvD 377; *United States v. Johnson*, 860 F. Supp.2d 663 (N.D. Iowa 2012)). The district court found defendant's trial counsel rendered ineffective assistance of counsel to defendant with regard to 20 of defendant's claims, and found she suffered prejudice on four of those grounds. *Johnson*,

14

Appellate Case: 13-1739    Page: 26    Date Filed: 06/14/2013 Entry ID: 4045609

860 F. Supp.2d at 915-918.  All four grounds where the district court found defendant was prejudiced arose in relation to her attorneys' alleged ineffective presentation of mitigation evidence. *Id.*

The district court thus denied defendant's petition with regard to claims regarding the determination of her guilt, and held her "convictions of five counts of 'murder in furtherance of a CCE,' in Counts 6 through 10 of the Indictment . . . shall stand . . .." *Johnson*, 860 F. Supp.2d at 919.  The court held, however, "the Amended Judgment . . . imposing a sentence of life imprisonment on Count 6 and sentences of death on Counts 7, 8, 9 and 10 on Johnson is vacated . . .." *Id.*  The court gave the government 60 days "to notify the court and the petitioner whether it will demand a new hearing, pursuant to 21 U.S.C. § 848(g) - (o) (2005), before the court or a jury, to determine the penalty for Johnson's convictions or will, instead, withdraw the notice of intent to seek the death penalty, filed pursuant to 21 U.S.C. § 848(h) (2005), and allow the court to set a hearing to impose sentences of life imprisonment

15

without parole, pursuant to 21 U.S.C. § 848(p) (2005), on the convictions on Counts 6 through 10." *Id.*

On June 18, 2012, the United States filed a timely notice demanding "a new hearing, pursuant to 21 U.S.C. § 848(g) - (o) (2005), before a jury, to determine the penalty" for defendant's convictions. (DCcvD 383).

Post-Habeas Criminal Proceedings

On June 19, 2012, the district court entered an order appointing counsel and setting "[a] new hearing before a jury, pursuant to 21 U.S.C. § 848(g)-(o), . . ." to begin on June 3, 2013. (DCcrD 846, at 2).

On October 1, 2012, the United States filed a Third Amended Notice of Intent to Seek the Death Penalty. (DCcrD 879).

On October 25, 2012, in ruling on a defense motion, the district court held that the new hearing would be conducted pursuant to the provisions of the Anti-Drug Abuse Act ("ADAA"), 21 U.S.C. § 848 et seq., rather than pursuant to the FDPA, 18 U.S.C.

16

Appellate Case: 13-1739     Page: 28     Date Filed: 06/14/2013 Entry ID: 4045609

§ 3591 et seq.  *United States v. Johnson*, 900 F. Supp.2d 949, 953-54 (N.D. Iowa 2012).

On November 1, 2012, defendant filed a Motion to Dismiss Certain Statutory and Non-Statutory Aggravating Factors From the Government's Third Amended Notice Of Intent to Seek the Death Penalty ("Motion to Dismiss").  (DCcrD 906).

**<u>Disposition Below</u>**

On January 16, 2013, the district court entered an order on defendant's Motion to Dismiss.  (DCcrD 951).  The district court held, inter alia, that "the 'penalty retrial' here is properly limited to a retrial of the 'penalty phase,'[3] involving the determination of the existence of 'non-statutory aggravating factors' and 'mitigating

---

[3]  Courts variably refer to the portion of a bifurcated capital sentencing hearing after the jury has determined the defendant is eligible for the death penalty as a "penalty" phase or "selection" phase.  The terminology can be confusing because courts will also often refer to the capital sentencing hearing as the "penalty trial" or "penalty phase of the trial" or "penalty hearing," as distinguished from the "guilt" or "merits" phase of the capital trial.  To avoid this confusion, the government will consistently refer to the portion of a bifurcated capital sentencing hearing after the jury determined eligibility as the "selection" phase.

17

factors' by the new jury and the new jury's weighing of the 'statutory aggravating factors' found by the original jury with the 'non-statutory aggravating factors" found by the new jury against the 'mitigating factors' found by the new jury." (DCcrD 951, at 13-14). The court went on to hold, in consequence, that the jury may not consider statutory aggravating factors not found by the original jury – in this case, the aggravating factor of substantial planning and premeditation in relation to the July 1993 murders. (DCcrD 951, at 19). The district court further held the government is barred from presenting any evidence that would support that factor.

> In this case, the obvious exception to the use of evidence from the original trial or live testimony is that any evidence of "substantial planning and premeditation" relating to any of the CCE murders other than the murder of Terry DeGeus in Count 10 will not be admissible for the purpose of reopening the consideration of that "statutory aggravating factor" as to those other murders. Admitting trial evidence, or any other evidence, of "substantial planning and premeditation" for that purpose would be unfairly prejudicial, where that "statutory aggravating factor" is not properly at issue as to those Counts in the light of the standing "eligibility phase" verdicts.

18

Appellate Case: 13-1739     Page: 30     Date Filed: 06/14/2013 Entry ID: 4045609

(DCcrD 951, at 21-22).

On February 15, 2013, the United States filed a motion asking the district court to reconsider part of its order of January 16, 2013. (DCcrD 966). In particular, the United States requested the district court reverse its ruling that the sentencing rehearing would only involve the selection phase of the sentencing hearing, which ruling both barred the government from presenting evidence, and the jury from considering as a statutory aggravating factor, that defendant engaged in substantial planning and premeditation in relation to the July 1993 murders. *Id.* The government requested, in the alternative, that the court specifically identify what evidence the government would be barred from presenting.

On March 5, 2013, the district court entered an order denying the government's Motion to Reconsider "in its entirety." (DCcrD 973, at 4).

The court later instructed defendant in an email to file a motion in limine identifying the evidence regarding substantial planning and premeditation of the July 1993 murders defendant

19

believed would be inadmissible pursuant to the Court's January 16, 2013 order. (Email date March 6, 2013, at 8:23 AM, Addendum, at p. 1). On March 15, 2013, defendant filed a motion in limine in which she identified a long list of evidence she believed was inadmissible. (DCcrD 975, 984). The government filed a timely resistance to the motion in limine. (DCcrD 991). In a subsequent email, the district court indicated that if the United States appealed its January 16, 2013, order, the district court would not rule on the pending motion in limine. (Email dated March 22, 2013, at 12:17 PM, Addendum, at p. 6).

On April 2, 2013, the government filed a timely notice of appeal. (DCcrD 1017). The district court has not ruled on the pending motion in limine.

<div align="center">

**STATEMENT OF THE FACTS**

</div>

Defendant Angela Johnson was a drug dealer, and became the girlfriend and partner of drug kingpin Dustin Honken in early 1993. After police arrested Honken on drug charges, defendant assisted him in murdering witnesses to enable the drug enterprise to

<div align="center">20</div>

Appellate Case: 13-1739    Page: 32    Date Filed: 06/14/2013 Entry ID: 4045609

continue.  Defendant purchased the murder weapon, helped track down the government's informant and used a ruse to gain entry into the home where the informant was staying with an innocent woman and her two little girls.  Defendant helped Honken bind and gag the informant and the woman.  Defendant and Honken took them and the children to a remote woods where Honken shot them all.  Three months later defendant lured Honken's only other dealer to an abandoned farm so Honken could murder him before he turned informant.  The authorities discovered the bodies seven years later after defendant drew a map to their location in a failed effort to have another inmate claim responsibility for the murders.

Drug Enterprise 1992-93

Beginning about 1992, Dustin Honken and his best friend, Tim Cutkomp, began manufacturing methamphetamine in Arizona. (Tr. 349-51, 838-39).  Honken transported or had others transport the methamphetamine to Mason City, Iowa.  (Tr. 847-49).  Honken distributed methamphetamine to only two customers, Greg Nicholson and Terry DeGeus.  (Tr. 99-100, 847).  Nicholson and

21

DeGeus had their own drug customers. (Tr. 66, 277, 851). Among DeGeus's customers was his girlfriend, defendant Angela Johnson. (Tr. 271-282, 570, 857).

In early 1993, during one of Honken's trips to Mason City, DeGeus sent defendant to Honken to deliver drug proceeds or obtain methamphetamine. (Tr. 279, 570). Defendant told Honken that DeGeus was using too much methamphetamine, she knew more customers, and Honken should begin delivering methamphetamine directly to her. (Tr. 857-58). That night, Honken and defendant began a romantic relationship, and within six months defendant was pregnant with Honken's child. (Tr. 589-90).

In March 1993, officers made a controlled buy from Nicholson. (Tr. 52-54). Nicholson decided to cooperate. (Tr. 64). On March 21, 1993, officers arranged a recorded meeting between Nicholson and Honken, during which Nicholson delivered drug proceeds to Honken and discussed past and future deliveries of

22

Appellate Case: 13-1739    Page: 34    Date Filed: 06/14/2013 Entry ID: 4045609

methamphetamine.  (Tr. 67-79).  Honken was arrested when he left the meeting.  (Tr. 79-81).

The Hunt for Nicholson

Honken Prosecution

In April 1993, a federal grand jury indicted Honken for conspiracy to distribute methamphetamine based on Nicholson's cooperation and grand jury testimony.  (Tr. 93-102, 172, 222, 232).  Honken was released on bond pending trial.  (Tr. 168-69).  On June 8, 1993, Honken notified the court he intended to plead guilty.  (Tr. 175, 223).  A plea hearing was scheduled for July 30, 1993.  (Tr. 175, 224).

The Hunt for Nicholson

During June and July, Honken and defendant repeatedly asked defendant's best friend, Christi Gaubatz, to babysit defendant's daughter and borrowed Gaubatz's car, telling Gaubatz they were looking for Nicholson.  (Tr. 563, 580-83, 871).  In mid-July 1993, Nicholson had met Lori Duncan and began staying at her home shortly thereafter.  (Tr. 439-41, 607).  Duncan was a

23

Appellate Case: 13-1739    Page: 35    Date Filed: 06/14/2013 Entry ID: 4045609

single, working mother of two girls, Kandi (age 10) and Amber (age 6). (Tr. 452-54).

On June 30, 1993, defendant obtained a permit to purchase a handgun. (Tr. 402-05). On July 7, 1993, defendant purchased a semi-automatic 9mm assault pistol at a pawn shop in Waterloo, an hour's drive from her home. (Tr. 407-09).

The July 1993 Murders

On the night of July 24, 1993, defendant again asked Gaubatz to watch her daughter and borrowed Gaubatz's car so defendant and Honken could hunt for Nicholson. (Tr. 585-86). This was the last time they did so. (Tr. 585, 588). Defendant and Honken did not come home until near dawn. (Tr. 586).

On July 25, 1993, Nicholson, Lori Duncan, and Duncan's two children were discovered missing. (Tr. 458).

Five days later, on July 30, 1993, Honken appeared for his plea hearing but suddenly refused to plead guilty. (Tr. 175, 224). He told the prosecutor the case against him was not as strong as the government believed. (Tr. 225). Honken later gave his attorney

24

a videotape showing Nicholson exonerating Honken. (Tr. 224-32). Honken's attorney never showed the tape to the government, and years later returned it to Honken; it was never seen again. (Tr. 233-34).

Continuing Investigation

Not until August did the government learn Nicholson disappeared. (Tr. 179). The government continued its drug investigation, now focusing on Honken's only other customer, Terry DeGeus, defendant's former boyfriend. (Tr. 180-84).

On October 27, 1993, defendant and DeGeus's drug associate, Aaron Ryerson, were questioned before the grand jury about whether there was a drug association between Honken and DeGeus. (Tr. 180-84, 285). Afterwards, Ryerson told DeGeus he was questioned about Honken and DeGeus. (Tr. 287-88). DeGeus called defendant and reported it to her. (Id.)

The November 1993 Murder

Nine days later, on November 5, 1993, DeGeus disappeared. (Tr. 499). DeGeus dropped his daughter off at his mother's house

25

Appellate Case: 13-1739    Page: 37    Date Filed: 06/14/2013 Entry ID: 4045609

that night, telling them he was going to meet defendant. (Tr. 500-01, 508-09). DeGeus said he would return to pick up his daughter later that evening, but he never returned. (Tr. 501, 510-12). When DeGeus's family and police officers later questioned defendant about DeGeus, she gave conflicting statements, telling some she never saw DeGeus that night, while admitting to others she saw him but he left on his own after they talked. (Tr. 501-02, 513, 522-23, 541-45).

Continuation of Drug Enterprise

In March 1995, the court dismissed the 1993 federal drug case against Honken for lack of prosecution. (Tr. 185-86). Meanwhile, Honken, Johnson, and others continued the methamphetamine manufacturing operation. (Tr. 575-77, 664-68, 868-71, 884-86, 891-94). An undercover investigation resulted in a search warrant at Honken's house. (Tr. 746, 774-75). Officers seized a methamphetamine laboratory, chemicals, and equipment. (Tr. 747-62, 776-92). In April 1996, the federal government brought drug charges against Honken and Cutkomp. (Tr. 799).

26

Appellate Case: 13-1739    Page: 38    Date Filed: 06/14/2013 Entry ID: 4045609

While the court released Cutkomp pending trial, it restricted Honken to home confinement, with work release, and subjected him to electronic monitoring. (Tr. 800-02).

Honken, goaded by defendant, immediately began to plot the murder of a government informant and police officers, and the destruction of evidence. (Tr. 908-10, 914-15, 929). Cutkomp, disturbed by these plans, decided to cooperate with the government. (Tr. 803). Cutkomp told officers of Honken's and defendant's plans for killing the government informant and officers. (Tr. 908-10). Cutkomp surreptitiously recorded hours of conversations with Honken, during which Honken discussed the 1993 drug charges, made vague references to eliminating witnesses in 1993, and recounted his plans for evading the current charges by killing witnesses and officers. (Tr. 915-38).

Based on these recordings, the court revoked Honken's pretrial release and detained him pending trial. (Tr. 805-06, 938). Honken pleaded guilty to the drug charges in 1997 and was sentenced to prison. (Tr. 806-07).

27

Appellate Case: 13-1739     Page: 39     Date Filed: 06/14/2013 Entry ID: 4045609

<u>Murder Investigation</u>

In 1999, officers renewed the investigation into the disappearances of Nicholson, the Duncan family, and DeGeus. (Tr. 1077). In 2000, Gaubatz decided to cooperate. (Tr. 617).

Gaubatz told officers that, in the fall of 1993, she found a large black handgun in a closet in her home. (Tr. 599-600). She confronted defendant about the gun, believing defendant likely stored it there. (Tr. 601). Defendant retrieved the gun and told Gaubatz not to worry about it as Honken would take care of it. (<u>Id.</u>).

Gaubatz also told officers that, at some point in 1994, defendant confessed to her. (Tr. 606). Defendant told Gaubatz she and Honken had tracked down Nicholson in the summer of 1993 and found him staying with the Duncan family. (Tr. 607). Defendant told Gaubatz she gained entry into the Duncan home by posing as a lost saleslady. (<u>Id.</u>). Once defendant got inside the home, Honken followed. (<u>Id.</u>). Honken made Nicholson give a videotaped statement exonerating Honken. (Tr. 608). Defendant

28

and Honken then took Nicholson and the Duncan family to some woods where Honken shot them all. (Tr. 608-10). Defendant told Gaubatz they were all buried in some woods, but gave no further description of the location. (Tr. 610).

Defendant also admitted to Gaubatz she lured DeGeus to a remote location where Honken gunned him down and beat him with a bat. (Tr. 611-14). Again, defendant did not provide Gaubatz with the location of the body. (Tr. 614).

Defendant Johnson's Indictment and Arrest

A federal grand jury indicted defendant on July 26, 2000, charging her with the murders of witnesses. On July 30, 2000, officers arrested defendant and took her to the Benton County Jail. (Tr. 1113-15). Defendant became close to her cell-mate and shared a lot of information with her about the murders. (Tr. 1299). Defendant told the cell-mate that Honken and defendant were looking for Nicholson because he had testified against Honken, and they found Nicholson at his girlfriend's home. (Tr. 1304-05). Defendant told the cell-mate that Honken had a weapon when they

29

went to the home and the girlfriend's two girls were there. (Tr. 1307). Defendant told her cell-mate that defendant "took her out," a reference to Lori Duncan that the cell-mate interpreted as meaning defendant killed her. (Tr. 1306). Defendant told the cell-mate that the bodies were buried. (Tr. 1312).

While in the jail, defendant also had indirect contact with a male inmate. Defendant confided in him about her involvement in the murders. He convinced defendant he was connected to the Mob, he could find a prisoner serving a life-term who would confess to the crime, and all he needed was evidence the other inmate could provide to the police to convince them the inmate had committed the murders. (Tr. 1218-20). Defendant ultimately agreed to the plan, providing the inmate with maps to the location of the bodies, along with descriptions of how the victims were murdered and buried. (Tr. 1221-22). The inmate provided this information to the government. (Tr. 1222).

30

Appellate Case: 13-1739   Page: 42   Date Filed: 06/14/2013 Entry ID: 4045609

## Discovery of the Bodies

Using the maps defendant drew, in the fall of 2000, officers located the bodies of all the victims. (Tr. 1578-80). Nicholson and the Duncan family were found in a single grave, located in a wooded area outside Mason City. (Id.). Nicholson and Lori Duncan were found bound and gagged, each shot multiple times including once in the head. (Id.). Officers found the two little girls in the bottom of the grave; each girl had a single bullet hole in the back of her head. (Id.).

Officers found DeGeus's body a few miles away, in a farm field behind an abandoned house. (Tr. 1546-77, 1710-30). He was face-down in a shallow grave. (Id.). He had multiple gunshot wounds, and his skull was fractured into scores of pieces such that the forensic anthropologist was unable to reconstruct his skull. (Tr. 2056-59).

## Guilt Phase of Trial

The jury found defendant guilty of each of the 10 murder counts. (Verdict, DCcrD 527).

31

Appellate Case: 13-1739    Page: 43    Date Filed: 06/14/2013 Entry ID: 4045609

<u>Sentence Phase of Trial</u>

Over the government's objection, the district court bifurcated the presentation of evidence during the sentencing portion of the trial into "eligibility" and "selection" phases. The eligibility phase consisted only of argument by counsel based on the evidence admitted during the merit's phase. The government argued defendant was eligible for the death penalty because she had the requisite intent and because it proved at least one of the following statutory aggravating factors: 1) the murders showed substantial planning and premeditation; 2) the adult victims suffered substantial abuse, and; 3) the child victims were vulnerable. (Tr. 2458-2504).

The eligibility phase took place on May 31, 2005, and the jury returned its verdict that day, finding defendant eligible for the death penalty. (Tr. 2531-32). The jury unanimously found substantial planning and premeditation with respect to DeGeus's November 1993 murder, but did not unanimously find substantial planning and premeditation as to the July 1993 murders of Greg

32

Nicholson and Lori Ducan and her children.  (Verdict, DCcrD 545).

The jury unanimously found the other statutory aggravating factors

(the adults suffered substantial physical abuse and the children

were vulnerable victims).  (Verdict, DCcrD 545).

The selection phase began on May 31, 2005, and lasted until

June 21, 2005.  The government proved defendant continued to

distribute methamphetamine after Honken went to prison in 1998

and plotted to kidnap a drug dealer who owed her money.  (Tr.

2701-72).  The government also presented testimony from the

victims' family members.  (Tr. 2873-2965).  The government argued

the evidence proved additional aggravating factors calling for

imposition of the death penalty.  Defendant presented evidence

during this phase of trial, including testimony from three experts,

family members, and friends, arguing the evidence supported the

existence of many mitigating factors.  (Tr. 2966-3927).

On June 21, 2005, the jury returned a death penalty verdict

for counts 2 through 5 and 7 through 10, for the murders of the

33

Duncan family and DeGeus, and a life imprisonment verdict for counts 1 and 6, regarding Nicholson's murder.  (DCcrD 593).

## SUMMARY OF THE ARGUMENT

The district court erred when it held the sentencing rehearing will only consist of the so-called "selection" phase and not the "eligibility" phase.  A jury charged with the heavy burden of determining whether a defendant should die is allowed, and required, under the statute to determine both whether a defendant is eligible for the death penalty and whether death is the appropriate punishment.  The district court's order would bar the jury from being able to determine for itself whether the evidence supports the finding of statutory aggravating factors which would make defendant eligible for the death penalty.  Instead, the new jury would be bound to statutory aggravating factors found by the prior jury.  On the other hand, the new jury would be barred from considering evidence for the purpose of establishing the statutory aggravating factor of substantial planning and premeditation of the

34

Appellate Case: 13-1739     Page: 46     Date Filed: 06/14/2013 Entry ID: 4045609

July 1993 murders because the original jury did not unanimously find that aggravating factor.

The district court's order is contrary to the statutory language which provides for a single sentencing hearing, not separate hearings on eligibility and selection. Although courts have discretion to fashion remedies when a defendant is denied effective assistance of counsel, that discretion does not extend to creating new capital sentencing procedures inconsistent with the statutory procedures. Similarly, although courts may bifurcate the presentation of evidence during a capital hearing, they may not rewrite the statute to create two separate sentencing hearings. Further, the court's order is not compelled by constitutional double jeopardy or issue preclusion concerns because defendant was never acquitted of the statutory aggravating factor of substantial planning and premeditation of the July 1993 murders. The court's order, however, has the effect of striking a statutory aggravating factor, properly alleged in the indictment, from consideration at the

35

Appellate Case: 13-1739    Page: 47    Date Filed: 06/14/2013 Entry ID: 4045609

hearing as if defendant had been acquitted of that statutory aggravating factor.

This Court should reverse the district court's order and require a complete new sentencing hearing where the jury responsible for determining whether defendant should live or die is also permitted to decide for itself whether the evidence supports both statutory and non-statutory aggravating factors.

## ARGUMENT

***After Granting Defendant a New Capital Sentencing Hearing on Grounds That Trial Counsel Was Ineffective in Investigating and Presenting Mitigating Evidence, the District Court Erred in Ruling That the New Sentencing Rehearing Will be Limited to the "Selection Phase," so That the Newly-Impaneled Jury Will Not Make Any Determination Regarding Defendant's Eligibility for the Death Penalty, Including on the "Substantial Planning and Premeditation" Aggravating Factor as to Which the Original Jury Failed to Return a Unanimous Verdict With Regard to the July 1993 Murders.***

Upon conviction of a capital offense, the statute requires a defendant's sentencing hearing consist of a determination by the same jury that the defendant is eligible for the death penalty, and a determination that the death penalty is the appropriate sentence.

36

Appellate Case: 13-1739    Page: 48    Date Filed: 06/14/2013 Entry ID: 4045609

When a district court reverses a death sentence and orders a new sentencing hearing, a full hearing is required, including a determination of the defendant's eligibility. The district court erred when it held there would only be a partial sentencing hearing and that the government was restricted in the presentation of evidence of statutory aggravating factors establishing defendant's eligibility for the death penalty.

### A. Standard of Review

This Court reviews de novo questions of statutory interpretation. *United States v. Tebeau*, 713 F.3d 955, 959 (8th Cir. 2013); *United States v. Rodriguez*, 581 F.3d 775, 796 (8th Cir. 2009); *United States v. Allen*, 247 F.3d 741, 757 (8th Cir. 2001).

### B. *The Court's Decision Deprives the Jury of the Ability to Decide Aggravating Factors it is Required to Weigh in Deciding Whether to Execute a Person*

The district court's order deprives the jury of determining for itself whether the government has proved statutory aggravating factors that would make defendant eligible for the death penalty. Rather, the district court's order saddles the new jury with the

37

findings, and the lack of findings, made by the prior jury regarding these aggravating factors. This burdens the new jury with the responsibility to weigh aggravating factors it never found in the first instance, and deprives the jury of the ability to determine if the evidence supports the statutory aggravating factor of substantial planning and premeditation of the July 1993 murders. This is contrary to the statutory procedures Congress established that provide for a single hearing where a jury makes all of the decisions necessary to determine whether someone should live or die.

Defendant was convicted of violating the ADAA, 21 U.S.C. § 848(e), which makes it a crime to murder someone in furtherance of a Continuing Criminal Drug Enterprise. Sections 848(g) through (o) set forth the procedures to be followed if the government seeks capital punishment for the murders.[4] Section 848 states that a person may be sentenced to death for a violation of § 848(e) only if a sentencing hearing is held in accordance with the statute. 21

_____

[4] These provisions have since been repealed by the Patriot Act, such that capital cases now tried under these charges follow the provisions of the FDPA.

38

Appellate Case: 13-1739    Page: 50    Date Filed: 06/14/2013 Entry ID: 4045609

U.S.C. § 848(g). The statute requires the government to give notice of statutory and non-statutory factors it asserts justifies a death penalty. 21 U.S.C. § 848(h).

A capital trial is bifurcated between the determination of the defendant's guilt, and the determination of the appropriate sentence. The statute provides that when the government is seeking a death penalty, the court "shall conduct a separate hearing to determine the punishment to be imposed" and "[t]he hearing" can be before the jury that found guilt or before a new jury under certain circumstances, such as a retrial. 21 U.S.C. § 848(i).

The statute further sets out statutory aggravating factors, and provides that for a defendant to be found eligible for the death penalty, the jury must unanimously find the existence of at least one statutory aggravating factor. 21 U.S.C. §§ 848(j) & (n). If the jury finds the defendant eligible for the death penalty, then the jury is to consider any other non-statutory aggravating factors for which the government provided notice, and any mitigating factors, in determining the appropriate sentence. 21 U.S.C. §§ 848(j) & (k).

39

Thus, the sentencing deliberations contemplate an initial determination whether a defendant is eligible for the death penalty. If the jury determines she is not, then it would not proceed to determine whether the death penalty is appropriate.[5]

Thus, Title 21, United States Code, Section 848(i) provides for a single sentencing hearing, which includes a determination by the same jury whether the defendant is eligible for the death penalty ("eligibility phase") and, if so, whether the death penalty should be selected as the appropriate sentence ("selection phase"). *Cf. United States v. Bolden*, 545 F.3d 609, 618 (8th Cir. 2008) (the plain language of the FDPA "contemplates a single penalty phase hearing"); *United States v. Barnette*, 390 F.3d 775, 810 (4th Cir. 2004) ("By its terms, the Federal Death Penalty Act contemplates only a single sentencing hearing . . ..").

---

[5]  Although defendant was charged under the capital provisions of 21 U.S.C. § 848, the capital provisions of the FDPA, 18 U.S.C. §§ 3591 & 3593, are identical for all material purposes here.  The similarities in these statutes is important because much of the case law addressing capital cases arises under the FDPA, but is equally applicable for the issues in this appeal to the ADAA.

40

Appellate Case: 13-1739    Page: 52    Date Filed: 06/14/2013 Entry ID: 4045609

The statutory language throughout Section 848 repeatedly and unambiguously refers to the sentencing hearing in the singular form. (*See, e.g.*, 21 U.S.C. §§ 848(g) ("A person shall be subjected to the penalty of death for any offense under this section only if <u>a hearing</u> is held in accordance with this section.") (emphasis added); 848(i)(1) ("<u>The hearing</u> shall be conducted . . ..") (emphasis added); 848(i)(1)(B) ("before a jury for the purpose of <u>the hearing</u> . . ..") (emphasis added); 848(i)(2) ("A jury impaneled under paragraph (1)(B) shall consists of 12 members, unless, at any time before the conclusion of <u>the hearing</u> . . ..") (emphasis added); 848(j) ("In <u>the sentencing hearing</u>, information may be presented as to matters relating to any of the aggravating or mitigating factors . . .. Information presented may include the trial transcript and exhibits if <u>the hearing</u> is held before a jury or a judge not present during the trial, or at the trial judge's discretion. . .. The Government and the defendant shall be permitted to rebut any information received at <u>the hearing</u> . . ..") (emphasis added); 848(k) ("The jury, or if there is no jury, the court, shall consider all the information received during

41

Appellate Case: 13-1739   Page: 53   Date Filed: 06/14/2013 Entry ID: 4045609

the hearing . . ..) (emphasis added).  Nothing in the statutory language supports a finding that there are two separate capital sentencing hearings, one to determine eligibility and another to determine the penalty.[6]

The district court held that because it found ineffective assistance of counsel only during the selection phase of defendant's sentencing hearing, then only the selection phase is to be retried. (DCcrD 951, at 10-11).  There is no provision in the statute for only a partial sentencing rehearing where a court finds error only in a portion of the original sentencing hearing.  The statute does not divide the sentencing hearing into distinct parts such that error in one part would result in a partial sentencing rehearing.  A court cannot rewrite the federal death penalty statutes to create two separate sentencing hearings when Congress created only one.

---

[6]  The analysis is the same under the FDPA, which refers to the sentencing hearing only in the singular.  *See* 18 U.S.C. § 3591 (referring to the sentencing portion of a capital trial as "a hearing"; 18 U.S.C. § 3593 (referring to "a hearing," "a separate sentencing hearing," and "the hearing"); 18 U.S.C. § 3595 (referring to "the sentencing hearing").

Appellate Case: 13-1739   Page: 54   Date Filed: 06/14/2013 Entry ID: 4045609

*See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 267 n.6 (1997) (stating that Congress, not courts, make law); *United States v. Fell*, 217 F. Supp.2d 469, 491 (D. Vt. 2002) ("Courts cannot, and should not, rewrite an unambiguous Congressional directive regarding th[e] process" set forth in the FDPA). As the First Circuit Court of Appeals recognized in *United States v. Green*, 407 F.3d 434, 443 (1st Cir. 2005), "where Congress has provided a specific panoply of rules that must be followed [in capital cases], [a] district court's discretionary powers simply do not come into play."

Title 21, United States Code, Section 848(i)(1)(B)(iv) provides that, when a previously-imposed death sentence is vacated, a new jury is empaneled because "redetermination of the sentence under this section is necessary." That determination consists of a single hearing conducted in accordance with statutorily-mandated procedural rules under which the single, newly-empaneled fact-finder makes all the findings necessary for its ultimate determination whether or not a sentence of death shall be imposed. The district court disregarded this unambiguous statutory scheme

43

in ruling that the sentencing rehearing would consist of only a portion of the sentencing proceedings provided for by statute.

In this case, the district court's order would bind the new jury to the prior jury's findings, and lack of findings, regarding the statutory aggravating factors. Thus, the new jury will be told defendant is eligible for the death penalty; it will not be permitted, as provided by statute, to determine for itself whether defendant should be eligible for the death penalty. The new jury will be told that the murders of the adult victims were committed in an especially heinous, cruel, and depraved manner. It will not be permitted to determine that for itself. It will likewise be bound by the prior jury's determination that the children were vulnerable victims. Finally, the jury will be bound by the prior jury's determination that defendant substantially planned and premeditated the murder of Terry DeGeus. In stark contrast, the new jury will be deprived from determining for itself whether defendant substantially planned and premeditated the July 1993 murders. This is so not because defendant was acquitted of that

44

Appellate Case: 13-1739　Page: 56　Date Filed: 06/14/2013 Entry ID: 4045609

statutory aggravating factor, but, rather, simply because the prior jury did not unanimously find that factor was proven.

The evidence will show defendant and Honken searched for Greg Nicholson for months after Honken's March 1993 arrest. (Tr. 563, 580-84, 871). They found Nicholson living with Lori Duncan and her children. (Tr. 607, 1304-05). On June 30, 1993, defendant obtained a permit to purchase a handgun. (Tr. 402-05). On July 7, 1993, defendant purchased a semi-automatic assault pistol at a pawn shop in a city an hour's drive away from where she lived. (Tr. 407-09). A little more than three weeks later, defendant used a ruse to force her way into the Duncan home at night, when she could expect Nicholson, Duncan, and her children to be home. (Tr. 584-85, 607). Defendant and Honken then used duct tape and rope to bind and gag the adults, kidnapped the victims, drove them all to a remote site, and murdered them all. (Tr. 608-10, 1578-80). The district court's order bars the government from presenting this and other evidence to show defendant substantially planned and premeditated the July 1993 murders. (DCcrD 951, at 21-22). And

45

Appellate Case: 13-1739     Page: 57     Date Filed: 06/14/2013 Entry ID: 4045609

the order bars the new jury from considering substantial planning and premeditation of July 1993 murders as an aggravating factor.

Although the court professed its belief that any evidence relevant to establishing the now-prohibited "substantial planning and premeditation" factor would be admissible in any event to provide content to the threshold "intent" factor found by the original jury (DCcrD 973, at 3), defendant disagreed and filed a motion in limine to bar a significant amount of evidence based on the court's ruling (DCcrD 975, 984), and the district court has declined to rule on the pending motion. Regardless, even if the evidence was admitted for other purposes, the district court has effectively barred the jury from considering the evidence to determine whether the government proved an "element" of the capital offenses. *See Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding that eligibility-defining statutory aggravating factors are the equivalent of elements of the offense because they have the effect of increasing the statutory maximum penalty).

46

Appellate Case: 13-1739    Page: 58    Date Filed: 06/14/2013 Entry ID: 4045609

The district court's order barring evidence for the purpose of establishing substantial planning and premeditation of the July 1993 murders is an improper and adverse consequence of the district court's erroneous interpretation of the statute and the altered procedure it has ordered. The new jury, even if permitted to hear this evidence for some other purpose, will not be allowed under the district court's order to consider it as evidence in support of a statutory aggravating factor supporting defendant's eligibility for, or the appropriateness of her, execution. The district court's order deprives the new jury from evaluating evidence for the purpose of determining for itself whether there exists a factor Congress deemed sufficiently aggravating to justify eligibility for the death penalty. The district court's alteration of the capital sentencing hearing procedures is contrary to the clear statutory language which calls for a single sentencing hearing and for the jury to make all the findings necessary in determining whether someone should live, or die.

47

Appellate Case: 13-1739    Page: 59    Date Filed: 06/14/2013 Entry ID: 4045609

**C.     *The District Court's Remedial Discretion Under Section 2255 Does Not Permit it to Order a Partial Capital Sentencing Hearing in Contravention of the Statutory Language***

District courts are permitted discretion to fashion remedial remedies when, as here, they find a defendant's constitutional rights were violated by ineffective assistance of counsel. In *United States v. Morrison*, 449 U.S. 361, 364 (1981), the Supreme Court announced that where there has been a finding of ineffective assistance of counsel in a § 2255 proceeding, the remedy "should be tailored to the injury suffered from the constitutional violation, and should not unnecessarily infringe on competing interests." The "competing interests" include "the necessity for preserving society's interest in the administration of criminal justice." *Id.* Where the government "had no hand in denying [the defendant's] Sixth Amendment right to effective assistance of counsel," the remedy ought not to hamper the government's case. *Julian v. Bartley*, 495 F.3d 487, 500 (7th Cir. 2007).

48

Appellate Case: 13-1739     Page: 60     Date Filed: 06/14/2013 Entry ID: 4045609

Here, the remedy the district court fashioned was to grant defendant a new sentencing hearing. And that is what the district court initially did. Only later did the district court alter the remedy to eliminate a part of the sentencing hearing.

In its order on defendant's post-conviction relief petition, the district court ordered a new sentencing hearing. *Johnson*, 860 F. Supp.2d at 919. The district court denied defendant's petition regarding the determination of her guilt, and held her "convictions of five counts of 'murder in furtherance of a CCE,' in Counts 6 through 10 of the Indictment . . . shall stand . . .." *Id.* The court held, however, "the Amended Judgment . . . imposing a sentence of life imprisonment on Count 6 and sentences of death on Counts 7, 8, 9 and 10 on Johnson is vacated . . .." *Id.* The court gave the government 60 days "to notify the court and the petitioner whether it will demand a new hearing, pursuant to 21 U.S.C. § 848(g) - (o) (2005), before the court or a jury, to determine the penalty for Johnson's convictions or will, instead, withdraw the notice of intent to seek the death penalty, filed pursuant to 21 U.S.C. § 848(h)

49

(2005), and allow the court to set a hearing to impose sentences of life imprisonment without parole, pursuant to 21 U.S.C. § 848(p) (2005), on the convictions on Counts 6 through 10." *Id.* Nothing in its order granting partial relief to defendant on her habeas petition suggests the district court ordered only a partial capital sentencing hearing.

In its order of January 16, 2013, however, the district court decided the new sentencing hearing would now be "limited to a retrial of the 'penalty phase,' involving the determination of the existence of 'non-statutory aggravating factors' and 'mitigating factors' by the new jury and the new jury's weighing of the 'statutory aggravating factors' found by the original jury with the 'non-statutory aggravating factors" found by the new jury against the 'mitigating factors' found by the new jury." (DCcrD 951, at 13-14). This is not the remedy originally ordered by the district court.

The court's discretion in fashioning a remedy for ineffective assistance by trial counsel during a capital sentencing hearing does not extend to altering the sentencing procedures in a manner not

50

contemplated or authorized by the statute.  Nor is it a remedy permitted by the statute governing the procedures applicable at a capital resentencing hearing.

### D. A District Court's Discretion to Bifurcate Presentation of Evidence in a Capital Sentencing Hearing Does Not Authorize the Creation of Multiple Sentencing Hearings

The district court reasoned that, because district courts may bifurcate the presentation of evidence in capital sentencing hearings, it therefore could order only half of the sentencing hearing be retried.  (DCcrD 951, at 12-14).  Indeed, the district court stated that "sequential presentation and determination [of statutory aggravating factors from non-statutory aggravating factors] is required."  (DCcrD 951, at 13).  This is incorrect.

In practice, trial courts have confronted evidentiary issues when evidence may be relevant to support non-statutory aggravating factors, but not relevant for statutory, or eligibility factors.  In other words, defendants have argued they are prejudiced in the jury's determination of eligibility for the death penalty by exposure to evidence not relevant to that determination.

51

Appellate Case: 13-1739    Page: 63    Date Filed: 06/14/2013 Entry ID: 4045609

Some trial courts have fashioned a practical remedy for these perceived evidentiary issues by bifurcating[7] the presentation of evidence during the sentencing hearing into two phases, an eligibility phase and a selection phase. *See, e.g., United States v. Basciano*, 763 F. Supp.2d 303, 340-41 (E.D. N.Y. 2011) (ordering the sentencing hearing be bifurcated into two parts for evidentiary reasons); *United States v. Henderson*, 485 F. Supp.2d 831, 871-72 (S.D. Ohio 2007) (agreeing to bifurcate the sentencing hearing should the jury find the defendant guilty of a capital offense); *United States v. Natson*, 444 F. Supp.2d 1296, 1309 (M.D. Ga. 2006) (ordering that, because the government did not object, it would bifurcate the sentencing hearing if the defendant was found guilty); *United States v. Mayhew*, 380 F. Supp.2d 936, 955-57 (S.D. Ohio

---

[7] Because a capital trial is already bifurcated between the determination of a defendant's guilt and the appropriate sentence, this further bifurcation of the sentencing hearing has led some courts to label this as a "trifurcation" of the capital trial. *See Bolden*, 545 F.3d at 618 (noting the use of both "bifurcation" and "trifurcation" to refer to splitting the sentencing hearing into an "eligibility" and a "selection" phase). To avoid confusion, the government will refer to it as "bifurcation" of the presentation of evidence during a sentencing hearing.

52

2005) (ordering a bifurcation of the sentencing hearing "on the theory that victim impact evidence has no probative value with regard to the statutory aggravating factors or the mens rea requirement of this case, but that such evidence carries with it a substantial risk of prejudicing the jury."); *United States v. Bodkins*, No. 4:04CR70083, 2005 WL 1118158, at \*7 (W.D. Va. May 11, 2005) (unpublished) (while noting "[a] bifurcated process is not required" by the FDPA, nevertheless holding that the court would bifurcate the sentencing hearing, if one is required, to avoid jury confusion and Confrontation Clause issues); *United States v. Davis*, 912 F. Supp. 938, 949 (E.D. La. 1996) (court bifurcated the sentencing hearing to avoid perceived prejudicial effect of evidence supporting non-statutory aggravating factors before it determined whether the defendant was eligible for the death penalty).

For example, in defendant's original trial, the district court bifurcated the presentation of evidence during the sentencing hearing in the original trial because:

53

> The court concluded that the danger of unfair prejudice arising from the jurors hearing "victim impact" evidence or evidence of other "non-statutory" aggravating factors before the jurors make their determination on the defendant's "eligibility" for the death penalty, on the basis of the "gateway" and "statutory" aggravating factors, substantially outweighs any probative value of such evidence to the determination of the defendant's "eligibility" for a death sentence.  Second, the court concluded that the information concerning "gateway" and "statutory" aggravating factors in this case is entirely severable from information concerning any other factor, where the government intends to rely only on evidence admitted in the "merits phase" to prove the "gateway" and "statutory" aggravating factors, and introduction of extraneous information into the jury's determination of the "gateway" and "statutory" aggravating factors could only tend to confuse the issues.  Third, the court concluded that, if the jury is permitted to hear information on *all* of the factors in one proceeding, the jury is reasonably likely to be misled into believing that *all* information is pertinent to the determination of *all* factors and the balance of the factors.

*United States v. Johnson*, 378 F. Supp.2d 1051, 1056 (N.D. Iowa 2005) (internal citations omitted, emphasis original).

Although this Court has held that a district court does not abuse its discretion in bifurcating the presentation of evidence during the sentencing hearing, *Bolden*, 545 F.3d at 618, there is nothing requiring capital sentencing hearings to be bifurcated.  *See,*

54

Appellate Case: 13-1739     Page: 66     Date Filed: 06/14/2013 Entry ID: 4045609

*e.g., United States v. Fell,* 531 F.3d 197, 238-40 (2nd Cir. 2008) (finding the FDPA was not unconstitutional because it arguably permits, but does not require, bifurcating the sentencing hearing); *United States v. Jackson,* 638 F. Supp.2d 514, 612-13 (W.D. N.C. 2009) ("The fact that a court may further separate the sentencing phase in its discretion does not provide a right to any such procedure. The FDPA does not preclude a court from making such a procedural division, but it is not unconstitutional in failing to so require it."); *United States v. Williams,* No. Cr-05-920, 2008 WL 4644830, at *12 (C.D. Cal. Oct. 15, 2008) (unpublished) (denying defendant's motion to bifurcate the sentencing hearing, declaring "[n]o court has ever held that bifurcation of the penalty phase is mandatory."); *United States v. Solomon,* No. 02:05cr385, 2007 WL 1228029, at * 9 (W.D. Pa. Apr. 25, 2007) (unpublished) (holding in abeyance the decision whether to bifurcate the sentencing hearing, but noting that "[a] bifurcated process is not required by [the FDPA]."); *Booth-El v. Nuth,* 140 F. Supp.2d 495, 582-83 (D. Md. 2001) (rejecting state prisoner's claim that his due process rights

55

were violated when the trial judge refused to bifurcate the sentencing hearing); *see also United States v. Sablan*, 555 F. Supp.2d 1205, 1222 (D. Colo. 2007) ("[T]he FDPA does not in any way refer to or authorize bifurcation of the penalty phase.").

Thus, a district court has the discretion to bifurcate the presentation of evidence during a capital sentencing hearing. That does not, however, change the statutory language which provides for a single sentencing hearing consisting of a determination by the same jury of a defendant's eligibility for the death penalty, followed upon an affirmative verdict with a determination of whether to impose the death penalty. Rather, the judicially-created practice of bifurcating a capital sentencing hearing into two phases is a procedure regarding the manner of presenting evidence within a single sentencing hearing.

The "central point" of statutory language referencing "a separate sentencing hearing" in capital cases "is that the sentencing decision should be separated from the guilty phase – not that the sentencing phase must necessarily take place during

56

one uninterrupted hearing." *Basciano*, 763 F. Supp.2d at 341. When, therefore, a court overturns a capital sentence as it has in this case, a new sentencing hearing is required. This includes a new determination by the same jury of defendant's eligibility for the death penalty and the selection of the appropriate sentence.

### E. *Striking of the Statutory Aggravating Factor is not Constitutionally Required*

The district court acknowledged that its announced procedure for the sentencing rehearing was not constitutionally required. (DCcrD 951, at 19-20). The district court recognized that the prior jury did not acquit defendant of the statutory aggravating factor of substantial planning and premeditation of the July 1993 murders. (DccrD 951, at 20 ("A *finding* of a 'statutory aggravating factor' had to be unanimous, but a *rejection* of such a 'statutory aggravating factor' did not have to be unanimous . . . Thus, *rejection* of a 'statutory aggravating factor' would have only non-preclusive effect of a 'deadlocked' or 'hung' jury.") (emphasis original)). For the jury to have found, and later weigh, the statutory aggravating factor of

57

substantial planning and premeditation of the July 1993 murders, therefore, the jury had to be unanimous.  But, a single juror's conclusion that the government did not prove that factor was sufficient for the jury to not find it.

The district court was correct in this regard.  In *Poland v. Arizona*, 476 U.S. 147, 155 (1986), the Supreme Court held that "a capital sentencer's failure to find a particular aggravating circumstance . . . [does not] constitute[ ] an 'acquittal' of that circumstance for double jeopardy purposes."  The Court refused to "view the capital sentencing hearing as a set of minitrials on the existence of each aggravating circumstance."  *Id.  See also Knapp v. Cardwell*, 667 F.2d 1253, 1264 (9th Cir. 1982) (rejecting the defendant's argument that the first death penalty sentence constituted an implicit acquittal on each aggravating factor not found by the jury such that a new jury could not make a contrary finding on retrial); *Preston v. Secretary, Dept. of Corrections*, No. 6:08-cv-2085, 2012 WL 1549529, at * 24-25 (M.D. Fla. May 1, 2012) (holding: "Therefore, under federal double-jeopardy doctrine,

58

Appellate Case: 13-1739     Page: 70     Date Filed: 06/14/2013 Entry ID: 4045609

where a defendant who has been sentenced to death succeeds in having the sentence overturned on appeal, the 'clean slate' [rule] applies to the new sentencing proceeding. The State is permitted to resubmit aggravating factors at the new proceeding even if those factors were not found at the initial-sentencing proceeding . . ..");
*United States v. Stitt*, 760 F. Supp.2d 570, 584 (E.D. Va. 2010) (holding that a prior jury's failure to find a particular aggravating factor does not "acquit" the defendant of that factor, such that in a capital sentencing rehearing the jury would not be precluded from considering such an aggravating factor); *New Jersey v. Biegenwald*, 542 A.2d 442, 450 (N.J. 1988) ("There is no federal constitutional prohibition on resentencing an aggravating factor not found at the first sentencing phase where defendant is sentenced to death at the conclusion of the first sentencing phase.").

Nor does issue preclusion bar the new jury from deciding whether defendant substantially planned and premeditated the July 1993 murders. "Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by

59

a valid and final judgment, and . . . is essential to the judgment.'"
*Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting Restatement (Second) of Judgments § 27 (1980)). The original jury's lack of unanimous finding that defendant substantially planned and premeditated the July 1993 murders was not necessary to its ultimate imposition of the death penalty. *Bies*, 556 U.S. at 826-27 (finding issue preclusion did not bar redetermination of whether a capital defendant was mentally retarded because an early jury finding of that mitigating factor was not essential to it's death verdict).

So, here, there was no acquittal. Nevertheless, the effect of the district court's order is the equivalent of finding defendant was acquitted of the statutory aggravating factor of substantial planning and premeditation of the July 1993 murders. The district court's alteration of the statutory scheme resulted in its ruling that the jury empaneled for the sentencing rehearing would be bound by the eligibility determinations made by the original jury and the government would be barred from establishing the existence of any

60

eligibility factor that was not found to exist by the original jury. The district court's order effectively strikes the "substantial planning and premeditation" aggravating factor for the July 1993 murders from the indictment and the government's amended death penalty notice.

The announced retrial procedures stem not from a Constitutional requirement, but solely from the district court's erroneous belief the court could rewrite the statutory procedures applicable at the sentencing rehearing in any manner it thought appropriate. It can not. The unambiguous statutory language authorizes only a single "hearing" at which the newly-empaneled jury considers all the relevant information and makes all the necessary findings to return a capital verdict. The findings the new jury may consider include all of the statutory and non-statutory factors for which the government has provided notice. *See* 21 U.S.C. §§ 848(h)(1)(B) & 848(j). The new jury should not be hamstrung by the prior jury's findings, or lack of findings, in the

61

Appellate Case: 13-1739    Page: 73    Date Filed: 06/14/2013 Entry ID: 4045609

original sentencing hearing when the district court has ordered a new sentencing hearing.

## CONCLUSION

The United States requests the Court reverse the district court's orders of January 16, 2013 and March 5, 2013, and hold the new sentencing hearing will consist of a determination of both defendant's eligibility for the death penalty and, if found eligible, a determination of whether to impose the death penalty.

Respectfully submitted,

SEAN R. BERRY
United States Attorney

By: s/ C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (Fax)
CJ.Williams@usdoj.gov

62

# CERTIFICATE OF FILING AND SERVICE

I certify that on June 14, 2013, I, Sali Van Weelden, Legal Assistant for the Attorney for Plaintiff-Appellant, the United States of America, electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system.  The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using Trend Micro OfficeScan and the scan showed no virus.

I further certify that on _____, 2013, I submitted 10 paper copies of the brief to the Clerk of Court and 1 paper copy to each party separately represented or proceeding pro se.

<div style="margin-left:45%">

SEAN R. BERRY
Acting United States Attorney

BY:  _s/ S. Van Weelden_

</div>

Copies to:
Mr. Michael Burt
1000 Brannan Street, Suite 400
San Francisco, California 94103

<div style="text-align:center">63</div>

Appellate Case: 13-1739     Page: 75     Date Filed: 06/14/2013 Entry ID: 4045609

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief uses a proportional-spaced typeface, 14-point Bookman Old Style font. Based on a count under Corel Word Perfect Version X3 for Windows, the brief contains 10,918 words, excluding the table of contents, table of authorities, statement with respect to oral argument, any addendum, and certificates of counsel.

SEAN R. BERRY
United States Attorney

By: s/ C.J WILLIAMS

_____

C.J. WILLIAMS
Assistant United States Attorney

64

Appellate Case: 13-1739    Page: 76    Date Filed: 06/14/2013 Entry ID: 4045609

# ADDENDUM

E mail correspondence between Mark W. Bennett, U.S. District Court Judge, Northern District of Iowa, C.J. Williams, Assistant United States Attorney, Northern District of Iowa, and Michael Burt, attorney for defendant. . . . . . . . . . . . . . . . . . . . . . . 1

Appellate Case: 13-1739     Page: 77     Date Filed: 06/14/2013 Entry ID: 4045609