No. 13-1739

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellant,

vs.

ANGELA JOHNSON,

Appellee.

_____

*Appeal from the United States District Court
for the Northern District of Iowa
Honorable Mark W. Bennett, Judge*
_____

*APPELLANT ADDENDUM*
_____

C.J. WILLIAMS
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, IA  52401
(319) 363-6333
(319) 363-1990 (fax)
CJ.Williams@usdoj.gov

# Williams, CJ (USAIAN)

| | |
|---|---|
| **From:** | Mark_Bennett@ |
| **Sent:** | Wednesday, March 06, 2013 8:23 AM |
| **To:** | Williams, CJ (USAIAN) |
| **Cc:** | Bowers, Jamie (USAIAN); mb@ 'Michael Burt'; MorrisseyMA@ ; nspemberton@e VanWeelden, Sali (USAIAN) |
| **Subject:** | RE: U.S. v. Johnson Jury Questionnaire |

No problem on the kick the can metaphor. The defense, while busy, has not responded top my request for how much time they need to list and substantial planning and premeditation evidence they think is not admissible. I would be surprised if all of it is not admissible. Therefore the defense needs to file by next Tuesday a motion indicating what substantial planning and premeditation evidence they think is inadmissible in a rule 104 motion. Of course, a statement earlier that all such evidence is admissible would be fine, too. :)



*Mark W. Bennett*

**Mark W. Bennett**
U.S. District Court Judge
Northern District of Iowa
U.S. Courthouse
320 6th St. Sioux City, Iowa 51101
712-233-3909 (fax) 712-233-3913
www.iand.uscourts.gov

"Do not be daunted by the enormity of the world's grief. Do justly, now. Love mercy, now. Walk humbly, now. You are not obligated to complete the work, but neither are you free to abandon it."
- The Talmud

"The arc of the moral universe is long but it bends towards justice."
- MLK, Jr.

| | |
|---|---|
| From: | "Williams, CJ (USAIAN)" <CJ.Williams@ |
| To: | "Mark_Bennett@ <Mark_Bennett@ "mb@ <mb@ |
| Cc: | "Bowers, Jamie (USAIAN)" <Jamie.Bowers@ , "Michael Burt" <michael@ "MorrisseyMA@ <MorrisseyMA@ "nspemberton@e <nspemberton@e "VanWeelden, Sali (USAIAN)" <Sali.VanWeelden@ |
| Date: | 03/06/2013 08:09 AM |
| Subject: | RE: U.S. v. Johnson Jury Questionnaire |

Your Honor –

You were right to begin with; substantial planning is an eligibility factor.

We appreciate your willingness to have the defendant articulate what evidence she thinks is barred by the order and I apologize if my comment about "kicking the can" appeared to be critical of your ruling. I didn't mean it to appear that way. As I was driving back from Sioux City, though, it occurred to me that, despite your observation that all the evidence admitted at the first trial appears admissible for other reasons, the defense may, and appears to, disagree.

For example, at one point on Monday, Mr. Burt mentioned that he thought the defendant's application for a gun permit could only go toward substantial planning and premeditation aggravating factor. I disagree, and you may disagree, but the defendant may be

1

Appellate Case: 13-1739    ADDENDUM p. 1    Page: 1    Date Filed: 06/14/2013 Entry ID: 4045610

able to persuade you that she's right as to that, or some other evidence. There may also be evidence not admitted at the last trial that defendant believes falls in this category, though I don't right now know what that would be.

But, that's why I think it would be helpful for both parties and the Court to flesh out exactly what, if any, evidence the defendant believes is barred as a result of the order.

CJ

**From:** Mark_Bennett@ [mailto:Mark_Bennett@
**Sent:** Wednesday, March 06, 2013 7:56 AM
**To:** mb@
**Cc:** Williams, CJ (USAIAN); Bowers, Jamie (USAIAN); 'Michael Burt'; MorrisseyMA@ nspemberton@ VanWeelden, Sali (USAIAN)
**Subject:** RE: U.S. v. Johnson Jury Questionnaire

I think I misunderstood....I recalled, incorrectly that the substantial planning mitigator was a eligibility one not a sentencing one. MY bad. What is your position on the substantial planning evidence?



*Mark W. Bennett*

**Mark W. Bennett**
**U.S. District Court Judge**
**Northern District of Iowa**
U.S. Courthouse
320 6th St. Sioux City, Iowa 51101
712-233-3909 (fax) 712-233-3913
www.iand.uscourts.gov

"Do not be daunted by the enormity of the world's grief. Do justly, now. Love mercy, now. Walk humbly, now. You are not obligated to complete the work, but neither are you free to abandon it."
- The Talmud

"The arc of the moral universe is long but it bends towards justice."
- MLK, Jr.

From:     "Michael Burt" <mb@n
To:       <Mark_Bennett@        , "'Michael Burt'" <michael@n
Cc:       "'Williams, CJ \(USAIAN\)'" <CJ.Williams@       "Bowers, Jamie \(USAIAN\)'" <Jamie.Bowers@     , <MorrisseyMA@
<nspemberton@     , "'VanWeelden, Sali \(USAIAN\)'" <Sali.VanWeelden@
Date:      03/06/2013 07:40 AM
Subject:      RE: U.S. v. Johnson Jury Questionnaire

---

Dear Judge
     Thanks for the time from your busy schedule to deal with us on Monday. I agree it was very productive. Regarding your suggestion, as I understand the government's position, they want to relitigate substantial planning and premeditation and are not satisfied with going to trial on the other statutory aggravators. Therefore, the defense stipulating to eligibility (an unnecessary stipulation since she has already been found to be eligible) will not meet their demands, short of a stipulation regarding substantial planning and premeditation, which would create a whole new claim of our ineffectiveness for entering such a stipulation. As I indicated during our meeting, the government already has weighty aggravators to take to the jury so we don't

2

Appellate Case: 13-1739   Page: 3   Date Filed: 06/14/2013 Entry ID: 4045610

ADDENDUM P. 2

really understand the government's insistence on yet another aggravator.

Michael Burt
Law Office of Michael Burt
1000 Brannan Street, Suite 400
San Francisco, California 94103-4888
415-522-1508 phone
415-522-1506 fax
mb@

**From:** Mark_Bennett@
**Sent:** Tuesday, March 05, 2013 5:07 AM
**To:** Michael Burt
**Cc:** Williams, CJ (USAIAN); Bowers, Jamie (USAIAN); MorrisseyMA@    nspemberton@    VanWeelden, Sali (USAIAN)
**Subject:** Re: U.S. v. Johnson Jury Questionnaire

Thanks for you participation yesterday. I found our informal meeting very helpful. In addition to stipulating to a life sentence I was wondering if the governments position on my ruling about not retrying the "eligibility phase" would be fatally wounded or at least weakened if Johnson stipulate to eligibility. Just a thought. Also, if the government has such little interest in proceeding expeditiously to trial on June 3rd, and appeals which is, of course their right, I am going to have much less concern on resetting the case for retrial to help get finality for the victims and may put the trial off for a time when it is best for my schedule, or for a judge that replaces me when I take senior status. I find the governments' former position which I shared, about the rights of the victims to resolution, to be rather hypocritical if they are willing to delay the trial over an issue that has no real impact on the case. I both respect and honor the governments' right to appeal any ruling they desire but I am not going to sacrifice my schedule to get this case retried. In fact we have a statutory duty to expedite Tittle VII cases so I will move those ahead of this trial if it needs to be moved. Just saying:)



**Mark W. Bennett**
U.S. District Court Judge
Northern District of Iowa
U.S. Courthouse
320 6th St. Sioux City, Iowa 51101
712-233-3909 (fax) 712-233-3913
www.iand.uscourts.gov

"Do not be daunted by the enormity of the world's grief. Do justly, now. Love mercy, now. Walk humbly, now. You are not obligated to complete the work, but neither are you free to abandon it."
- The Talmud

"The arc of the moral universe is long but it bends towards justice."
- MLK, Jr.

From:    Michael Burt <michael@
To:    "Mark_Bennett@    <Mark_Bennett@
Cc:    "Williams, CJ (USAIAN)" <CJ.Williams@    "Bowers, Jamie (USAIAN)" <Jamie.Bowers@    "MorrisseyMA@
   <MorrisseyMA@    "nspemberton@    <nspemberton@    "VanWeelden, Sali (USAIAN)" <Sali.VanWeelden@
Date:    02/21/2013 09:42 AM
Subject:    Re: U.S. v. Johnson Jury Questionnaire

3

Appellate Case: 13-1739    Page: 4    Date Filed: 06/14/2013 Entry ID: 4045610

ADDENDUM P. 3

Judge
We will weigh this option carefully and also discuss it with our client. Look forward to discussing this and other issues at our upcoming meeting .

Michael N. Burt
Law Office of Michael Burt
1000 Brannan Street
Suite 400
San Francisco, California 94103
415-522-1508 phone
415-522-1506 fax
mb@

On Feb 20, 2013, at 1:06 PM, Mark_Bennett@i                         wrote:

I have been giving jury selection a lot of thought and I have an issue I would like to raise. I am worried no matter where the case would be tried that without sequestering the jury, which I will not do, except perhaps during deliberations, that jurors will find out she had previously been sentenced to death. And for many reasons once the trial starts I will not be asking them that question unless it would come to my attention that a particular juror or jurors actually read an article containing that information. So, why not tell the jurors up front that she was given a death sentence by a prior jury and then explain that process was deeply constitutionally flawed and that very important evidence was not presented to that jury that will be presented to this jury. Further, explain to this jury or these prospective jurors that the prior lawyers were so incredibly bad that I found their performance to be constitutionally defective not just in one way but in many, many ways. This would be honest and eliminate all of our concerns about potential contamination of the jurors finding out or guessing that she got the death penalty previously but not knowing any of the facts and reasons why it was set-aside. Obviously, we would develop a more refined explanation than this off-the-top-of-my-head e-mail. Before you all reject this approach out of hand please take some time to really think about this. Of course, Ms. Johnson would have to approve of this strategy on the record. And, as always I am open to other suggestions for this very daunting problem.
<mime-attachment.jpg>

From:      "Williams, CJ (USAIAN)" <CJ.Williams@
To:        "Mark_Bennett@                    <Mark_Bennett@
Cc:        "Michael Burt (michael@             ' <michael@r              , "MorrisseyMA@         ' <MorrisseyMA@
"nspemberton@            <nspemberton@e            "Bowers, Jamie (USAIAN)" <Jamie.Bowers@          , "VanWeelden, Sali (USAIAN)"
<Sali.VanWeelden@
Date:      02/19/2013 12:56 PM
Subject:   U.S. v. Johnson Jury Questionnaire

Your Honor:

Attached is a Word version of the parties' joint proposed jury questionnaire.

4

Appellate Case: 13-1739   Page: 5   Date Filed: 06/14/2013 Entry ID: 4045610

ADDENDUM P. 4

By way of background and explanation, the government provided defense counsel with an initial proposal pursuant to the Court's scheduling order. Defense counsel rejected the government's proposal, instead submitting their own proposal. The government expressed its objections to the defense proposal and, after some give and take, we resolved most of the disputes. The attached version, then, is the defense.revised version with resisted proposed edits by the government. There are not many. Objections by the government are shown as strikeouts and proposed additions are underlined and bolded.

This may be something we should discuss at the status conference on March 4, 2013.

C.J.
[attachment "02 19 13 jury questionnaire from defense after considering gov objections.docx" deleted by Mark Bennett/IAND/08/USCOURTS]

ADDENDUM P. 5

Appellate Case: 13-1739     Page: 6     Date Filed: 06/14/2013 Entry ID: 4045610

| From: | Mark_Bennett@ <Mark_Bennett@ | Date: | 03/22/2013 13:17:18 |
|---|---|---|---|
| To: | Williams, CJ (USAIAN) <CWilliams2@ | Cc: | Bowers, Jamie (USAIAN) <JBowers1@ Jennifer_Gill@        <Jennifer_Gi ... |

Folder:

Subject: Re: US v. Johnson proposed juror questionnaire

Attachments: ATT00001.jpg

🖨 Print the page

Dear Counsel,

I have re-thought my continued work on this case. In light of the government's "likely" appeal I have decided to stop all work on this case. I will process the CJA vouchers but don't plan on doing anything more than that till after the appeal is resolved. That includes the motion in limine, jury questionnaire, etc.  Best

[×]

From:      "Williams, CJ (USAIAN)" <CJ.Williams@
To:        "Mark_Bennett@                    ' <Mark_Bennett@
Cc:        Michael Burt <mb@r                      "Bowers, Jamie (USAIAN)" <Jamie.Bowers@       ,
"Jennifer_Gill@                <Jennifer_Gill@             , Marcia Morrissey <morrisseyMA@       ,
"nspemberton@                ' <nspemberton@
Date:      03/21/2013 06:47 PM
Subject:    Re: US v. Johnson proposed juror questionnaire

With all due respect to mr Burt, he has no basis to spectate as to the position of the USA or why the decision was made by the AG to continue to seek the dp in this case.  In any event, he should know that only the AG has the authority to make a decision re whether to seek. The AG has made the decision.  Mediation with our office is irrelevant.

Sent from my iPhone

On Mar 21, 2013, at 6:40 PM, "Mark_Bennett@              <Mark_Bennett@               wrote:

>
> I doubt Judge O'Neill had the authority to do what he did but then again I
> am not in the 9th Circuit□
>
> Mark W. Bennett
> U.S. District Court Judge
> Northern District of Iowa
> Sioux City, Iowa
> Sent from my iPad
>
> On Mar 21, 2013, at 6:36 PM, "Michael Burt" <mb@                   wrote:
>
>> See attached. Not exactly on point, but close enough.
>>
>> -----Original Message-----
>> From: Mark_Bennett@
> [mailto:Mark_Bennett@
>> Sent: Thursday, March 21, 2013 4:25 PM
>> To: Michael Burt
>> Cc: Williams, CJ (USAIAN); Bowers, Jamie (USAIAN);
> Jennifer_Gill@                ; Marcia Morrissey;
> nspemberton@
>> Subject: Re: US v. Johnson proposed juror questionnaire
>>
>>
>> Not unless the a government agreed to it. I do not believe I have the
> authority to compel Mr. Williams or the acting U.S. Attorney to a
> settlement conference. Good try, however.
>>
>> Mark W. Bennett
>> U.S. District Court Judge

ADDENDUM P. 6

```
>> Northern District of Iowa
>> Sioux City, Iowa
>> Sent from my iPad
>>
>> On Mar 21, 2013, at 6:16 PM, "Michael Burt" <mb@          >
> wrote:
>>
>>> Dear Judge Bennett
>>>    In light of Mr. Williams' statement that an "appeal looks likely"
>> would the Court consider referring this case to a settlement judge for
> discussion of settlement possibilities. Mr. Williams would probably respond
> that there is nothing to discuss because the decision is made by the
> Attorney General, not by the local US Attorney. But the defense strongly
> suspects that the only reason that the AG is pursing the death penalty at
> this point is because the local US Attorney has recommended it. We feel
> that if we could bring the local US Attorney around on this point, the AG
> would change his mind. Anyway, there is very little harm in at least
> exploring the issue with a skilled mediator.
>>>
>>> -----Original Message-----
>>> From: Mark_Bennett@
>> [mailto:Mark_Bennett@            ]
>>> Sent: Thursday, March 21, 2013 3:03 PM
>>> To: Williams, CJ (USAIAN)
>>> Cc: mb@                    Bowers, Jamie (USAIAN);
>> Jennifer_Gill@              Marcia Morrissey;
> nspemberton@
>>> Subject: Re: US v. Johnson proposed juror questionnaire
>>>
>>>
>>> Will wait to find out. While I am waiting for a reply brief I intend
>>> to
>> rule on the motion in limine prior to the 4th. I doubt that much of the
> evidence, if any, will be excluded.
>>>
>>> Mark W. Bennett
>>> U.S. District Court Judge
>>> Northern District of Iowa
>>> Sioux City, Iowa
>>> Sent from my iPad
>>>
>>> On Mar 21, 2013, at 4:53 PM, "Williams, CJ (USAIAN)"
>>> <CJ.Williams@          wrote:
>>>
>>>> The deadline for us to file a notice of appeal is April 4, I believe.
>>> Appeal looks likely.
>>>>
>>>> Sent from my iPhone
>>>>
>>>> On Mar 21, 2013, at 4:13 PM, "Mark  Bennett@            >
>>> <Mark_Bennett@              >
>>>>
>>>>> Before our court goes to the considerable expense of sending out
>>>>> the
>>> questionnaire I would like to know if the gov plans on appealing any
>> prior rulings. If so there is no need to send them out. If they don't
> know yet can u tell me when u will know. I may hold off sending the
> questionnaires till after the deadline for appeal ..that will of course
> reduce counsels time for review them. Best
>>>>> [cid:_2_09F93C7809FA597C007485CC86257B35]
>>>>>
>>>>>
>>>>>
>>>>> From:       "Michael Burt" <mb@              >
>>>>> To:        <Mark_Bennett@            >
>>> <nspemberton@          >
>>>>> Cc:        "'CJ Williams'" <CJ.Williams@        >, "'Jamie
> Bowers'"
>>> <Jamie.Bowers@         >, <Jennifer_Gill@            "'Marcia
>> Morrissey'" <morrisseyMA@         >
>>>>> Date:      03/20/2013 08:54 PM
>>>>> Subject:    RE: US v. Johnson proposed juror questionnaire
>>>>> _____
```

ADDENDUM P. 7

```
>>>>>
>>>>>
>>>>>
>>>>> Dear Judge
>>>>>        Although I am still researching this issue, the
>>>>> attached
>>> case from North Carolina contains a good summary of the law on this
>> point.
>>>>>
>>>>> Michael Burt
>>>>> Law Office of Michael Burt
>>>>> 1000 Brannan Street, Suite 400
>>>>> San Francisco, California 94103-4888
>>>>> 415-522-1508 phone
>>>>> 415-522-1506 fax
>>>>> mb@
>>>>>
>>>>> From: Mark_Bennett@
>>> [mailto:Mark_Bennett@
>>>>> Sent: Wednesday, March 20, 2013 10:43 AM
>>>>> To: nspemberton@              :
>>>>> Cc: CJ Williams; Jamie Bowers; Jennifer_Gill@
>>> 'Michael Burt'; Marcia Morrissey
>>>>> Subject: Re: US v. Johnson proposed juror questionnaire
>>>>>
>>>>> Dear Counsel,
>>>>>
>>>>>
>>>>> I am ruling in favor of the defense on the two disputed issues in
>>>>> the
>>> questionnaire. I am wonder if either party has any authority for what
>> happens if a juror in jury selection or after being  selected indicates
> they know about the prior death sentence. I assume that is insufficient by
> itself to justify a challenge for cause  or remove of the seated juror. I
> would think that a potential juror or seated juror can only be excused for
> cause if that fact would interfere with their ability to be fair and
> impartial. I do intend to try and rehabilitate jurors on this issue should
> it arise deviating from my standard practice. Also, where is the shorter
> questionnaire on ability to serve for the length of trial? Thanks
>>>>>
>>>>>
>>>>> [cid:_2_09FAB95C09FAB2DC007485CC86257B35]
>>>>>
>>>>>
>>>>>
>>>>> From:      "Nancy Pemberton"
>>> <nspemberton@
>>>>> To:
>>> <Mark_Bennett@
>>>>
>>>>> Cc:
> <Jennifer_Gill@
>>> "Jamie Bowers
>>> <Jamie.Bowers@
>> "CJ Williams" <CJ.Williams@                    ·
>> "'Michael Burt'" <mb@                        ,
>> "Marcia Morrissey" <morrisseyMA@
>>>>> Date:      03/19/2013 04:30 PM
>>>>> Subject:     US v. Johnson proposed juror questionnaire
>>>>>
>>>>> _____
>>>>>
>>>>>
>>>>>
>>>>>
>>>>> Dear Judge Bennett:
>>>>>
>>>>> Attached is the juror questionnaire, revised to reflect the
>>>>> decisions
>>> made at the March 4th hearing.  The parties subsequently agreed to
>>> delete
>> question 63, which asked whether prospective jurors knew any of the
> witnesses to be called in this case.  We thought that question could be
```

> asked when jurors were summoned for voir dire. If the Court prefers to ask
> it now, we will send an agreed-upon list of witnesses in the next few days.
>>>>>
>>>>> Three items are still outstanding:
>>>>>
>>>>> (1)   Your admonition regarding publicity in the introduction at
>> page
>>> 2.
>>>>>
>>>>> (2)   The highlighted sentence at page 15, which the government
>> would
>>> like stricken and the defense would like to keep. The government's
>> position is that the sentence is surplusage. The defendant's position is
> that this is a unusual concept in American jurisprudence, and thus deserves
> reiteration. Numerous district courts have instructed federal sentencing
> juries, in the main charge, that non-unanimity would result in a life
> sentence. In many of these cases, the court has also given jurors the
> explicit option of a not-unanimous verdict on the verdict form. See, e.g.,
> United States v. Sampson, 335 F. Supp. 2d 166 (D. Mass. 2004) (court
> informed jury of consequences of nonunanimity because this emphasized
> individual responsibility of each juror and ensured each was fully informed
> of consequences of its actions).
>>>>>
>>>>> (3)   The highlighted factor (x) at page 21 , which the government
>>> would like stricken and the defense would like to keep. The
>>> government's
>> position is that the factor is an inappropriate basis for any jury to
> reject the death penalty and they don't want a question that suggests it is
> appropriate for the jury to consider. The defense agrees that the factor
> is an inappropriate basis for jurors to consider. Based on the research of
> the Capital Jury Project, however, it is evident that many jurors find that
> to be a basis to impose (not reject) the death penalty, and that the
> defendant is entitled to know whether jurors might find this inappropriate
> factor to be important. We disagree that the jurors will be misled into
> believing whether any of these factors are appropriate or inappropriate to
> consider. This question was asked in United States v. McCluskey, No.
>>> 10-02734 (D.N.M.) (Exhibit 5 to Declaration of Matthew Rubenstein [Doc.
>>> 967-1], Q 85(f) at p. 24).
>>>>>
>>>>> Please let us know if you have any questions. Thank you.
>>>>>
>>>>> Sincerely,
>>>>>
>>>>> Nancy Pemberton
>>>>>
>>>>>
>>>>> [cid:_2_09F8F81009FAD404007485CC86257B35]
>>>>> [attachment "2013-03-07 jury questionnaire after court hearing
>>> post-revisions to go to court.docx" deleted by Mark
>> Bennett/IAND/08/USCOURTS]
>>>>> <ATT00001.jpg>
>>>>> <ATT00002.jpg>
>>>>> <ATT00003.jpg>
>>>>> <Simpson Cause Challenge.pdf>
>>>> <ATT00001.jpg>
>>>> <ATT00002.jpg>
>>>> <ATT00003.jpg>
>> <McPeters Settlement Order 130129.pdf>

ADDENDUM P. 9

Appellate Case: 13-1739   Page: 10   Date Filed: 06/14/2013   Entry ID: 4045610

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANGELA JOHNSON,<br><br>Defendant. | No. CR 01-3046-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS CERTAIN STATUTORY AND NON-STATUTORY AGGRAVATING FACTORS FROM THE GOVERNMENT'S THIRD AMENDED NOTICE OF INTENT TO SEEK THE DEATH PENALTY** |

_____

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* ................................................................................ *5*

*II.*    *"CONTEXTUAL" MATTERS* ...................................................... *8*

     *A.*    *Scope Of The "Penalty Retrial"* ............................................... *9*

     *B.*    *Aggravating Factors* .................................................................. *14*

         *1.*    *The role of aggravating factors* ....................................... *14*

         *2.*    *"Statutory aggravating factors"* ..................................... *16*

             *a.*    *Factors that can be considered* .............................. *16*

                 *i.*    *Factors alleged and noticed* .......................... *17*

                 *ii.*    *Factors that can properly be considered* ............ *18*

             *b.*    *Factors that can be challenged* ............................... *22*

     *C.*    *Penalties* ................................................................................. *23*

         *1.*    *Penalties vacated* ........................................................... *23*

         *2.*    *Possibility of a death sentence on Count 6* ......................... *23*

             *a.*    *Arguments of the parties* ...................................... *24*

             *b.*    *Controlling authority* .......................................... *24*

             *c.*    *Analysis* ............................................................. *26*

Addendum p. 10

|  |  | d. | Summary.................................................. | 29 |
|  |  | 3. | Possibility of a sentence less than life without parole on all Counts ...................................................... | 29 |
|  |  |  | a. Arguments of the parties ..................................... | 30 |
|  |  |  | b. The statutory sentencing scheme............................. | 31 |
|  |  |  | c. Analysis .................................................... | 32 |
|  |  |  | i. Johnson's authority ..................................... | 32 |
|  |  |  | ii. The jury's ability to consider lesser penalties ...... | 33 |
|  |  |  | iii. The jury's ability to recommend a lesser penalty ...................................................... | 36 |
|  |  |  | iv. The jury's ability to impose a lesser penalty........ | 37 |
|  |  |  | d. Summary.................................................. | 40 |
|  | D. | **Necessity Of A Preliminary Evidentiary Showing** ......................... | 40 |
|  |  | 1. | Arguments of the parties.................................... | 41 |
|  |  | 2. | Analysis .................................................... | 41 |
| III. | | **CHALLENGES TO STATUTORY AGGRAVATING FACTORS**................ | 48 |
| IV. | | **CHALLENGES TO THE NON-STATUTORY AGGRAVATING FACTORS** ...................................................... | 50 |
|  | A. | **"Multiple Killings" And "Passage Of Time"** ............................... | 50 |
|  |  | 1. | Allegations of the factors ................................. | 50 |
|  |  | 2. | Arguments of the parties.................................... | 50 |
|  |  | 3. | Standards for "duplicativeness"........................... | 51 |
|  |  | 4. | Analysis .................................................... | 55 |
|  | B. | **"Lack of remorse"** ......................................... | 58 |
|  |  | 1. | Allegation of the factor.................................... | 58 |
|  |  | 2. | Arguments of the parties.................................... | 59 |
|  |  | 3. | Authority regarding "lack of remorse" as a separate factor..... | 60 |
|  |  | 4. | Analysis .................................................... | 65 |
|  | C. | **"Uncharged Criminal Conduct"**................................. | 67 |
|  |  | 1. | Allegations of the factors ................................. | 67 |
|  |  | 2. | Duplicativeness ............................................ | 69 |
|  |  | 3. | Inadmissibility in general ................................. | 71 |
|  |  |  | a. Statutory and other limitations ............................. | 71 |
|  |  |  | i. Arguments of the parties ............................. | 71 |
|  |  |  | ii. The purported statutory bar.......................... | 72 |
|  |  |  | iii. Admissibility of unadjudicated conduct in capital cases .............................................. | 74 |

Addendum p. 11

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 2 of 123
Appellate Case: 13-1739   Page: 12   Date Filed: 06/14/2013 Entry ID: 4045610

     *iv. Admissibility of unadjudicated criminal conduct as an independent aggravating factor* ..... *75*

     *v. Summary* ................................................... *78*

   *b. Biased sentencing* ........................................ *79*

   *c. More prejudicial than probative* ............................ *81*

   *d. Relevance and heightened reliability* ........................ *82*

  *4. Challenges to specific "uncharged criminal conduct" factors* ................................................... *82*

   *a. Standards for sufficiency of "non-statutory aggravating factors"* ..................................... *82*

   *b. The "assault" on Officer Tyler* ............................ *90*

   *c. The "perjury" factor* ..................................... *92*

   *d. The "threats and bravado" incidents* ........................ *93*

    *i. Arguments of the parties* ............................ *94*

    *ii. Analysis* ............................................ *94*

   *e. Assisting in the release of Putzier* ......................... *97*

    *i. Arguments of the parties* ............................ *97*

    *ii. Analysis* ............................................ *97*

   *f. Conspiring to help Honken escape* ......................... *98*

   *g. Uncharged distribution of methamphetamine after 1997* ................................................... *100*

    *i. Arguments of the parties* ............................ *100*

    *ii. Analysis* ............................................ *100*

   *h. Soliciting a crime of violence* ............................ *103*

    *i. Arguments of the parties* ............................ *103*

    *ii. Analysis* ............................................ *104*

 *D. Future Dangerousness* ........................................ *105*

  *1. Allegation of the factor* ..................................... *105*

  *2. Collateral estoppel/double jeopardy* .......................... *106*

  *3. Limitation to "future dangerousness in prison"* ................. *108*

  *4. Insufficient notice* .......................................... *111*

  *5. Sufficiency of the inmate assaults alleged* ..................... *113*

 *E. Victim Impact* ............................................... *114*

  *1. Allegations of the factors* .................................... *114*

  *2. Arguments of the parties* ..................................... *115*

  *3. Analysis* ................................................... *116*

*V. VINDICTIVENESS* ................................................... *118*

*VI. CONCLUSION* ....................................................... *122*

Addendum p. 12

In this capital case, the defendant was convicted of aiding and abetting five murders in furtherance of a continuing criminal enterprise (CCE murder), in violation of 21 U.S.C. § 848(e), and sentenced to death for four of the murders and to life imprisonment without parole for the fifth. However, I ordered a resentencing hearing before a new jury, *i.e.*, a "penalty retrial," as relief on the defendant's § 2255 Motion.[1] This case is now before me on the defendant's challenge to certain aggravating factors in the prosecution's amended notice of intent to seek the death penalty filed in anticipation of the "penalty retrial." The defendant's challenges to the aggravating factors in question are wide-ranging, including contentions that certain aggravating factors are duplicative or are insufficient to justify a sentence of death and that the prosecution's assertion of additional and reformulated aggravating factors at this point in the proceedings is vindictive. The prosecution stands fast on its assertion of all of the challenged aggravating factors, in the manner asserted, as proper and appropriate, because this "penalty retrial" has given the prosecution a "do over," with lessons learned from hindsight, just as it has given the defendant a "do over," owing to her trial counsel's errors. I find that, in their arguments challenging and supporting various aggravating factors, the parties have raised a number of issues relevant to the "context" of the entire "penalty retrial," because those issues have an impact on such things as what evidence will be admissible and what questions the new jury will be required to answer in the "penalty retrial." Thus, this ruling begins with the resolution of those "contextual" issues, before turning to resolution of the defendant's specific challenges to various aggravating factors.

---

[1] *See Johnson v. United States*, 860 F. Supp. 2d 663 (N.D. Iowa 2012).

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 4 of 123
Appellate Case: 13-1739    Page: 14    Date Filed: 06/14/2013 Entry ID: 4045610

## I.    INTRODUCTION

On May 24, 2005, a jury convicted defendant Angela Johnson of five counts of aiding and abetting murder in furtherance of a continuing criminal enterprise (CCE murder) in violation of 21 U.S.C. § 848(e), which are capital offenses under the Anti-Drug Abuse Act (ADAA).  *See* Verdict Form (docket no. 527).  These charges arose from the murders, by Johnson and her separately-indicted co-defendant Dustin Honken, who had been charged as the "principal," of two adults, Greg Nicholson and Lori Duncan, and Lori Duncan's two children, Kandi Duncan (age 10) and Amber Duncan (age 6), in one episode in July 1993, and the subsequent murder of another adult, Terry DeGeus, in a separate episode in November 1993.  On May 31, 2005, the same jury found Johnson "eligible" for the death penalty on all five CCE murder convictions.  *See* "Eligibility Phase" Verdict Form (docket no. 545).  On June 21, 2005, the same jury also entered a "penalty phase" verdict, imposing a life sentence without possibility of parole for the CCE murder of Gregory Nicholson, but sentences of death for the CCE murders of Lori Duncan, Kandi Duncan, Amber Duncan, and Terry DeGeus.  "Penalty Phase" Verdict Form (docket no. 593).[2]  On March 22, 2012, however, I

---

[2] Although Dustin Honken was convicted as the principal in the murders, he received the death penalty only for the murders of the children.  *See, e.g., United States v. Honken*, 381 F. Supp. 2d 936 (N.D. Iowa 2005) (denying Honken's post-trial motion for judgment of acquittal or new trial).  The jury in Johnson's case also convicted her of aiding and abetting five counts of murder while engaging in a drug conspiracy (conspiracy murder), also in violation of 21 U.S.C. § 848(e), and recommended the same penalties on those convictions as on the corresponding CCE murder convictions.  The conspiracy murder convictions were vacated on June 11, 2009, as multiplicitous, in light of the CCE murder convictions, *see* Order Vacating, In Part, Convictions And Sentences And Directing Entry Of Amended Judgment (docket no. 776), pursuant to a remand from the Eighth Circuit Court of Appeals, but the

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 5 of 123
Appellate Case: 13-1739    Page: 15    Date Filed: 06/14/2013 Entry ID: 4045610

granted, in part, Johnson's § 2255 Motion by vacating her four death sentences and one life sentence for CCE murder. *Johnson v. United States*, 860 F. Supp. 2d 663 (N.D. Iowa 2012).

The prosecution then opted for a resentencing hearing before a new jury, *i.e.*, a "penalty retrial," pursuant to former 21 U.S.C. § 848(i)(1)(B) (2005) and the requirements of former 21 U.S.C. § 848(g)-(o) (2005), to determine the penalty for Johnson's convictions, rather than withdraw its notice of intent to seek the death penalty, filed pursuant to former 21 U.S.C. § 848(h) (2005), which would have allowed the court to set a hearing to impose sentences of life imprisonment without parole, pursuant to former 21 U.S.C. § 848(p) (2005).[3]  Pursuant to a Scheduling Order (docket no. 858), I set the "penalty retrial" for June 3, 2013, and, *inter alia*, a deadline of September 14, 2012, for motions making any facial or as applied challenges to the use of the death penalty in this case; a deadline of October 1, 2012, for the prosecution to file any amendment to its Notice Of Intent To Seek The Death Penalty (Notice Of Intent); and a deadline of November 1, 2012, for the defendant to file any motions challenging the sufficiency of the prosecution's Notice Of Intent.

---

appellate court otherwise affirmed Johnson's convictions and sentences. *United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007).

[3] As I explained in a prior ruling in anticipation of the "penalty retrial," the "penalty retrial" will be pursuant to provisions of former § 848(g)-(r), which codified death penalty procedures of the Anti-Drug Abuse Act (ADAA), notwithstanding that those provisions were repealed by the U.S.A. Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109–177, § 221, 120 Stat. 192, 231 (2006), rather than pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.*, which now provides uniform procedures for determining the penalty for nearly all federal capital offenses. *See United States v. Johnson*, ___ F. Supp. 2d ___, ___, 2012 WL 5275491, *1-*3 (N.D. Iowa Oct. 25, 2012).

6

Addendum p. 15

Among her numerous motions filed on the September 14, 2012, deadline, Johnson included a Motion To Dismiss Particular Aggravating Factors From The Second Superseding Indictment, And To Strike Particular Aggravating Factors From The Second Notice Of Intent To Seek The Death Penalty, And For Other Relief (Motion To Dismiss Or Strike Certain Aggravating Factors) (docket no. 865). In my October 25, 2012, Memorandum Opinion And Order Regarding Defendant's Challenges To Capital Resentencing Hearing And The Second Superseding Indictment And Requests For Discovery (docket no. 903), *published at United States v. Johnson*, ___ F. Supp. 2d ___, 2012 WL 5275491 (N.D. Iowa Oct. 25, 2012), among a great many other things, I ruled that the prosecution may and had properly asserted non-statutory aggravating factors in its Second Notice Of Intent To Seek The Death Penalty (Second Notice Of Intent) (docket no. 141), and that the jurors not only may but must consider those non-statutory aggravating factors for which notice has been given in the course of the individualized determination of the appropriate penalties for Johnson's CCE murder convictions. On the other hand, I found that the prosecution's filing of a Third Amended Notice Of Intent To Seek The Death Penalty (Third Notice Of Intent) (docket no. 879) on October 1, 2012, mooted the part of Johnson's Motion To Dismiss Or Strike Certain Aggravating Factors in which she contended that certain statutory and non-statutory aggravating factors set forth in the Second Superseding Indictment and/or the Second Notice Of Intent must be stricken or clarified, albeit without prejudice to timely reassertion as to the Third Notice Of Intent.

On November 1, 2012, Johnson filed her Motion To Dismiss Certain Statutory And Non-Statutory Aggravating Factors From The Government's Third Amended Notice Of Intent To Seek The Death Penalty (Challenge To Third Notice Of Intent) (docket no. 906), which is now before me. In her Challenge To Third Notice Of Intent, Johnson reasserts her original challenges to the prosecution's aggravating factors

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 7 of 123
Appellate Case: 13-1739   Page: 17   Date Filed: 06/14/2013 Entry ID: 4045610

and adds new challenges specific to the aggravating factors as reformulated or added in the Third Notice Of Intent. The prosecution filed its Resistance (docket no. 919), on November 19, 2012, and Johnson filed her Reply (docket no. 929), on December 7, 2012. In light of some of Johnson's arguments in her Reply about the scope of the "penalty retrial," the prosecution filed a Surreply To Defendant's Motion To Dismiss Certain Statutory And Non-Statutory Aggravating Factors From Government's Third Amended Notice Of Intent To Seek The Death Penalty (Surreply) (docket no. 937), on December 17, 2012.

I conclude that Johnson's Challenge To Third Notice Of Intent is fully submitted on the written submissions.

## II.     "CONTEXTUAL" MATTERS

As noted above, Johnson's Challenge To Third Notice Of Intent is wide-ranging, incorporating her original challenges to the Second Notice Of Intent and asserting many new challenges. Somewhat more specifically, Johnson asserts that the prosecution has vindictively reasserted, reformulated, and added to the aggravating factors, after her success on her § 2255 Motion; asserted aggravating factors that are inapplicable, where she did not personally kill the victims; asserted aggravating factors that are duplicative of other aggravating factors or the charged offenses; asserted "lack of remorse" as a separate aggravating factor, when it is properly an aspect of "future dangerousness"; asserted numerous alleged incidents of uncharged criminal conduct as separate, stand-alone aggravating factors, when they are properly aspects of a single "criminal conduct" aggravating factor; asserted aggravating factors without sufficiently reliable evidence to support them; and asserted aggravating factors insufficient to warrant a death verdict, even if they are supported by sufficient evidence.

In the course of their arguments on these challenges, however, the parties have raised a number of issues that I conclude must be resolved to put in context my subsequent analysis of Johnson's specific challenges to various aggravating factors and, just as importantly, to establish the context for the "penalty retrial," because those issues have an impact on such things as what evidence will be admissible and what questions the new jury will be required to answer in the "penalty retrial." Those "contextual" issues include the scope of the "penalty retrial," what aggravating factors are subject to challenge, what penalties are at issue, and whether or not a preliminary evidentiary showing is necessary before the prosecution can assert certain aggravating factors in the "penalty retrial." I will begin my analysis by resolving those "contextual" issues, but I will reserve for later the question of whether the Third Notice Of Intent is "vindictive," until after I have considered whether the challenged aggravating factors are otherwise properly asserted.

### A.     Scope Of The "Penalty Retrial"

In her Reply, Johnson acknowledges that she belatedly realized that, not only do the original jury's "merits phase" verdicts stand—that is, her convictions on the five CCE murder charges—but that the original jury's "eligibility phase" verdicts also stand—that is, the original jury's findings that she is "eligible" for the death penalty on all five CCE murder convictions. Johnson states that this realization has fundamentally changed her position as to the statutory aggravating factors alleged in the Third Notice Of Intent. In its Surreply, however, the prosecution argues that, while I "trifurcated" Johnson's trial into separate "merits," "eligibility," and "penalty" phases, subsections (*i*) and (j) of former § 848 only provide for a single sentencing hearing. Thus, the prosecution argues that, by vacating Johnson's sentences and ordering a "penalty retrial," I necessarily vacated both the "eligibility phase" and "penalty phase" verdicts.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 9 of 123
Appellate Case: 13-1739    Page: 19    Date Filed: 06/14/2013 Entry ID: 4045610

The prosecution also argues that it would be unreasonable—and prejudicial to it—to expect a new jury to weigh "empty labels" for "statutory aggravating factors," which had been found in the original "eligibility phase," without any evidence to support them, if the "eligibility phase" is not retried. The prosecution argues that Johnson cannot pick and choose the portions of the sentencing hearing that will be retried.

As I recounted in my ruling on Johnson's post-trial motions, I "trifurcated" Johnson's trial on the § 848(e) charges against her:

> The court also ruled that Johnson's trial would be "trifurcated" into three phases: (1) a "merits phase," to determine guilt or innocence of the charged offenses; (2) an "eligibility phase," to determine whether one "gateway aggravating factor" identified in § 848(n)(1) and one or more of the "statutory aggravating factors" in § 848(n)(2) through (12) were present; and (3) a "penalty phase," to determine whether "non-statutory aggravating factors" and "mitigating factors" were present and "'whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death.'" *See United States v. Johnson*, 362 F. Supp. 2d 1043, 1099–1111 (N.D. Iowa 2005) (quoting 21 U.S.C. § 848(k)).

*United States v. Johnson*, 403 F. Supp. 2d 721, 747 (N.D. Iowa 2005).

Johnson is correct that, in my ruling on her § 2255 Motion, I did not grant any relief from the original jury's verdicts convicting her on all counts against her, although she alleged errors in or affecting the "merits phase" of her trial in her § 2255 Motion. *Johnson*, 860 F. Supp. 2d at 915-20. She is also correct that she did not seek, and I did not grant, any relief from the original jury's determination that she is "eligible" for the death penalty on all five CCE murder charges in the "eligibility phase." *Id.* Thus, the relief that I granted her is only a "penalty retrial," *id.*, that is, a retrial of the third phase to determine whether "non-statutory aggravating factors" and "mitigating

10

factors" are present and "whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death." *See* former 21 U.S.C. § 848(k).

The prosecution argues, however, that the "do over" granted in this case requires a retrial of both the "eligibility phase" and the "penalty phase," because former § 848(*i*) and (j) provide for only a *single* sentencing hearing. The prosecution is correct that former § 848(*i*) provides that, if a defendant is found guilty of a capital offense defined in § 848(e), the court "shall conduct a separate sentencing hearing to determine the punishment to be imposed," and that it authorizes that "separate sentencing hearing" to be before a new jury empaneled for that purpose, if, *inter alia*, the original jury that determined guilt has been discharged or the sentence originally imposed must be redetermined. Former 21 U.S.C. § 848(*i*)(B)(1)(iii) & (iv). The prosecution is also correct that former § 848(j) provides for proof of *all* aggravating and mitigating factors in "the sentencing hearing." Former 21 U.S.C. § 848(j). Nevertheless, these and other sentencing provisions of former § 848 do not preclude sequential *presentation* of "information" about "statutory aggravating factors," then "non-statutory aggravating factors" and "mitigating factors," and specifically *require* sequential *determination* of whether or not "statutory aggravating factors" exist, then whether or not "non-statutory aggravating factors" and "mitigating factors" exist.

Specifically, former § 848(j) provides, in part, "Where information is presented relating to any of the aggravating factors set forth in subsection (n) of this section [*i.e.*, 'statutory aggravating factors'], information may be presented relating to any other aggravating factor [*i.e.*, 'non-statutory aggravating factor'] for which notice has been provided under subsection (h)(1)(B) of this section." Former 21 U.S.C. § 848(j) (also providing that "[t]he Government shall open the argument"; then "[t]he defendant shall

Addendum p. 20
Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 11 of 123
Appellate Case: 13-1739   Page: 21   Date Filed: 06/14/2013 Entry ID: 4045610

be permitted to reply"; then "[t]he Government shall then be permitted to reply in rebuttal."). In other words, no information about "non-statutory aggravating factors" (or "mitigating factors") may be presented until information about "statutory aggravating factors" is presented.

Moreover, former § 848(k) expressly *requires* that the jury make sequential findings about the existence of "statutory aggravating factors," then about the existence of "non-statutory aggravating factors" and "mitigating factors" and the balancing of all "aggravating factors" and "mitigating factors," as follows:

> If one of the aggravating factors set forth in subsection (n)(1) of this section and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) of this section is found to exist, a special finding identifying any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section, may be returned. . . . If an aggravating factor set forth in subsection (n)(1) of this section and one or more of the other aggravating factors set forth in subsection (n) of this section are found to exist, the jury, or if there is no jury, the court, shall then consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death.

Former 21 U.S.C. § 848(k). Thus, a determination of the existence of "statutory aggravating factors" is required before the jury makes any determination of the existence of "non-statutory aggravating factors" and "mitigating factors."

It follows that it is permissible to require the presentation of any information or argument about "statutory aggravating factors" and the jury's determination of the existence of "statutory aggravating factors" in an "eligibility phase" of the trial that is separate from both a preceding "merits phase," involving evidence and a determination of guilt, and a subsequent "penalty phase," involving information about "non-statutory

12

Addendum p. 21

aggravating factors" and "mitigating factors" and the weighing of those factors with the "statutory aggravating factors." *Cf. United States v. Bolden*, 545 F.3d 609, 618 (8th Cir. 2008) (noting that, in light of the plain language of 18 U.S.C. §§ 3593(b)-(e), "the FDPA contemplates a single penalty phase hearing at which all relevant evidence is admitted and, if the defendant is found eligible for the death penalty, ultimately weighed by the jury"; that a number of district courts, including this one, had nevertheless concluded that the sentencing hearing could be "bifurcated" into "eligibility" and "selection" phases; that "[t]he only circuit to address this issue under the FDPA concluded that the statute *contemplates but does not require* a single penalty phase proceeding and encouraged district courts ruling on motions to trifurcate 'to consider carefully the ramifications of presenting . . . evidence that would otherwise be inadmissible in the guilt phase . . . to a jury that has not yet made findings concerning death eligibility,'" (quoting *United States v. Fell*, 531 F.3d 197, 240 n. 28 (2d Cir. 2008); explaining that "[w]e agree that is a sound reading of the statute"; but holding that the district court did not abuse its discretion in declining to bifurcate the sentencing hearing). Indeed, that is what happened in Johnson's original trial.

Moreover, because sequential presentation and determination is required, and may occur in separate "phases," in a case where the defendant did not seek and the court did not grant relief from the original jury's findings as to the existence of "statutory aggravating factors" in the "eligibility phase," nothing requires that the original jury's findings about the existence of "statutory aggravating factors" in the "eligibility phase" be reopened in a resentencing hearing before a new jury pursuant to § 848(*i*). For the reasons stated below, beginning at page 20, the prosecution's concern that it will be prejudiced by a retrial limited to the "penalty phase" is unavailing. Therefore, the "penalty retrial" here is properly limited to a retrial of the "penalty phase," involving the determination of the existence of "non-statutory aggravating

factors" and "mitigating factors" by the new jury and the new jury's weighing of the "statutory aggravating factors" found by the original jury with the "non-statutory aggravating factors" found by the new jury against any "mitigating factors" found by the new jury.

### B.    Aggravating Factors

#### 1.    The role of aggravating factors

The limitation of the "penalty retrial" to the third phase of the original trial gives rise to other issues. One such issue is the role of "statutory aggravating factors" and "non-statutory aggravating factors" in the phase of the trial to be retried. This is so, because "statutory aggravating factors" play a unique role in the "eligibility phase" of a capital trial after conviction for a capital offense pursuant to § 848(e), but "statutory aggravating factors" and "non-statutory aggravating factors" perform overlapping roles in the determination of the appropriate penalty for a conviction for a capital offense pursuant to § 848 in the "penalty phase" of such a capital trial.

*In the "eligibility phase,"* the jurors determine whether or not certain "statutory aggravating factors" exist. *See* former 21 U.S.C. § 848(k). Such "statutory aggravating factors" are defined in this case in former § 848(n). "Statutory aggravating factors," if found to exist, "elevate the available statutory maximum sentence from life imprisonment to death." *Johnson*, ___ F. Supp. 2d at ___, 2012 WL 5275491 at *5 (internal quotation marks and citations omitted). This is so, because "statutory aggravating factors" are "the circumstances which make a defendant eligible for the death penalty." *Id*. at *13 (quotation marks and citations omitted); *see also* former 21 U.S.C. § 848(k). To put it another way, "statutory aggravating factors" "channel the sentencer's discretion" in deciding whether or not a defendant is "eligible" for the death penalty. *Id*.

Addendum p. 23

Appellate Case: 13-1739    Page: 24    Date Filed: 06/14/2013 Entry ID: 4045610

*In the "penalty phase,"* the jurors first determine whether or not "non-statutory aggravating factors" exist. *See* former 21 U.S.C. § 848(k). "Non-statutory aggravating factors" do not increase the maximum punishment to which the defendant is subject, because they are neither sufficient nor necessary under the ADAA (or the FDPA) for a sentence of death. *Johnson*, ___ F. Supp. 2d at ___, 2012 WL 5275491 at *6; *see also* former 21 U.S.C. § 848(k). Instead, even after *Ring v. Arizona*, 536 U.S. 584 (2002), the purpose of "non-statutory aggravating factors" is to allow for an individualized determination of whether a death sentence is justified for a particular defendant—in other words, they help to inform the selection decision. *Id*. at *6, *13-*14.

*Also in the "penalty phase,"* the jurors must weigh aggravating factors against mitigating factors. Although "non-statutory aggravating factors" have no role *in the "eligibility phase"* in determining a defendant's "eligibility" for a death sentence (only "statutory aggravating factors" have that role), "non-statutory aggravating factors" and "statutory aggravating factors" play the *same* role *in the "penalty phase,"* because *all* aggravating factors found to exist must be weighed against any "mitigating factors" found to exist to determine the appropriate penalty for a particular defendant. *See* former 21 U.S.C. § 848(h)(1)(B) (requiring the prosecution to give notice of "the aggravating factors enumerated in subsection (n) of this section [*i.e.*, the 'statutory aggravating factors'] and any other aggravating factors [*i.e.*, the 'non-statutory aggravating factors'] which the Government will seek to prove as the basis for the death penalty"); former 21 U.S.C. § 848(j) ("In the sentencing hearing, information may be presented as to matters relating to any of the aggravating or mitigating factors set forth in subsections (m) and (n) of this section, or any other mitigating factor or any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section."); former 21 U.S.C. § 848(k) (requiring weighing of "the aggravating factors

Addendum p. 24

found to exist" with mitigating factors found to exist to determine whether a death sentence is justified).

### 2. *"Statutory aggravating factors"*

In this case, in the "eligibility phase," Johnson's original jury made the determination that she was "eligible" for the death penalty on all five CCE murder charges, based on its finding that certain "statutory aggravating factors" existed. As explained above, that determination will not be revisited in the "penalty retrial" before a new jury. However, the "statutory aggravating factors" found by the original jury in the "eligibility phase" are *still* relevant in the retrial of the final "penalty phase" before a new jury, because, in the "penalty phase," both "statutory aggravating factors" and "non-statutory aggravating factors" are considered for the purpose of an individualized determination of whether a death sentence is justified for a particular defendant, *i.e.,* they help inform the selection decision. *Johnson*, ___ F. Supp. 2d at ___, 2012 WL 5275491 at *6, *13-*14 (quotation marks and internal citations omitted).

Further questions follow from the conclusion that "statutory aggravating factors" are still relevant in, and perform the same role as "non-statutory aggravating factors" in, the retrial of the "penalty phase," notwithstanding that the "eligibility phase" will not be retried. The first question is, what "statutory aggravating factors" can be considered *by the new jury?* The second question is, what "statutory aggravating factors" can now be challenged *by the defendant?*

### a. *Factors that can be considered*

The question of what "statutory aggravating factors" can be considered in the "penalty retrial" arises, because the Third Notice Of Intent does not conform to the original jury's "eligibility phase" findings of "statutory aggravating factors." *See* "Eligibility Phase" Verdict Form (docket no. 545). Instead, it reiterates some

16

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 16 of 123
Appellate Case: 13-1739   Page: 26   Date Filed: 06/14/2013 Entry ID: 4045610

additional "statutory aggravating factors" alleged in the Second Superseding Indictment (docket no. 233).

### i. *Factors alleged and noticed*

More specifically, the Second Superseding Indictment (docket no. 233), like the Superseding Indictment (docket no. 99), alleged the following "statutory aggravating factors": all three "intent" factors (former § 848(n)(1)(A), (B), and (C)) as to all five CCE murders; "substantial planning and premeditation" (former § 848(n)(8)) as to all five CCE murders; "heinous, cruel, or depraved manner" (former § 848(n)(12)) as to all five CCE murders; and "vulnerable victims" (former § 848(n)(9)) as to the CCE murders of the two children (**Counts 8** and **9**). In the Second Notice of Intent (docket no. 141), filed between the filings of the two Superseding Indictments, and not amended before Johnson's first trial, the prosecution gave notice of intent to rely on these same "statutory aggravating factors" as to the same Counts. In the "eligibility phase" of Johnson's first trial, however, the prosecution relied on only one "intent" factor (former § 848(n)(1)(C))[4] as to all five CCE murders, and on "heinous, cruel, or depraved manner" (former § 848(n)(12)) *only* as to the CCE murders of the three adults (**Count 6**, charging the CCE murder of Greg Nicholson, **Count 7**, charging the CCE murder of Lori Duncan, and **Count 10**, charging the CCE murder of Terry DeGeus), but not as to the CCE murders of the two children (**Counts 8** and **9**). The prosecution continued to rely on "substantial planning and premeditation" (former § 848(n)(8)) as to all five CCE murders, and on "vulnerable victims" (former § 848(n)(9)) as to the CCE murders of the two children (**Counts 8** and **9**).

---

[4] The § 848(n)(1)(C) "intent" factor alleged that Johnson "intentionally engaged in conduct intending that the victim[s] be killed or that lethal force be employed against the victim[s], which resulted in the death of the victim[s]."

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 17 of 123
Appellate Case: 13-1739   Page: 27   Date Filed: 06/14/2013 Entry ID: 4045610

In the "Eligibility Phase" Verdict Form (docket no. 545), the original jury unanimously found the single "intent" factor identified in former § 848(n)(1)(C) (called a "gateway aggravating factor" in the "Eligibility Phase" Instructions and Verdict Form) as to all five CCE murders. The original jury also unanimously found "vulnerable victims" (former § 848(n)(9)) as to the CCE murders of the two children (**Counts 8** and **9**), and "heinous, cruel, or depraved manner" (former § 848(n)(12)) as to the CCE murders of the three adults (**Counts 6**, **7**, and **10**). However, the original jury found "substantial planning and premeditation" (former § 848(n)(8)) *only* as to the CCE murder of Terry DeGeus (**Count 10**), not as to any of the other murders.

The Third Notice Of Intent (docket no. 879), filed in anticipation of the "penalty retrial," matches the original jury's "eligibility phase" findings to the extent that it asserts only a single "intent" factor (former § 848(n)(1)(C)) as to all five CCE murders; "vulnerable victims" (former § 848(n)(9)) as to the CCE murders of the two children (**Counts 8** and **9**); and "heinous, cruel, or depraved manner" (former § 848(n)(12)) as to the CCE murders of the three adults (**Counts 6**, **7**, and **10**). However, The Third Notice Of Intent departs from the original jury's findings by reanimating the prosecution's intent to rely on "substantial planning and premeditation" *as to all five CCE murders*, just as the Second Superseding Indictment and the Second Notice Of Intent alleged, not just as to the CCE murder of Terry DeGeus (**Count 10**), as the original jury found.

### ii. *Factors that can properly be considered*

Because the original jury's "eligibility phase" verdict still stands for the "penalty retrial," the new jury may consider, in its weighing of aggravating and mitigating factors, *only* those "statutory aggravating factors" found by the original jury. *See* former 21 U.S.C. § 848(h)(1)(B), (j), and (k). More specifically, the new jury may consider the § 848(n)(1)(C) "intent" aggravating factor as to all five CCE murders;

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 18 of 123
Appellate Case: 13-1739   Page: 28   Date Filed: 06/14/2013 Entry ID: 4045610

"vulnerable victims" as to the CCE murders of the two children (**Counts 8** and **9**); "heinous, cruel, or depraved manner" as to the CCE murders of the three adults (**Counts 6**, **7**, and **10**); and "substantial planning and premeditation" *only* as to the CCE murder of Terry DeGeus (**Count 10**). The prosecution may *not* assert, and the new jury may *not* consider, "substantial planning and premeditation" as to the CCE murders of Nicholson or the three Duncans (**Counts 6** through **9**).

Moreover, notwithstanding that "statutory aggravating factors" and "non-statutory aggravating factors" perform the same *role* in the "penalty phase," the prosecution will not be allowed to reassert "substantial planning and premeditation" as a "*non*-statutory aggravating factor" as to the CCE murders of Nicholson or the three Duncans (**Counts 6** through **9**) before the new jury in the retrial of the "penalty phase." This is so, because the prosecution would not have been allowed to take such a "second bite at the apple" with the original jury, in the original "penalty phase," after its failure to obtain a unanimous finding, beyond a reasonable doubt, on the "substantial planning and premeditation" factor as a "*statutory* aggravating factor" in the original "eligibility phase." *See* former 21 U.S.C. § 848(k) (permitting the jury to consider, in sequence, whether or not "statutory aggravating factors" exist, then, if so, whether or not "non-statutory aggravating factors" and "mitigating factors" exist, and then weigh only those "aggravating factors" found to exist against those "mitigating factors" found to exist).

I base my conclusion that the original jury's "eligibility phase" verdicts still stand for the retrial of the "penalty phase," and limit the "statutory aggravating factors" that can be weighed in the "penalty retrial," only on the process for making the penalty determination under the pertinent provisions of former § 848 and the lack of any allegation or finding of error in the "eligibility phase" in Johnson's § 2255 proceedings. I do not reach this conclusion on the basis of "double jeopardy," that is, on the basis that the original jury "acquitted" Johnson of the "substantial planning and

19

premeditation" aggravating factor as to all of the CCE murders except Terry DeGeus's in the original "eligibility phase." *See, e.g., Sattazahn v. Pennsylvania*, 537 U.S. 101, 109 (2003) ("[T]he touchstone of double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.'"). Indeed, such a "double jeopardy" argument would be unavailing here. A *finding* of a "statutory aggravating factor" had to be unanimous, but a *rejection* of such a "statutory aggravating factor" did not have to be unanimous. *See* former 21 U.S.C. § 848(k) ("A finding with respect to any aggravating factor must be unanimous," but "[a] finding with respect to a mitigating factor may be made by one or more of the members of the jury."). The statute does not require unanimity as to the *non-existence* of any "aggravating factor," and the original jury was not instructed that unanimity was required to reject an aggravating factor. Thus, *rejection* of a "statutory aggravating factor" would have only the non-preclusive effect of a "deadlocked" or "hung" jury. *Sattazahn*, 537 U.S. at 109-10.

The prosecution argues that it would be unreasonable—and prejudicial to it—to expect a new jury to weigh "empty labels" for "statutory aggravating factors" found by the original jury without any evidence to support them in the "penalty retrial." The answer to this argument is that former § 848(j) expressly contemplates the possibility of a different jury making a sentencing redetermination, as follows:

> *Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial,* or at the trial judge's discretion. Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of

20

> unfair prejudice, confusion of the issues, or misleading the jury.

Former 21 U.S.C. § 848(j) (emphasis added). Here, information about the "statutory aggravating factors," *all of which came from the "merits phase" of the trial in this case*,[5] is found in the trial transcript and exhibits, and that information will be admissible in the "penalty retrial." *Id.* Moreover, I do not read former § 848(j) to *limit* the information concerning "statutory aggravating factors" in a "penalty retrial" to the information in the trial transcript and exhibits. Rather, that provision uses the permissive "may" in reference to use of trial transcripts and exhibits, if the penalty is determined by a different jury, then states that "[a]ny other information relevant to such mitigating or aggravating factors may be presented," subject to a weighing of probative value against potential prejudice. *Id.* Thus, I believe that I have the discretion under this provision to allow the prosecution to present evidence supporting the "statutory aggravating factors" properly before the new jury in the form of live testimony and exhibits, and I will do so in this case. Therefore, the jury will not conduct its weighing with only "empty labels" for "statutory aggravating factors," and the prosecution will not be unfairly prejudiced.

In this case, the obvious exception to use of evidence from the original trial or live testimony is that any evidence of "substantial planning and premeditation" relating to any of the CCE murders other than the murder of Terry DeGeus in **Count 10** will not be admissible for the purpose of reopening the consideration of that "statutory aggravating factor" as to those other murders. Admitting trial evidence, or any other evidence, of "substantial planning and premeditation" for that purpose would be

---

[5] The "eligibility phase" of the original trial consisted only of argument, not new evidence.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 21 of 123
Appellate Case: 13-1739    Page: 31    Date Filed: 06/14/2013 Entry ID: 4045610

unfairly prejudicial, where that "statutory aggravating factor" is not properly at issue as to those Counts in light of the standing "eligibility phase" verdicts. *Id.*

### b. *Factors that can be challenged*

Even after her epiphany concerning the scope of the "penalty retrial," Johnson continues to challenge the assertion in the Third Notice Of Intent of "statutory aggravating factors" based on "substantial planning and premeditation" and "heinous, cruel, or depraved manner" as to *any* Counts, even though they were found by the original jury as to some Counts, on the grounds that the victims were killed by a co-conspirator, not by her, and that those factors are duplicative, vague, and supported by insufficient evidence. Whether Johnson can now assert these challenges is an unsettled preliminary question, where the original jury's "eligibility phase" verdicts were not challenged in Johnson's § 2255 Motion; were not a basis for any § 2255 relief; and are not subject to reconsideration on a "penalty retrial" only because I have concluded that the original jury's "eligibility phase" verdicts still stand, but not because there is any preclusive effect to the original jury's rejection of any "statutory aggravating factors" as to any Counts.

I believe that Johnson is now attempting to amend an oversight by asserting arguments of error—particularly legal error—in the "eligibility phase" that she should have asserted in her § 2255 Motion, but did not. *See* Rule 2(b)(1) of the Rules Governing Section 2255 Proceedings for the United States District Courts (stating that a § 2255 motion must "specify all the grounds for relief available to the moving party"). Indeed, her belated challenges to the "statutory aggravating factors" amount to an impermissible "second or successive" § 2255 Motion for which Johnson has not received authorization from the Circuit Court of Appeals. *See* 28 U.S.C. § 2255(h) (declaring that a successive § 2255 motion is not permitted unless the motion is certified by a panel of the appellate court to contain "newly discovered evidence" or "a new rule

of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"); *see also United States v. Hamilton*, 604 F.3d 572, 574 (8th Cir. 2010) (at resentencing as § 2255 relief, the defendant forfeited a challenge that he failed to raise, but easily could have, in his first § 2255 Motion). Therefore, I will not consider those untimely and procedurally defaulted challenges now.

### C. Penalties

#### 1. Penalties vacated

Johnson also admits in her Reply that she has belatedly recognized that, as the prosecution argued, my ruling granting her relief on her § 2255 Motion vacated not only her death sentences on **Counts 7** through **10**, charging the CCE murders of Lori Duncan, Kandi Duncan, Amber Duncan, and Terry DeGeus, respectively, but also her sentence of life imprisonment without possibility of parole on **Count 6**, charging the CCE murder of Greg Nicholson. Johnson is correct, as was the prosecution, in so reading my ruling on Johnson's § 2255 Motion. *See Johnson*, 860 F. Supp. 2d at 920 ("[T]he Amended Judgment (docket no. 777) in Case No. CR 01–3046–MWB, imposing a sentence of life imprisonment on **Count 6** and sentences of death on **Counts 7, 8, 9,** and **10**, on Johnson, is **vacated**."). Thus, the "penalty retrial" was intended to involve determination of the appropriate penalty on *all five* of Johnson's convictions for CCE murder.

#### 2. Possibility of a death sentence on Count 6

Because I vacated the penalties for *all five* of Johnson's CCE murder convictions, I must address the parties' dispute about what penalties are now available on each Count in the "penalty retrial." That analysis begins with the possibility of a

23

Addendum p. 32

death sentence on **Count 6**, the only Count on which the original jury did not recommend a death sentence.

### a.    *Arguments of the parties*

Johnson argues, in her opening brief, that even if I vacated her life sentence for the CCE murder of Greg Nicholson in **Count 6**, a new jury cannot now sentence her to death, because the original jury found that a death sentence was not appropriate on that Count. Somewhat more specifically, she argues that the "prior jury unanimously rejected the death penalty for this count and the Court sentenced Ms. Johnson to life imprisonment on this Count" and that "[t]he government knows, or should know, that double jeopardy principles would preclude the government from again seeking the death penalty for Count 6." Johnson's Brief In Support Of Challenge To Third Notice Of Intent (Opening Brief) at 6-7. The prosecution counters that, because I vacated the sentence on this Count, as well as on the Counts on which the original jury sentenced Johnson to death, the new jury may properly decide whether or not to sentence her to death on this Count, just as it may do so on the other Counts on which death sentences were vacated. Johnson does not reiterate her argument that she cannot be sentenced to death on **Count 6** in her Reply.

### b.    *Controlling authority*

Johnson cites two Supreme Court cases in support of her contention that she cannot now be sentenced to death on **Count 6**, *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003), and *Bullington v. Missouri*, 451 U.S. 430 (1981). The Supreme Court's decision in *Sattazahn* explains the significance of its decision in *Bullington* and its determination of the double-jeopardy issue in the case before it, as follows:

> The Double Jeopardy Clause of the Fifth Amendment commands that "[n]o person shall … be subject for the same offence to be twice put in jeopardy of life or limb." Under this Clause, once a defendant is placed in jeopardy for an

24

Addendum p. 33

Appellate Case: 13-1739    Page: 34    Date Filed: 06/14/2013 Entry ID: 4045610

offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Where, as here, a defendant is convicted of murder and sentenced to life imprisonment, but appeals the conviction and succeeds in having it set aside, we have held that jeopardy has not terminated, so that the life sentence imposed in connection with the initial conviction raises no double-jeopardy bar to a death sentence on retrial. Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).

In *Stroud*, the only offense at issue was that of murder, and the sentence was imposed by a judge who did not have to make any further findings in order to impose the death penalty. *Id.*, at 18, 40 S.Ct. 50. In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), however, we held that the Double Jeopardy Clause does apply to capital-sentencing proceedings where such proceedings "have the hallmarks of the trial on guilt or innocence." *Id.*, at 439, 101 S.Ct. 1852. We identified several aspects of Missouri's sentencing proceeding that resembled a trial, including the requirement that the prosecution prove certain statutorily defined facts beyond a reasonable doubt to support a sentence of death. *Id.*, at 438, 101 S.Ct. 1852. Such a procedure, we explained, "explicitly requires the jury to determine whether the prosecution has 'proved its case.'" *Id.*, at 444, 101 S.Ct. 1852. Since, we concluded, a sentence of life imprisonment signifies that "'the jury has already acquitted the defendant of whatever was necessary to impose the death sentence,'" the Double Jeopardy Clause bars a State from seeking the death penalty on retrial. *Id.*, at 445, 101 S.Ct. 1852 (quoting *State ex rel. Westfall v. Mason*, 594 S.W.2d 908, 922 (Mo.1980) (Bardgett, C. J., dissenting)).

We were, however, careful to emphasize that it is not the mere imposition of a life sentence that raises a double-jeopardy bar. We discussed *Stroud*, a case in which a

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 25 of 123
Appellate Case: 13-1739   Page: 35   Date Filed: 06/14/2013 Entry ID: 4045610

defendant who had been convicted of first-degree murder and sentenced to life imprisonment obtained a reversal of his conviction and a new trial when the Solicitor General confessed error. In *Stroud*, the Court unanimously held that the Double Jeopardy Clause did not bar imposition of the death penalty at the new trial. 251 U.S., at 17-18, 40 S.Ct. 50. *What distinguished* Bullington *from* Stroud*, we said, was the fact that in* Stroud *"there was no separate sentencing proceeding at which the prosecution was required to prove—beyond a reasonable doubt or otherwise— additional facts in order to justify the particular sentence."* Bullington*, 451 U.S., at 439, 101 S.Ct. 1852. We made clear that an "acquittal" at a trial-like sentencing phase, rather than the mere imposition of a life sentence, is required to give rise to double-jeopardy protections. Id.*, at 446, 101 S.Ct. 1852.

Later decisions refined *Bullington's* rationale. . . .

*Sattazahn*, 537 U.S. at 106-07 (emphasis added). In *Sattazahn*, the Court ultimately concluded that there was no double-jeopardy bar to renewed consideration of a death sentence, when the defendant's first jury deadlocked at his sentencing proceeding, and the trial court prescribed a sentence of life imprisonment pursuant to Pennsylvania law. *Id*. at 109-10. The Court concluded that the defendant could not establish that either the jury or the court "acquitted" him of the death sentence during his first capital-sentencing proceeding, because the deadlock was not a determination based on findings sufficient to establish legal entitlement to a life sentence. *Id*.

### c. Analysis

Neither *Sattazahn* nor *Bullington* ultimately supports Johnson's argument. This is so, notwithstanding that this case is like *Bullington* in one sense: There was a trial-like sentencing proceeding—indeed, sentencing phases of the trial—at which the prosecution was required to prove beyond a reasonable doubt additional facts—the "statutory aggravating factors" to make Johnson "eligible" for the death penalty and the

existence of any other "non-statutory aggravating factors"—in order to justify a death sentence. *Id*. at 106-07. Nevertheless, in the "eligibility phase," the verdict on **Count 6** on which the jury unanimously agreed was a finding, beyond a reasonable doubt, that "statutory aggravating factors" existed and that Johnson was, consequently, "eligible" for the death penalty on that Count, as on the other Counts. *See* "Eligibility Phase" Verdict Form (docket no. 545) (indicating that, as to **Count 6**, charging the CCE murder of Greg Nicholson, the jurors unanimously found, beyond a reasonable doubt, the "gateway aggravating factor" concerning "intent" defined in former § 848(n)(1)(C), the "statutory aggravating factor" defined in former § 848(n)(12) ("heinous, cruel, or depraved"), and that Johnson was "eligible" for the death penalty on that count). As noted above, that "eligibility phase" verdict was neither challenged nor vacated in Johnson's § 2255 proceedings. Thus, the "eligibility phase" verdict did not create any "entitlement" to a life sentence; instead, it opened the door to a death sentence. *See id.* at 110.

Furthermore, contrary to Johnson's contentions, in the "penalty phase," the original jury did *not* "unanimously reject[] the death penalty" for **Count 6**; rather, they *failed to find*, unanimously, that Johnson should be sentenced to death on that Count. *See* Final "Penalty Phase" Instructions To The Jury (docket no. 589), Instruction No. 4 – Step Three: Weighing The Factors (explaining that "*[a] determination to impose a death sentence must be unanimous*," but "if . . . any one of you finds that a sentence of death is not justified on a particular Count, then the death sentence *cannot* be imposed on that Count . . . ." (emphasis in the original); "Penalty Phase" Verdict Form (docket no. 593), Step Three; *see also* 21 U.S.C. § 848(k) ("Based upon this consideration [of aggravating and mitigating factors], the jury *by unanimous vote*, or if there is no jury, the court, shall recommend that a sentence of death shall be imposed *rather than* a sentence of life imprisonment without possibility of release or some other

27
Addendum p. 36

lesser sentence" (emphasis added)); *United States v. Johnson*, 495 F.3d 951, 977–78 (8th Cir. 2007) (concluding, on direct appeal, that the jury instructions in Johnson's original trial correctly stated that unanimity was required for a death sentence, but that the court would impose a life sentence if even one juror found that death was not justified). Thus, the automatic imposition of a life sentence on **Count 6**, as the result of the lack of unanimity for a death sentence, but with no hint of unanimity for a life sentence, is comparable to the effect of the "hung" or "deadlocked" jury at sentencing in *Sattazahn*. 537 U.S. at 109-10; *see id.* at 104 (noting that the jury notified the district court that the jury was "hopelessly deadlocked at 9-3 for life imprisonment"); *see also* former 21 U.S.C. § 848(k) (requiring unanimity only for a death verdict); *Johnson*, 495 F.3d at 977-78 (same).

To put it another way, the original jury did not unanimously "acquit" Johnson of the death penalty on **Count 6** in the "penalty phase" of her first trial, nor did I, when I entered judgment imposing a sentence of life without parole on **Count 6** pursuant to the automatic effect of the first jury's failure to reach a unanimous verdict for a death sentence. *Id*. at 108-09; *see also* former 21 U.S.C. § 848(*l*) ("Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death. Otherwise the court shall impose a sentence, other than death, authorized by law."). Because "the touchstone of double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal,'" *id*. at 109, there is no double-jeopardy bar to a retrial of the penalty, including the possibility of the death penalty, on **Count 6**, where there was no "acquittal" of the death penalty on that Count.**[6]**

---

[6] Johnson's argument would have had more merit, had she been prosecuted under the FDPA, rather than under the ADAA. Among other things, the FDPA sentencing scheme differs from the sentencing scheme under § 848 and the ADAA in

### d.	Summary

Because there is no double-jeopardy bar to a death sentence on **Count 6**, the full range of punishments, including the death penalty, for a conviction of CCE murder in violation of § 848(e) remains available on Johnson's conviction on **Count 6**.[7]

### 3.	Possibility of a sentence less than life without parole on all Counts

Because I vacated the penalties for *all five* of Johnson's CCE murder convictions, I must also address the parties' dispute about the possibility of sentences *less* than life without parole on *any* of the CCE murder convictions. The parties raised

---

that the jury must make a unanimous recommendation of the penalty, whether death, life without parole, or a lesser sentence. *Compare* 18 U.S.C. § 3593(e) (requiring the jury to recommend, "by unanimous vote . . . whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence"); *with* former 21 U.S.C. § 848(k) (requiring a unanimous vote only for a death penalty by stating, "Based upon this consideration, the jury *by unanimous vote*, or if there is no jury, the court, shall recommend that a sentence of death shall be imposed *rather than* a sentence of life imprisonment without possibility of release or some other lesser sentence" (emphasis added)); *Johnson*, 495 F.3d at 977–78 (concluding that the jury instructions in Johnson's original trial correctly stated that unanimity was required for a death sentence, but that the court would impose a life sentence if even one juror found that death was not justified). Furthermore, under the FDPA, the unanimous recommendation of a sentence of life without parole, like a unanimous recommendation of a death sentence, is *binding* on the court. *See* 18 U.S.C. § 3594 ("Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly."); *see also United States v. Rodriguez*, 581 F.3d 775, 813 (8th Cir. 2009) (noting that, under the FDPA, "[t]he district court must impose the sentence recommended by the jury in the § 3593(e) process," citing § 3594).

[7] A further consequence of this conclusion is that, contrary to Johnson's contentions, she is not currently serving a life sentence without possibility of parole on **Count 6**, which figures in her argument that the only aspect of "future dangerousness" that is relevant in her case is future dangerousness in prison.

this issue in the context of arguments about the scope of the "non-statutory aggravating factor" of "future dangerousness," but the issue has more general ramifications for how the new jury will be instructed on sentencing options.

### a. *Arguments of the parties*

Johnson argues that *the jury* should only be offered a choice between death and life without parole, because the sentencing scheme in § 848 only gives *the court*, not *the jury*, the discretion to impose a sentence less than life without parole.[8] Therefore, she argues, it is clear that the jury's decision is between death and life without parole, and introduction of a third option of a lesser sentence could persuade jurors to shift from life to death to eliminate any chance of a lesser sentence by the judge. Thus, Johnson's advocacy for the jury to be allowed to choose only between the two harshest sentencing options, death or life without parole, which may seem surprising at first, is explained by her concern to prevent sentencing options that might make the death option more attractive to a jury.

On the other hand, the prosecution—the party that might be expected to argue that only the two harshest sentencing options should be considered—argues that a sentence less than life without parole is possible, and that Johnson makes a hopelessly "convoluted" argument that the roles of the court and the jury in capital sentencing preclude a lesser sentence. The prosecution argues that the jury in this case will have two options: sentencing Johnson to death, or not doing so. The prosecution argues that, if the jury chooses not to sentence Johnson to death, the court will be responsible for sentencing her. The prosecution also points out that the applicable statute does not

---

[8] This argument stands in stark contrast to Johnson's contention, rejected above, that the "prior jury unanimously rejected the death penalty for **[Count 6]**." Johnson's Opening Brief at 6.

mandate a life sentence, so that Johnson may be sentenced to less than life without parole.

In reply, Johnson reiterates her argument that no sentencing option less than life without parole should be offered to the new jury. She points out that the prosecution did not ask that the original jury's options be limited to death or not death, but agreed that the jury's choices were between death and life without parole. She argues that the prosecution's present argument is simply an attempt to widen the scope of "bad conduct" evidence that will be admissible in the "penalty retrial," particularly as to "future dangerousness."

### b. The statutory sentencing scheme

I note that former § 848(k) provides, as follows, in the part pertinent here:

> Based upon this consideration [of aggravating and mitigating factors found to exist], the jury by unanimous vote, or if there is no jury, the court, *shall recommend that a sentence of death shall be imposed rather than a sentence of life imprisonment without possibility of release or some other lesser sentence.* The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.

Former 21 U.S.C. § 848(k) (emphasis added). Former § 848(*l*) provides, in pertinent part,

> Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death. *Otherwise the court shall impose a sentence, other than death, authorized by law.*

Former 21 U.S.C. § 848(*l*) (emphasis added). As to what sentences are "authorized by law" for a conviction of a § 848(e) offense, I note that former § 848(e)(1)(A) provides as follows:

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 31 of 123
Appellate Case: 13-1739   Page: 41   Date Filed: 06/14/2013 Entry ID: 4045610

> [A]ny person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, *shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.*

Former 21 U.S.C. § 848(e)(1)(A) (emphasis added). Finally, for present purposes, former § 848(p) provides as follows:

> If a person is convicted for an offense under subsection (e) of this section and the court does not impose the penalty of death, *the court may impose a sentence of life imprisonment without the possibility of parole.*

Former 21 U.S.C. § 848(p) (emphasis added).

### *c.* *Analysis*

### *i.* *Johnson's authority*

In support of her contention that the jury should only be allowed to consider death or life without parole, Johnson relies on *United States v. Chandler*, 996 F.2d 1073 (11th Cir. 1993). In that decision, the Eleventh Circuit Court of Appeals reached the following conclusion about the jury's power under § 848 to *impose* a sentence other than death, based on the portions of § 848(k), (*l*), and (p) quoted above:

> [T]he statute grants the district court the discretion to sentence a defendant to life without parole if a death sentence is not recommended. These sections preclude an interpretation of Section 848(k) that gives the jury the authority to impose a non-death sentence. Correspondingly, the responsibility for sentencing has historically resided with the trial court. In the absence of clear language in a statute to lodge the sentencing responsibility with the jury, we are reluctant to interpret the statute in a strained manner to reach

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 32 of 123
Appellate Case: 13-1739   Page: 42   Date Filed: 06/14/2013 Entry ID: 4045610

> that result. Hence, we find that Section 848 grants the district court the power to sentence the defendant where the jury does not recommend death.

*Chandler*, 996 F.2d at 1084.

I do not read *Chandler* to stand for the proposition, for which Johnson cites it, that the jury may not *consider* or *recommend* a sentence less than life without parole. The court in *Chandler* concluded only that the court, not the jury, ultimately has the discretion to *impose* a sentence less than death, including a sentence less than life without parole. *Id.* Specifically, the court in *Chandler* read former § 848(*l*) to provide for the *imposition of sentence* only by the district court. *Id.* The court read § 848(*l*) to state that the jury's recommendation only binds the district court if the jury recommends a death sentence, because that provision states, "'Otherwise the court shall impose a sentence, other than death, authorized by law.'" *Id.* (quoting § 848(*l*)). Thus, in *Chandler*, the Eleventh Circuit Court of Appeals read these provisions to leave the court—and only the court—with the authority to *impose* a sentence less than death, that is, life without parole or some other lesser sentence. The court did not hold that the jury cannot *consider* or *recommend* any sentence less than death or less than life without parole.

### ii. *The jury's ability to consider lesser penalties*

Unlike Johnson, I do not read either *Chandler* or the sentencing provisions of § 848 to preclude a jury from *considering* some other sentence less than death or life without parole. To the contrary, I read § 848(k) as plainly and expressly authorizing the jury to *consider* other lesser sentences, because the statute states that the jury must "consider" whether aggravating factors outweigh any mitigating factors sufficiently to "justify" a death sentence, then, if they unanimously so find, "recommend" a death sentence "*rather than* a sentence of life imprisonment without possibility of release *or some other lesser sentence*." Former 21 U.S.C. § 848(k) (emphasis added); *see also*

33

Addendum p. 42

Appellate Case: 13-1739     Page: 43     Date Filed: 06/14/2013 Entry ID: 4045610

*United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). The intent that is plain from this statutory language, including the "rather than" and "some other lesser sentence" language, is to allow the jury to *consider* whether a death sentence is justified *in comparison* to a sentence of life without parole or some other lesser sentence. Again, the decision of the Eleventh Circuit Court of Appeals in *Chandler* is not to the contrary, because it says nothing whatsoever about what possible sentences the jury is to *consider*, when deciding whether or not the aggravating factors outweigh any mitigating factors sufficiently to "justify" a death sentence and whether the jury should then "recommend" a death sentence, only whether the jury or the court has the power to *impose* a sentence other than death. *See* 996 F.2d at 1084.

Yet, even though the statute, on its face, permits the jury to *consider* lesser penalties than death, including a penalty less than life without parole, there is some doubt as to whether or not the jury should be *permitted* to do so *in a particular case*. For example, the Fifth Circuit Court of Appeals opined, some time ago, that district courts should not "allow the government to freely hammer away on the theme that the defendant could some day get out of prison if that eventuality is legally possible but actually improbable." *United States v. Flores*, 63 F.3d 1342, 1368 (5th Cir. 1995). This remark was made in the context of whether or not evidence of "future dangerousness" should include evidence that the defendant might pose a danger *outside of prison*. *Id.* Nevertheless, it is also instructive, more generally, in the context of possible penalties upon conviction of a capital offense.

In this case, in my ruling on Johnson's § 2255 Motion, I rejected one of her many claims of error in the "penalty phase," for the following reason:

> [Johnson] also has not shown that, even though I might have disagreed with the imposition of the death penalty on the facts of this case as they were proved at trial, *see Johnson*, 403 F. Supp. 2d at 896–97, I would have imposed any sentence less than life imprisonment without parole, if the ultimate sentencing decision had been left to me—*indeed, I would not have imposed any lesser sentence, even had I been aware of all of the evidence that Johnson contends her trial counsel should have presented*. *See* 21 U.S.C. § 848(p) (2005) (providing that, in a capital case pursuant to § 848(e) in which the death penalty is not sought or imposed, "the court may impose a sentence of life imprisonment without possibility of parole").

*Johnson*, 860 F. Supp. 2d at 908-09 (emphasis added); *see also Johnson*, 403 F. Supp. 2d at 886 (noting that Johnson had waived before trial her post-trial argument that the jury should simply have been required to reject the death sentence and leave to the court the question of the sentence less than death to be imposed if the jury's verdict for death was non-unanimous, because she specifically requested that the alternatives submitted to the jury be either a "death sentence," upon an unanimous verdict, or "life imprisonment without possibility of parole," if any one or more jurors so found). Thus, in this case, a sentence less than life without parole is "improbable."

Also, as Johnson asserts, there is some authority for the proposition that, in a capital case, it may be inappropriate to allow the jury to consider any sentences other than death or life without parole. She cites a comment to 1-9A MODERN FEDERAL JURY INSTRUCTIONS—CRIMINAL P 9A.03, which states, "A juror presented with the possibility of a lesser authorized sentence could be 'persuaded to switch from life to death to ward off . . . any chance of a lesser sentence by the judge.'" (quoting *Jones v. United States*, 527 U.S. 373, 416 (1999) (Ginsburg, J. dissenting, joined by Stevens,

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 35 of 123
Appellate Case: 13-1739   Page: 45   Date Filed: 06/14/2013 Entry ID: 4045610

Souter, and Breyer, JJ.)). On the other hand, there is also some authority for the proposition that fairness, integrity, and repute of the capital sentencing process would be called into question, if a court were to consider the possibility of a lesser sentence than the one the jury was told would be required if it voted to spare a defendant from the death penalty. *See United States v. Moussaoui*, 591 F.3d 263, 305 (4th Cir. 2010) (citing *United States v. Quinones*, 511 F.3d 289, 322 (2d Cir. 2007)). This latter concern is greatly lessened in this case, precisely because I have already indicated that I would not have imposed any lesser sentence, even had I been aware of all of the evidence that Johnson contends her trial counsel should have presented. *Johnson*, 860 F. Supp. 2d at 908. In other words, because a lesser sentence is "improbable," *see Flores*, 63 F.3d at 1368, there is no real risk that the fairness, integrity, and repute of the capital sentencing process will be called into question by the court imposing a sentence less than life without parole, if the only sentences that the new jury is allowed to consider are death or life without parole.

Because there is a potential for prejudice to Johnson if the jury is allowed to consider sentences less than death or life without parole, and any lesser sentence is improbable in this case, the only possible sentences that I will allow the new jury to consider are death and life without parole in making their determination of whether or not a death sentence is justified and whether or not to recommend the death penalty in the "penalty retrial."

### iii. The jury's ability to recommend a lesser penalty

Even if I were persuaded that the jury could *consider* a lesser penalty than death or life without parole *in this case*, I do not believe that the jury has the authority to *recommend* any sentence less than death. My conclusion, informed by my recent reexamination of the statute, is that the plain language of the sentencing provisions of § 848 limits what penalty the jury can *recommend*. Former § 848(k) provides that, if

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 36 of 123
Appellate Case: 13-1739    Page: 46    Date Filed: 06/14/2013 Entry ID: 4045610

the aggravating factors found to exist outweigh any mitigating factors found to exist, the jury shall "by unanimous vote . . . *recommend* that a sentence of death shall be imposed *rather than* a sentence of life imprisonment without possibility of release or some other lesser sentence." Former 21 U.S.C. § 848(k) (emphasis added). Thus, former § 848(k) specifically authorizes the jury to "recommend," unanimously and specifically, only one penalty, a death penalty. To put it another way, even though a jury may consider a sentence less than death, or even less than life without parole, in deciding whether or not to recommend the death penalty, the sentencing provisions of § 848 do not permit the jury to make a unanimous recommendation of any penalty *other than* death. *Cf. Johnson*, 495 F.3d at 977–78 (concluding that the jury instructions in Johnson's original trial correctly stated that unanimity was required for a death sentence, but that the court would impose a life sentence if even one juror found that death was not justified). Moreover, § 848(k) and (*l*) do not *require* the jury to recommend a sentence other than death, based upon a non-unanimous verdict for death. *Johnson*, 403 F. Supp. 2d at 886.

### iv. *The jury's ability to impose a lesser penalty*

Of course, it follows from my conclusion that the jury cannot *recommend* any penalty less than death that the jury also cannot *impose* a lesser sentence. More specifically, my view, informed by my recent reexamination of the statute, is that the court in *Chandler* is correct that only the *court*, not the *jury*, ultimately has the authority to *impose* a sentence less than death, including a sentence less than life without parole. 996 F.2d at 1084.

Former § 848(*l*) expressly and plainly makes the jury's recommendation *binding* only if the jury recommends a death sentence, but states, "'Otherwise *the court* shall impose a sentence, other than death, authorized by law.'" *Id.* (quoting § 848(*l*)) (emphasis added). Again, the penalties "authorized by law" for CCE murder in

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 37 of 123
Appellate Case: 13-1739    Page: 47    Date Filed: 06/14/2013 Entry ID: 4045610

violation of § 848(e) include "*any term of imprisonment, which shall not be less than 20 years*, and which may be up to life imprisonment, or may be sentenced to death." Former 21 U.S.C. § 848(e)(1)(A) (emphasis added). Former § 848(p) reiterates, "If a person is convicted for an offense under subsection (e) of this section and the court does not impose the penalty of death, *the court may impose a sentence of life imprisonment without the possibility of parole*." Former 21 U.S.C. § 848(p) (emphasis added). This last provision unambiguously makes a jury's penalty recommendation *binding* only if that recommendation is for a death penalty, but even supposing that the jury had the power to *recommend* a sentence less than life without parole, the court would still have the discretion to *impose* a sentence of life without parole. *See also Flores*, 63 F.3d at 1367 ("Under § 848(e), if the jury had not recommended a death sentence, the district court could have sentenced Garza to 'any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment.'").[9]

Thus, the court *must* impose a death sentence, if the jury recommends that penalty, but if the jury does not recommend a death sentence, the court *may* impose any other sentence authorized by law, including a penalty less than life without parole. To put it another way, the jury does not *impose* any penalty less than death, but only

---

[9] *Cf. United States v. Montgomery*, 635 F.3d 1074, 1099 (8th Cir. 2011) (reading comparable language in the FDPA "to mean that 'once a jury makes a final, unanimous determination that a sentence of death is justified, then the FDPA requires its imposition'" (quoting *United States v. Allen*, 247 F.3d 741, 780 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002)). As noted above, in footnote 6, among other things, the FDPA sentencing scheme differs from the sentencing scheme under § 848 in that the jury's recommendation of life imprisonment without possibility of release is *also* binding on the court, because the FDPA requires that the jury unanimously select the penalty, not just unanimously recommend a death penalty or fail to make such a unanimous recommendation, as § 848(k) provides.

*imposes* a death sentence, if it makes a unanimous recommendation, binding on the court, for that penalty.

I believe that this reading is correct, notwithstanding passing references, in the appellate decisions in Honken's and Johnson's cases, to their juries "imposing" sentences of life without parole. *See, e.g., United States v. Honken*, 541 F.3d 1146, 1149 (8th Cir. 2008) ("The jury voted to impose the death penalty for the children's murders and life imprisonment for the adults' murders."); *Johnson*, 495 F.3d at 958 ("The jury voted to impose the death penalty for four of these murders and voted to impose a sentence of life in prison for the fifth murder, resulting in a total of eight death sentences and two life sentences."). Indeed, in the "Penalty Phase" Instructions and Verdict Forms in both Johnson's and Honken's cases, I had framed the jury's options to be to "impose" a death sentence or a sentence of life without parole, although I had instructed the jury that the verdict to impose a death sentence had to be unanimous, but if even one juror found that death was not justified, I would impose a sentence of life without imprisonment. As I now read § 848, however, the jury in a § 848 capital case may not "recommend" or "impose" any penalty other than death— although the jury must decline to recommend the death penalty if the vote for death is not unanimous, and the jury is never required to recommend the death penalty. *See* former 21 U.S.C. § 848(k) ("The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.").

It follows from this conclusion that, on the "penalty retrial" in this case, the only *verdict* to be obtained from the new jury, on each Count, is whether the jurors unanimously agree that the sentence should be death—a "yes or no" question. That question must be accompanied by instructions (1) that, *in this case*, the court will impose a sentence of life without parole if even one juror finds that death is not

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 39 of 123
Appellate Case: 13-1739   Page: 49   Date Filed: 06/14/2013 Entry ID: 4045610

justified, and (2) that, regardless of the jury's findings with respect to aggravating and mitigating factors, the jury is never required to impose a death sentence. This framing of the possible verdicts admittedly differs from the way that I framed the possible verdicts in Johnson's original "penalty phase." However, this "redo" of Johnson's "penalty phase" has afforded me, as well as the parties, an opportunity to learn from hindsight and a reexamination of applicable statutory language and other authorities. On this "redo," I conclude that the jury does not *impose* any penalty less than death, but only *imposes* a death sentence, if it makes a unanimous recommendation, binding on the court, for that penalty.

### d. Summary

On the "contextual" question of what sentences are possible on each of the CCE murder Counts in the "penalty retrial," I hold that the *possible* sentences are death, life without parole, and imprisonment for not less than twenty years. Nevertheless, *in this case*, the only penalties that the new jury will be allowed to *consider* on each Count are death and life without parole. Furthermore, the appropriate *verdict* to be obtained from the new jury, on each Count, is whether the jurors unanimously agree that the sentence should be death—a "yes or no" question.


### D. Necessity Of A Preliminary Evidentiary Showing

In what is actually the last argument in her Opening Brief in support of her Challenges To Third Notice Of Intent, Johnson argues that no aggravating factor should be allowed to go to the jury in the absence of judicial screening of the evidence supporting the factor. Thus, she requests that I order a pretrial proffer from the prosecution or a preliminary hearing to test the evidence, to ensure the reliability required by the Eighth Amendment to the United States Constitution. The prosecution disagrees.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 40 of 123
Appellate Case: 13-1739   Page: 50   Date Filed: 06/14/2013 Entry ID: 4045610

### 1.   *Arguments of the parties*

Johnson argues that I should require a fairly detailed proffer of evidence in aggravation from the prosecution prior to the "penalty retrial," so that I can discharge my "gatekeeper" role with regard to sentencing evidence under the applicable statute and the Constitution.  In her original Motion To Dismiss Or Strike Certain Aggravating Factors (docket no. 865), which she reiterates by reference in her Challenges To Third Notice Of Intent, Johnson argues that I should direct the prosecution to provide further information regarding the factual basis, and/or require a hearing, to test the relevance, reliability, and admissibility of the evidence of aggravating factors.

In its Resistance, the prosecution argues that I should not hold any evidentiary hearing to assess the evidence in support of aggravating factors, because the proper place for factual development of aggravating factors is at the "penalty retrial."  The prosecution also argues that its Third Notice Of Intent and the extensive discovery already provided to Johnson give her sufficient information about the evidence of aggravating factors that the prosecution will present at the "penalty retrial."  The prosecution argues that Johnson is not entitled to any further advance proffer from the prosecution, either about what evidence it will offer or how it will use or present that evidence.

In her Reply, Johnson simply reiterates that, in light of her challenges to various aggravating factors, I should require the prosecution to come forward with an offer of proof as to the factual basis for certain of its aggravating factors and, in certain instances, conduct a hearing to determine the admissibility of evidence of aggravating factors.

### 2.   *Analysis*

Johnson cites authority for the propositions that the court performs a "gatekeeper" role in controlling the information presented in a capital sentencing

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 41 of 123
Appellate Case: 13-1739    Page: 51    Date Filed: 06/14/2013 Entry ID: 4045610

proceeding; that the prosecution must identify aggravating factors with sufficient specificity to put the defendant on notice of the nature of the aggravating factors to allow her to prepare for the "penalty retrial"; and that the court can compel the prosecution to reveal the specific evidence on which its aggravating factors are based or hold a pretrial hearing to review the prosecution's evidence in support of aggravating factors. Nevertheless, I am persuaded by well-reasoned authority to decline to hold a pretrial hearing on or to require any pretrial proffer regarding the evidence supporting aggravating factors, at least in the absence of a showing that Johnson has not received constitutionally sufficient notice of what the prosecution intends to prove at the "penalty retrial."

For example, United States District Court Judge Terrence F. McVerry of the Western District of Pennsylvania rejected arguments much like Johnson's for a "preview" of the evidence supporting the prosecution's aggravating factors in *United States v. Solomon*, 513 F. Supp. 2d 520 (W.D. Pa. 2007). He began by noting,

> The Court of Appeals for the Fourth Circuit has observed:
>
> > The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, . . . , *not notice of the specific evidence that will be used to support it*. *See* 18 U.S.C.A. § 3593(a) (requiring only that the government's notice "set [ ] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death"); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) (observing that notice given to a defendant of the applicable aggravating factors in a death penalty case *is not the same as notice of the specific evidence that the government intends to present at a sentencing hearing*), *cert. denied*, 529 U.S. 1022, 120 S.Ct. 1428, 146 L.Ed.2d 318 (2000); *cf. Gray v.*

42

Addendum p. 51

> *Netherland*, 518 U.S. 152, 167-68, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (*noting that there is no constitutional right to advance notice of the government's evidence in aggravation at a capital sentencing hearing*).
>
> *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) (*emphasis added*), *cert. denied*, 543 U.S. 1004, 125 S.Ct. 608, 160 L.Ed.2d 465 (2004).  The United States Supreme Court has also observed that "it has always been the Court's view that the notice component of due process refers to the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge."  *United States v. Agurs*, 427 U.S. 97 n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).  *See also [United States v.] Minerd*, 176 F.Supp.2d [424,] 448 [(W.D. Pa. 2001)] (noting authority for requiring more specificity regarding the notice, but observing the notice and indictment together "sufficiently advise[d] the defendant of the charges he must be prepared to defend").

*Solomon*, 513 F. Supp. 2d at 538.

In *Solomon*, after rejecting the defendant's arguments that the notice of intent to seek the death penalty was insufficient to provide notice of aggravating factors and that the defendant was entitled to a bill of particulars concerning aggravating factors, Judge McVerry also rejected the defendant's request for a pretrial evidentiary hearing to rule on the sufficiency of the evidence to support all of the non-statutory aggravating factors.  *Id*. at 539.  Judge McVerry explained,

> While the Court recognizes that it has the authority to conduct such a hearing, *see United States v. Llera Plaza*, 179 F.Supp.2d 464, 469-70 (E.D. Pa. 2001), the Court finds that such a hearing is "unnecessary."  *United States v. Frank*, 8 F.Supp.2d 253, 278-79 (S.D.N.Y. 1998).
>
> Under the FDPA, the Court has the gatekeeping role to exclude any evidence from the consideration of the jury

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 43 of 123
Appellate Case: 13-1739    Page: 53    Date Filed: 06/14/2013 Entry ID: 4045610

that is more unfairly prejudicial than probative. *Id.* Additionally, the penalty phase is an adversarial proceeding, wherein the defendant is "permitted to rebut any information received at the hearing," and may "present argument as to the adequacy of the information to establish the existence of any aggravating factor". *Id.* at 278 (quoting 18 U.S.C. § 3593(c)).

Furthermore, with respect to the case at bar, the Court recognizes that, if a penalty phase does take place, the period of time between the guilt phase and the penalty phase may be brief. However, it appears that much of the evidence the government intends to introduce during the penalty phase will be introduced during the merits phase as well. The Court will be in a better position to evaluate the relevance and probative value of this evidence after the merits phase. Defendant may renew his evidentiary objections at the conclusion of the merits phase, and the Court will at that time reconsider the need for an evidentiary hearing. At this time, however, Defendant's request for a pretrial hearing will be denied.

*Solomon*, 513 F. Supp. 2d at 539-40; *see also, e.g., United States v. Regan*, 228 F. Supp. 2d 742, 754 (E.D. Va. 2002) (also rejecting the defendant's argument that he was entitled to a pretrial evidentiary hearing on the sufficiency of the aggravating factors or the admissibility of evidence supporting those factors, because the defendant's right to notice does not extend to the evidence on which the prosecution intends to rely).

Senior United States District Court Judge Louis H. Pollak of the Eastern District of Pennsylvania reached a similar conclusion in *United States v. Llera Plaza*, 179 F. Supp. 2d 464 (E.D. Pa. 2001). He acknowledged that 18 U.S.C. § 3593(c) imposes a gatekeeping role on the court to assure the relevance of penalty phase evidence and that the probative value of such evidence outweighed its potential negative effects. *Llera Plaza*, 179 F. Supp. 2d at 468-69. He also recognized that some district courts had

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 44 of 123
Appellate Case: 13-1739   Page: 54   Date Filed: 06/14/2013 Entry ID: 4045610

conducted pretrial reviews of the relevance of sentencing phase evidence or had otherwise required the prosecution to proffer the evidentiary basis for aggravating factors. *Id*. at 469 (citing *United States v. Davis*, 912 F. Supp. 938 (E.D. La. 1996), *United States v. Beckford*, 964 F. Supp. 993 (E.D. Va. 1997), *United States v. Friend*, 92 F. Supp. 2d 534 (E.D. Va. 2000), and *United States v. Gilbert*, 120 F. Supp. 2d 147 (D. Mass. 2000)). Judge Pollack then stated,

> The foregoing cases indicate that this court has the authority to conduct a hearing to examine the reliability of evidence the government intends to introduce at the sentencing phase. However, when divorced from the issue of whether the defendants and the court have been adequately notified of what the government intends to prove at the sentencing phase—the issue considered in the next section—*the cases do not support the proposition that such a hearing must be conducted before the guilt phase of the trial begins. See United States v. Edelin*, 134 F.Supp.2d 59, 75 (D.D.C. 2001) (denying defendant's request for "pretrial adjudication as to the sufficiency of [sentencing] evidence" in an ADAA case); *United States v. Frank*, 8 F.Supp.2d 253, 278–79 (S.D.N.Y. 1998) (finding such a hearing "unnecessary"). With respect to the case at bar, the court recognizes that, if a sentencing phase does take place, the period of time between the guilt phase and the sentencing phase may be brief. However, it appears that much of the evidence the government intends to introduce during the sentencing phase will be introduced during the guilt phase as well. The court will be in a better position to evaluate the relevance and probative value of this evidence after the guilt phase.
>
> To the extent that the government plans to introduce evidence during the sentencing phase that has not already been introduced during the guilt phase, the court believes that the orders accompanying this opinion—orders which will require the government to explain in greater detail the evidence it intends to introduce during sentencing—will put

the parties and the court in a better position to assess the need for a hearing to evaluate that evidence. The defendants may renew their evidentiary objections in light of the government's submissions, and the court will at that time reconsider the need for an evidentiary hearing. *See United States v. Bin Laden*, 126 F.Supp.2d 290, 304 (S.D.N.Y. 2001) (proposing a pre-sentencing hearing to evaluate the validity of motions concerning sentencing phase evidence). At this time, however, the defendants' Motion for Pretrial Hearing will be denied.

*Llera Plaza*, 179 F. Supp. 2d at 469-70.

Here, it is clear that, like provisions of the FDPA, former § 848(j) also imposes a "gatekeeping" role on the district court concerning the information that will be presented in the "penalty phase." It states, in pertinent part,

Information presented [at the sentencing hearing] may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Former 21 U.S.C. § 848(j); *cf. Solomon*, 513 F. Supp. 2d at 539-40 (finding a "gatekeeper" role for the court in a comparable provision of the FDPA); *Llera Plaza*, 179 F. Supp. 2d at 469 (same). I also believe that I have the authority under this

46

Addendum p. 55

provision to conduct a pretrial review of evidence (or information) that the prosecution intends to offer in support of its aggravating factors. *See Llera Plaza*, 179 F. Supp. 2d at 469.

Nevertheless, the notice to which Johnson is entitled, at least at this point in the proceedings, is notice of the aggravating factors on which the prosecution intends to rely, not notice of the *evidence* on which the prosecution intends to rely to prove those aggravating factors. *Solomon*, 513 F. Supp. 2d at 538. It is also clear that the evidence supporting the "statutory aggravating factors" on which the prosecution will be permitted to rely is drawn from the "merits phase" of the trial, as that was the only source for such evidence in Johnson's original "eligibility phase." *Cf. Solomon*, 513 F. Supp. 2d at 540 ("[I]t appears that much of the evidence the government intends to introduce during the penalty phase will be introduced during the merits phase as well."); *Llera Plaza*, 179 F. Supp. 2d at 470 ("[I]t appears that much of the evidence the government intends to introduce during the sentencing phase will be introduced during the guilt phase as well."). Although the "eligibility phase" will not be revisited in the "penalty retrial," I have already indicated, above at page 21, that original "merits phase" transcripts and exhibits or "live" testimony supporting "statutory aggravating factors" will be admissible in the "penalty retrial." Johnson's "new" defense team not only has access to the original trial transcripts and exhibits, but also to the discovery file amassed before and after Johnson's original trial. Under these circumstances, Johnson must make a much more pointed and specific showing of insufficient notice to warrant any review of any evidence supporting any aggravating factor on which the prosecution intends to rely, in order to obtain some form of pretrial review by the court of information supporting such aggravating factors or any additional disclosure by the prosecution before the "penalty retrial."

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 47 of 123
Appellate Case: 13-1739   Page: 57   Date Filed: 06/14/2013 Entry ID: 4045610

Moreover, as is the case under the FDPA, the "penalty phase" under § 848 is an adversarial proceeding, wherein the defendant is "permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating . . . factors and as to appropriateness in [her] case of imposing a sentence of death." *See* former 21 U.S.C. § 848(j); *cf. Solomon*, 513 F. Supp. 2d at 540 (noting that the "penalty phase" under the FDPA is an "adversarial proceeding"). There is no reason that, where the parties can offer evidence and objections, I cannot perform my "gatekeeper" role of determining the admissibility of information during the "penalty retrial," just as I have done in a great many criminal trials, including the original trials in Honken's and Johnson's capital cases. As a general matter, pretrial preview of the evidence supporting aggravating factors is ordinarily unnecessary, *Solomon*, 513 F. Supp. 2d at 539; *United States v. Frank*, 8 F. Supp. 2d 253, 278-79 (S.D.N.Y. 1998), and it is unnecessary in this case.

Johnson's request for further disclosure of or a hearing on evidence supporting aggravating factors, prior to the "penalty retrial," is denied, at least for now.

### III. CHALLENGES TO STATUTORY AGGRAVATING FACTORS

With "contextual" matters resolved, I turn to Johnson's specific challenges to specific aggravating factors. I will begin with her challenges to those "statutory aggravating factors" upon which I have ruled that the prosecution may rely.

Johnson offers no challenge to the prosecution's continued reliance on the former § 848(n)(1)(C) "intent" or "gateway" "statutory aggravating factor" as to all five CCE murder Counts, or to the prosecution's reliance on the "vulnerable victim" "statutory aggravating factor" (former § 848(n)(9)) as to the CCE murders of the two children

Appellate Case: 13-1739     Page: 58     Date Filed: 06/14/2013 Entry ID: 4045610

(**Counts 8** and **9**). She challenges only the "heinous, cruel, or depraved manner" "statutory aggravating factor" (former § 848(n)(12)), which is asserted as to the CCE murders of the three adults (**Counts 6**, **7**, and **10**), and the "substantial planning and premeditation" "statutory aggravating factor" (former § 848(n)(8)), which I held, above, beginning at page 18, may be asserted *only* as to the CCE murder of Terry DeGeus (**Count 10**), but *not* as to the CCE murders of Nicholson or the three Duncans (**Counts 6** through **9**).

However, as I explained above, on page 22, Johnson's challenges to those "statutory aggravating factors" are foreclosed for two reasons. First, I believe that Johnson is now attempting to amend an oversight by asserting arguments of error—particularly legal error—in the "eligibility phase" that she should have asserted in her § 2255 Motion, but did not. Second, I believe that Johnson's belated challenges to these "statutory aggravating factors" amount to an impermissible "second or successive" § 2255 Motion for which Johnson has not received authorization from the Circuit Court of Appeals, so that I need not consider those arguments. I now add that, having reviewed her belated challenges to these "statutory aggravating factors," I find them to be without merit, because they are contrary to controlling or persuasive authorities, are based on misreadings or misrepresentations of cited authorities, or assert factual contentions that are untenable in light of the evidence presented in her original trial.

Therefore, Johnson's challenges to the "statutory aggravating factors" are denied.

# IV.  CHALLENGES TO THE NON-STATUTORY AGGRAVATING FACTORS

Johnson also asserts challenges to various "non-statutory aggravating factors" identified by the prosecution in its Third Notice Of Intent.  The prosecution asserts that all such "non-statutory aggravating factors" are properly asserted and adequately supported.  I will consider these challenges in turn.

## A.  "Multiple Killings" And "Passage Of Time"

### 1.  Allegations of the factors

The first two "non-statutory aggravating factors" identified in the Third Notice Of Intent are the following:

> 1.  <u>Multiple killings in a single episode</u>:
>
> Defendant aided and abetted the killing[s] of Greg Nicholson, Lori Duncan, Kandi Duncan, and Amber Duncan [as charged in **Counts 6** through **9**] during a single episode on July 25, 1993.
>
> 2.  <u>Killing of [a] person after a passage of time since killing others</u>:
>
> Defendant aided and abetted the killing of Terry DeGeus [as charged in **Count 10**] in November 1993, several months after killing the four victims on July 25, 1993, and after having time to reflect upon her conduct in the murders of July 25, 1993.

Third Notice Of Intent, § C.1-2.

### 2.  Arguments of the parties

Johnson argues that each of these factors is duplicative of the crimes charged and of each other.  She argues that federal law strictly prohibits duplication of aggravating factors in death penalty cases, because it impermissibly skews the weighing process.  She contends that, because these factors are duplicative of the charged crimes and each other, the prosecution should not be permitted to spin them off as separate free-standing

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 50 of 123
Appellate Case: 13-1739     Page: 60     Date Filed: 06/14/2013 Entry ID: 4045610

"non-statutory aggravating factors."   She argues that, here, the prosecution is impermissibly ratcheting up the number of aggravating factors by positing aggravators that duplicate the offenses charged and each other.

The prosecution argues that Johnson has not articulated in what way these factors duplicate either the charged offenses or each other.  It points out that the heart of these factors is not murder or murder with the prescribed intent, but multiple murders in a single episode, as one aggravating factor, and a murder separated in time from prior murders, as another aggravating factor.  The prosecution also argues that killing multiple people in a single episode makes one more deserving of death, because of the bloodthirsty nature of someone who can participate in gunning down multiple people at one time, and that killing again, after having killed once and having had the time to contemplate prior murders, also makes one more deserving of death, but for the different reason that it focuses on the serial nature of the defendant's conduct.

In reply, Johnson argues that, in essence, both of these "non-statutory aggravating factors" were weighed in the "eligibility phase" and, consequently, there is an unconstitutional opportunity for aggravators that duplicate the crimes charged to skew the result.  However, she does not explain how or why these factors were weighed in the "eligibility phase."

### 3.    Standards for "duplicativeness"

As I read Eighth Circuit precedent, whether or not aggravating factors are duplicative of either the underlying offenses or each other depends upon the extent to which the factors or offenses have overlapping or discrete elements and the nature of the overlapping elements.  Thus, the same evidence may support both the underlying offense and a specific aggravating factor or two separate aggravating factors, without unconstitutional or otherwise impermissible "duplicativeness."

As the Eighth Circuit Court of Appeals explained in *United States v. Bolden*, 545 F.3d 609 (8th Cir. 2008),

> Bolden argues that [the "other criminal activity"] non-statutory factor allowed the government to submit the same evidence to support multiple aggravating factors, creating the risk that the jury would give too much weight to the aggravating factors, thereby skewing its weighing of the aggravating and mitigating factors in deciding whether to impose the death penalty. Though the concern is legitimate, *see Stringer v. Black*, 503 U.S. 222, 232-33, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Supreme Court has never held "that aggravating factors could be duplicative so as to render them constitutionally invalid." *[United States v.] Purkey*, 428 F.3d [738,] 762 [(8th Cir. 2005)], quoting *Jones v. United States*, 527 U.S. 373, 398, 119 S. Ct. 2090, 144 L. Ed. 2d 370 (1999) (plurality opinion). The government based the pecuniary gain statutory factor on Bolden's desire to rob the bank. It based the obstruction of justice non-statutory factor on his motive to kill Ley to eliminate a witness. And it based the "other criminal activity" non-statutory factor in part on his possession of a firearm while conspiring to rob the bank. "[T]he same facts can support different inferences that form different aggravators." *Purkey*, 428 F.3d at 762. The district court properly instructed the jurors that in weighing the aggravating and mitigating factors, they were not simply to count each factor and reach a decision based on which number is greater; rather, they should individually consider the weight and value of each factor before deciding whether a sentence of death is justified. There was no unconstitutional duplication.

*Bolden*, 545 F.3d at 625. Thus, in *Bolden*, the court not only noted that the various aggravating factors that the defendant challenged as duplicative each had at least one distinct element, but also recognized that the same evidence may support inferences

supporting different aggravating factors without those factors necessarily being duplicative.

In *Bolden*, the court also distinguished *United States v. McCullah*, 76 F.3d 1087, 1111-12 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213 (1997), on which Johnson also relies, as follows:

> *McCullah* is distinguishable because it turned on the submission of duplicative aggravating factors that included mental state components under 21 U.S.C. § 848(n), a different federal death penalty statute. The Tenth Circuit has more recently held that duplication "between the gateway [intent] factors and aggravating factors does not undermine the constitutional validity" of a death sentence under the FDPA. *[United States v.] Chanthadara*, 230 F.3d [1237,] 1261 [(10th Cir. 2000)].

*Bolden*, 545 F.3d at 630 n.14. While Johnson's case *is* under the ADAA, § 848, *McCullah* is also distinguishable here, because, to the extent that there is any overlap between the "intent" element of aiding and abetting CCE murder and any "intent" element of the "non-statutory aggravating factors" at issue here, that duplication is not of constitutional proportions, where the factors also involve differing conduct elements. *Id.*[10]

Similarly, in *United States v. Paul*, 217 F.3d 989 (8th Cir. 2000), the Eighth Circuit Court of Appeals also rejected a defendant's contention that the "heinous, cruel,

---

[10] The decision of the Eighth Circuit Court of Appeals in *United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005), may suggest that not even overlap of *conduct* necessarily makes aggravating factors constitutionally infirm, so long as the jury is properly instructed to determine the weight of the aggravating factors, not merely to employ a mechanical process of counting up aggravating and mitigating factors. *See* 426 F.3d at 762-73.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 53 of 123
Appellate Case: 13-1739   Page: 63   Date Filed: 06/14/2013 Entry ID: 4045610

and depraved" factor[11] and the "vulnerability of the victim" factor were duplicative of one another, because they allowed a jury to find two separate factors from identical facts. *Paul*, 217 F.3d at 1001. The court explained,

> Each of these factors is directed to entirely distinct aspects or components of the offense, i.e. one factor addresses the quality of Paul's violence while the other factor speaks to the frailty of the victim, and therefore, we find the factors are not duplicative. We find that the evidence of the beating, which includes the fact that Paul and Ingle followed Williams as he set off into the park for a walk, and then beat him severely enough to almost knock his eye out of its socket, is sufficiently heinous, cruel and depraved, whatever the age of the victim. Because Williams was eighty-two years old and less physically able to resist his attackers, the jury could additionally find the vulnerability of the victim to be an aggravating factor separate from the heinous, cruel and depraved nature of the crime. Accordingly, we find no error.

*Paul*, 217 F.3d at 1001-02. Thus, aggravating factors are not duplicative, even if they arise from the same factual circumstances, as long as each factor "is directed to entirely distinct aspects or components of the offense." *Id.* Furthermore, they are not duplicative, if they involve inferences about the defendant, on the one hand, and about the victim, on the other. *Id.*

As to duplication of the underlying capital offense, in *Williams v. Norris*, 576 F.3d 850 (8th Cir. 2009), the Eighth Circuit Court of Appeals rejected a defendant's

---

[11] In *Paul*, the court repeatedly referred to this factor as the "heinous, cruel, *and* depraved" factor, *see* 217 F.3d at 1001 (emphasis added) (describing the factor in consecutive sentences as "'heinous, cruel or depraved'" and "'heinous, cruel and depraved,'" and thereafter stating it repeatedly as "'heinous, cruel and depraved'"), but the statute actually defines it as "heinous, cruel, *or* depraved manner of committing [the] offense." 18 U.S.C. § 3592(c)(6) (emphasis added). Former § 848(n)(12) also defines this "statutory aggravating factor" as "heinous, cruel, or depraved manner."

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 54 of 123
Appellate Case: 13-1739    Page: 64    Date Filed: 06/14/2013 Entry ID: 4045610

contention that a "pecuniary gain" "statutory aggravating factor" "merely duplicate[d] an element of the underlying crime of felony murder during the course of a robbery." 576 F.3d at 870. The court pointed out that the felony underlying the charge of capital murder was "kidnapping, not robbery," that the jury was instructed consistent with the statutory definition of "kidnapping," and only after convicting the defendant of capital murder did the jury find that he committed the murder for pecuniary gain, consistent with the statutory definition of that aggravator. *Id.* Based on these differences in the factual elements or components of the factors and the offense, the court concluded that "[t]here was no duplication, of constitutional dimension or otherwise." *Id.*; *see also Cox v. Norris*, 133 F.3d 565, 571 (8th Cir. 1997) (observing, "Duplication of an element of a capital offense by one or more aggravating circumstances does not render the Arkansas death penalty scheme unconstitutional," as long as the aggravating factors serve their proper purpose, in the case of "statutory aggravating factors," sufficiently narrowing the death eligible class).

### 4. Analysis

Here, Johnson has not specifically identified, and I have not found, any respect in which the "non-statutory aggravating factors" of "multiple killings in a single episode" and "killing of [a] person after a passage of time since killing others" would unconstitutionally duplicate the elements of the underlying CCE murder offenses. Specifically, no charge of CCE murder requires proof that there were *other* CCE murders, either in the same episode or in a subsequent episode, as required by the "multiple killings" and "killing another after a passage of time" "non-statutory aggravating factors," respectively. Thus, each of these "non-statutory aggravating factors" involves a factual component not required to prove the underlying offenses, considered only after a determination of guilt has been made on the underlying offenses. *Williams*, 576 F.3d at 870 (determining that differences in the factual

55

Addendum p. 64

elements or components of the factors and the offense meant that there was no duplication of constitutional dimensions or otherwise).  It is also reasonable to conclude that—at the very least—the fact that the defendant aided and abetted multiple killings in a single episode and aided and abetted another killing separated in time from an earlier killing or killings would perform the appropriate function of "non-statutory aggravating factors" by allowing for the individualized determination of whether a death sentence is justified, that is, helping to inform the selection decision.  *See Cox*, 133 F.3d at 571 (considering whether the aggravating factor performed its required function in the penalty process); *see also Johnson*, ___ F. Supp. 2d at ___, 2012 WL 5275491 at *6, *13-*14 (explaining the function of "non-statutory aggravating factors").[12]

Similarly, these "non-statutory aggravating factors" do not unconstitutionally duplicate each other.  First, it apparently escaped Johnson's notice that the "multiple

---

[12] To the extent that any basis can be discerned for Johnson's contention that these "non-statutory aggravating factors" were weighed in the "eligibility phase" and that, consequently, there is an unconstitutional opportunity for aggravators that duplicate the crimes charged to skew the result of the penalty determination, it might be that the "eligibility" determination was based on the entirety of Johnson's criminal conduct, which included multiple murders in a single episode and another murder in a subsequent episode.  However, the "eligibility" determination was made count-by-count, not on the basis of the entirety of the criminal conduct charged against Johnson.  This is true, notwithstanding that Johnson can only be executed once, even if she was given multiple death sentences.

Furthermore, "statutory aggravating factors" are not "weighed" in the "eligibility phase."  Rather, if, as to a particular count, the jury finds the necessary "statutory aggravating factors" in the "eligibility phase"—that is, an "intent" factor identified in § 848(n)(1) and at least one other factor identified in § 848(n)(2) through (12)—then the "eligibility" determination is essentially automatic.  *See* former 21 U.S.C. § 848(k).  The "statutory aggravating factors" are only "weighed" in the "penalty phase," with the "non-statutory aggravating factors," if any, and the "mitigating factors," if any, found to exist, to determine whether a death sentence is justified.  *See id.*

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 56 of 123
Appellate Case: 13-1739   Page: 66   Date Filed: 06/14/2013 Entry ID: 4045610

killings" and "killing another after a passage of time" factors do not go to the same underlying CCE murder offenses. The first factor goes only to the killings of Nicholson and the Duncans in **Counts 6** through **9**, while the second factor goes only to the killing of DeGeus in **Count 10**. *Compare* Third Notice Of Intent, § C.1. ("Defendant aided and abetted *the killing of Greg Nicholson, Lori Duncan, Kandi Duncan, and Ambert Duncan* during a single episode on July 25, 1993." (emphasis added)), *with id.*, § C.2. ("Defendant aided and abetted *the killing of Terry DeGeus* in November 1993, several months after killing the four victims on July 25, 2993, and after having time to reflect upon her conduct in the murders of July 25, 1993." (emphasis added)). Since the jury must determine the appropriate penalty on each count *separately*, different "non-statutory aggravating factors" asserted as to different counts cannot be "duplicative" in any sense.[13]

Even supposing that the circumstances had actually been such that these "non-statutory aggravating factors" could be and had been asserted as to the *same* killing or killings—for example, because the killings of Nicholson and the Duncans in one episode had *followed* the killing of DeGeus in a separate episode, so that the prosecution could have alleged both "multiple killings in a single episode" and "killing another after a passage of time" as to each count involving the killings of Nicholson

---

[13] Indeed, this fact alone means that this "duplicativeness" argument trespasses well into, if it does not cross over, the grey area between zealous advocacy and frivolousness. Similarly, the fact that Johnson can ultimately be executed only once, even if she is given the death penalty on more than one count, does not mean that any "non-statutory aggravating factors" asserted as to *any* of the killings could be "duplicative" of any "non-statutory aggravating factors" asserted as to any other killings. The statute requires the determination of the appropriate penalty as to each *count* of CCE murder, notwithstanding that, in making the determination of the penalty for a particular count, the jury's individualized determination of whether a death sentence is justified may look beyond the circumstances of the particular offense to other characteristics or conduct of the defendant.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 57 of 123
Appellate Case: 13-1739    Page: 67    Date Filed: 06/14/2013 Entry ID: 4045610

and the Duncans—there would be no unconstitutional duplication. The "multiple killings in a single episode" factor is based on the killings of Nicholson and the Duncans in one episode, without regard to the killing of DeGeus, and the "killing of another after a passage of time" factor is based on a time interval between the two episodes irrelevant to the "multiple killings" factor. Thus, even to the extent that these "non-statutory aggravating factors" are based on the same facts, that is, the sequence and timing of the killings, these facts support different inferences that form the different aggravators. *Bolden*, 545 F.3d at 625.

Finally, because there are factual components of each of these "non-statutory aggravating factors" that distinguish them from each other and from the underlying killings, there is no "skewing" of the weighing of the aggravating and mitigating factors in deciding whether to impose the death penalty. *Id.* Even supposing that the jury might otherwise give too much weight to multiple "non-statutory aggravating factors," the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Id.*

These "non-statutory aggravating factors" are not "duplicative" in an unconstitutional sense or in any other sense that would make them impermissible.

### B. *"Lack of remorse"*

#### 1. *Allegation of the factor*

The next "non-statutory aggravating factor" that Johnson challenges is alleged in the Third Notice Of Intent as follows:

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 58 of 123
Appellate Case: 13-1739    Page: 68    Date Filed: 06/14/2013 Entry ID: 4045610

### 4. Lack of Remorse

> Defendant has demonstrated a lack of remorse for aiding and abetting the murders of the five victims. Defendant has demonstrated this lack of remorse by her repeated affirmative denial of her role in the murders. Defendant has further demonstrated lack of remorse in her demeanor, facial expressions, and tone of voice when discussing the murders. Defendant has further demonstrated lack of remorse in statements she has made about victims, in particular oral statements about Lori Duncan not being fit to be a mother anyway, and written statements about how Terry DeGeus was buried on his knees.

Third Notice Of Intent, § C.4.

### *2. Arguments of the parties*

Johnson contends, in her assertion that the Third Notice Of Intent is vindictive, that the prosecution has improperly alleged "lack of remorse" as a free-standing "non-statutory aggravating factor," not as a subpart of the "future dangerousness" factor, as was done in Honken's case. She contends that caselaw prohibits consideration of "lack of remorse" as a free-standing aggravator.

In her specific challenge to this "non-statutory aggravating factor," Johnson also contends that this factor violates her Fifth and Sixth Amendment rights and permits unreliable jury findings. She argues that such a factor presents great danger to the fairness of the proceedings, because it is predicated upon one person's interpretation of a statement, demeanor, facial expression, and tone of voice, which does not meet the "heightened reliability" required for aggravating factors. She argues that such evidence has little probative value and any probative value that it has is outweighed by its potential for prejudice—indeed, she asserts that a finding of "lack of remorse" would be a profoundly prejudicial finding, resting on a very slender reed. She also argues that such a "non-statutory aggravating factor" violates her Fifth Amendment right to remain

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 59 of 123
Appellate Case: 13-1739   Page: 69   Date Filed: 06/14/2013 Entry ID: 4045610

silent and her Sixth Amendment right to a fair trial, because it potentially imposes a penalty for exercising her rights and has a disproportionate impact on innocent defendants. She also argues that it violates the Eighth Amendment, because it poses an unacceptable risk that the death sentence will be obtained on the basis of unreliable evidence.

The prosecution responds that, while Johnson has identified some non-binding district court decisions holding that "lack of remorse" cannot be asserted as a free-standing aggravator, there is copious authority that it can be. The prosecution also argues that, as a matter of fact and logic, the factor is properly considered separately, because a defendant could lack remorse, while posing no future danger, and vice versa. The prosecution also rebuts Johnson's Fifth, Sixth, and Eighth Amendment arguments by pointing out that the Supreme Court and other courts have endorsed "lack of remorse" as an appropriate factor for the jury to consider during the "penalty phase" of sentencing. The prosecution also argues that it is not premising this factor solely on Johnson's "silence," but on her conduct and statements indicating "lack of remorse."

In reply, Johnson attempts to distinguish the authority on which the prosecution relies for asserting "lack of remorse" as a free-standing aggravator.

### 3. Authority regarding "lack of remorse" as a separate factor

Although I decline to be drawn into an expansive discussion of the issue, there are undoubtedly constitutional concerns, including concerns with the reliability of evidence, surrounding consideration of evidence of "lack of remorse" as an aggravating circumstance in a capital case. *See, e.g., United States v. Caro*, 597 F.3d 608, 627-31 (4th Cir. 2010). Courts have also recognized that "lack of remorse" evidence may properly support a "future dangerousness" aggravating factor. *See, e.g., United States v. Ortiz*, 315 F.3d 873, 901-02 (8th Cir. 2002) (finding that "lack of remorse" evidence properly supported a "non-statutory aggravating factor" of "future dangerousness").

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 60 of 123
Appellate Case: 13-1739    Page: 70    Date Filed: 06/14/2013 Entry ID: 4045610

Nevertheless, contrary to Johnson's contentions, I do not find any controlling or persuasive authority that "lack of remorse" can *never* be asserted as a separate aggravating factor, and I do find persuasive authority suggesting that it is or can be a separate aggravating factor. *See, e.g., Zant v. Stephens*, 462 U.S. 862, 885-86 & n.22 (1983) (observing that Georgia had not attached the "aggravating" label to factors that are constitutionally impermissible or totally irrelevant to the capital sentencing process, noting that Georgia law provided, "'Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation, subject to the notice provisions of the statute.'" (quoting *Fair v. State*, 245 Ga. 868, 873, 268 S.E.2d 316 (1980))); *United States v. Mikos*, 539 F.3d 706, 718-19 (7th Cir. 2008) (noting, "It is common, and acceptable, to give lower sentences to persons who confess and show remorse than to persons who do not; the Sentencing Guidelines institutionalize this with a two-level or three-level reduction for acceptance of responsibility," and that, although such a reduction was not "automatic" in a capital case, it was equally appropriate to consider remorse or lack of remorse as a separate "non-statutory aggravating factor" in a capital case; also holding that, even if "lack of remorse" was not a valid "non-statutory aggravating factor," the defendant's death sentence in that case could be upheld on the basis of other proper "non-statutory aggravating factors").

The primary authority on which Johnson relies in support of her contention that "lack of remorse" cannot be asserted as a free-standing or stand-alone "non-statutory aggravating factor," but only in support of a "future dangerousness" aggravating factor, is *United States v. Davis*, 912 F. Supp. 938 (E.D. La. 1996). That decision does not go that far, however. Rather, the court's consideration of "lack of remorse" as an aggravating factor consisted of the following:

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 61 of 123
Appellate Case: 13-1739   Page: 71   Date Filed: 06/14/2013 Entry ID: 4045610

The government's third proposed nonstatutory aggravating factor is DAVIS' alleged lack of remorse for the offense. Lack of remorse is a subjective state of mind, difficult to gage objectively since behavior and words don't necessarily correlate with internal feelings. In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove their guilt beyond a reasonable doubt. To allow the government to highlight an offender's "lack of remorse" undermines those safeguards. *Without passing on whether lack of remorse is* per se *an inappropriate independent factor to consider, the court finds it inappropriate in this case*. The only information proposed to sustain the factor is DAVIS' alleged jubilation in learning that Kim Groves had been killed. The government does not propose to introduce evidence of continuing glee, or boastfulness, or other affirmative words or conduct that would indicate a pervading and continuing lack of remorse. Furthermore, as already noted, the allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the government to its proof.

While the government may not assert "lack of remorse" as an independent nonstatutory aggravating factor, it may argue DAVIS' alleged exultation as information probative of DAVIS' future dangerousness, the second nonstatutory factor. This information will most certainly be introduced in the guilt phase and is therefore admissible for consideration in the penalty phase as well. The government is cautioned however to be careful in its argument since this issue does tread so closely to constitutional protections.

*Davis*, 912 F. Supp. at 946 (emphasis added). As the highlighted language plainly shows, the court in *Davis* expressly *did not hold* that "lack of remorse" is never a permissible free-standing "non-statutory aggravating factor," but only that it was not a proper free-standing "non-statutory aggravating factor" *in that case*.

Nevertheless, subsequent district court decisions have read or have appeared to read *Davis* as standing for such a *per se* prohibition. *See, e.g., United States v. Diaz*, 2007 WL 656831, *25-*26 (N.D. Cal. Feb. 28, 2007) (unpubl. op.) ("The court in *Davis* did not allow 'lack of remorse' to be alleged as a stand-alone aggravating factor. It nevertheless permitted the government to present evidence of the defendant's alleged exultation as probative of 'future dangerousness.'"); *United States v. O'Driscoll*, 203 F. Supp. 2d 334, 345 (M.D. Pa. 2002) (stating, "In *Davis*, although the government attempted to use 'lack of remorse' as a separate aggravating factor, the district court did not permit the government to do so. However, the court did not foreclose the use of 'lack of remorse' as probative of 'future dangerousness,'" and, in the case before it, refusing to strike the "non-statutory aggravating factor" of "future dangerousness" and the supporting allegations of "low rehabilitative potential" and "lack of remorse" from the government's notice of intent to pursue the death penalty). As explained above, in light of the plain language used in *Davis*, I believe that such a reading of *Davis* is incorrect.[14]

In *United States v. Walker*, 910 F. Supp. 837 (N.D.N.Y. 1995), a decision handed down just prior to *Davis*, the district court also gave explicit reasons, in keeping

---

[14] I recognize that the prosecution in capital cases has sometimes limited its purpose in offering evidence of "lack of remorse" to supporting a "future dangerousness" "non-statutory aggravating factor." *See, e.g., United States v. O'Reilly*, 545 F. Supp. 2d 630, 637 (E.D. Mich. 2008) ("The Government concedes it will not argue O'Reilly's 'lack of remorse' as a separate non-statutory aggravating factor . . . [b]ut, the Government says it may present such evidence to support the 'future dangerousness' non-statutory aggravating factor."); *United States v. Concepcion Sablan*, 555 F. Supp. 2d 1177, 1187 (D. Colo. 2006) ("The Government indicated in response to the motion that it does not seek to introduce threats of violence, lack of remorse or low rehabilitative potential as separate nonstatutory aggravating factors but in support of future dangerousness."). However, I find nothing that compels the prosecution to do so in every (or any) case.

with the pertinent constitutional and evidentiary concerns, for not allowing "lack of remorse" to be asserted or considered as a separate "non-statutory aggravating factor" *in that case*:

> In paragraph C.4.g of its Notice of Intent, the government alleges that "Tyrone Walker has displayed a total lack of remorse for the killing of Michael Monsour, in that, while incarcerated in the Federal Correctional Institution in Otisville, New York, Tyrone Walker stated, in substance, that he and Walter killed the "motherf* * *er." *In light of the obvious prejudice entailed by singling out and presenting this epithet to the jury as a non-statutory aggravating factor, and in light of the numerous competing inferences which can be drawn from the use of such vulgarisms, and overall, in light of the sheer triviality of this allegation as compared to the portentous purposes for which it is alleged, the Court can conceive of no purpose for which presentation of this information as a discrete non-statutory aggravating factor could be viewed as more probative than unfairly prejudicial.*

*Walker*, 910 F. Supp. at 855 (emphasis added).

In *United States v. Cooper*, 91 F. Supp. 2d 90 (D.D.C. 2000), the court considered *Davis* in light of other authorities. In *Cooper*, the court read *Davis* as not allowing certain evidence of "lack of remorse"—the defendant's alleged jubilation when he learned that his victim had been killed—as an independent "non-statutory aggravating factor," but as permitting the lack of remorse evidence to be used as probative of "future dangerousness." 91 F. Supp. 2d at 112. The court recognized, however, that "[t]here does not appear to be a constitutional ban on the use of lack of remorse evidence as an aggravating factor." *Id.* at 112-13 (citing *Zant v. Stephens*, 462 U.S. 862, 885-86 n.22 (1983), and *United States v. Nguyen*, 928 F. Supp. 1525, 1541 (D. Kan. 1996)). The court noted that such evidence is "subject to scrutiny to ensure that it is relevant, reliable, and its probative value outweighs any danger of unfair

64

prejudice, confusion, or misle[ading the] jury," and does not "encroach[ ] on the defendant's constitutional right to remain silent," such as the defendant's alleged unwillingness to acknowledge in his post-arrest statements that he is blameworthy for the crimes to which he admitted." *Id.* Ultimately, the court concluded, "As to other lack of remorse evidence that does not encroach on the defendant's right to remain silent, such evidence, as it pertains to Cooper's future dangerousness while in prison, will be allowed if the Court determines at trial that the evidence is reliable and is not outweighed by the risk of unfair prejudice to the defendant, or the risk that it would confuse or mislead the jury." *Id*. at 113.

More recently, in *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010), the Fourth Circuit Court of Appeals identified important questions going to the admissibility of "lack of remorse" as an aggravating factor, in light of constitutional and evidentiary concerns, as the following: (1) whether "lack of remorse" is supported by evidence merely of the defendant's silence or by evidence of "affirmative conduct displaying lack of remorse [that] was significant and telling," and (2) whether the jury was adequately instructed that silence can never be considered regarding the "non-statutory aggravating factor" of "lack of remorse," because courts presume a jury acts in a manner consistent with proper instructions. 597 F.3d at 630-31.

### 4. *Analysis*

Again, I have found no controlling or persuasive authority that "lack of remorse" can *never* be a free-standing "non-statutory aggravating factor," and, to the contrary, I have found authority that it can be a free-standing "non-statutory aggravating factor." *See, e.g., Zant*, 462 U.S. at 885-86 & n.22; *Mikos*, 539 F.3d at 718-19; *Cooper*, 91 F. Supp. 2d at 112-13. The question is whether constitutional and evidentiary requirements for such a free-standing "non-statutory aggravating factor"

can be met in a particular case. *See, e.g., Caro*, 597 F.3d at 627-31; *Walker*, 910 F. Supp. at 855.

I conclude that the prosecution in this case has identified evidence of "affirmative conduct displaying lack of remorse [that] [i]s significant and telling," not merely evidence of Johnson's silence. *Caro*, 597 F.3d at 630-31. The Third Notice Of Intent identifies such evidence as "repeated affirmative denial of her role in the murders"; "her demeanor, facial expressions, and tone of voice when discussing the murders"; and "statements she has made about victims, in particular oral statements about Lori Duncan not being fit to be a mother anyway, and written statements about how Terry DeGeus was buried on his knees." Third Notice Of Intent, § C.4. The prosecution has also identified, in its briefing of this "non-statutory aggravating factor," evidence that Johnson intended to profit from her crime with Bobby McNeese, by suing the government for false arrest, and evidence that Johnson put on a puppet show with another inmate and laughed during the part of the play dealing with slaying a "do-gooder."

I acknowledge that "lack of remorse" is a "subjective state of mind" that may be "difficult to gage objectively." *Davis*, 912 F. Supp. at 946. Nevertheless, the evidence cited by the prosecution here is akin to the evidence of "continuing glee," "boastfulness," and other affirmative conduct indicative of "a pervading and continuing lack of remorse," that even the court in *Davis* seemed to acknowledge might justify consideration of "lack of remorse" as a separate "non-statutory aggravating factor." *Id.* While I cannot say that the *only* inference that can be drawn from evidence of any one of the cited incidents is that Johnson lacked remorse for her involvement in the five murders, I can say that it is reasonably likely that the inference from each of them, and from the entirety of them, that a trier of fact might draw is a lack of remorse. *Cf. Walker*, 910 F. Supp. 2d at 855 (noting "the numerous competing inferences which can

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 66 of 123
Appellate Case: 13-1739   Page: 76   Date Filed: 06/14/2013 Entry ID: 4045610

be drawn from the use of . . . vulgarisms," among other factors, made the evidence the defendant's use of single epithet more prejudicial than probative). Nor can I conclude that any of the incidents are so "trivial" in comparison to the "portentous purposes for which [they are] alleged" that their potential for prejudice outweighs their probative value. *Id.* Finally, I will instruct the jurors that, in determining whether or not any of the "non-statutory aggravating factors" existed, they cannot consider Johnson's mere silence. *Caro*, 597 F.3d at 631. We must presume that the jurors will follow that direction. *Id.*

Johnson's challenge to the "lack of remorse" "non-statutory aggravating factor" is denied.

### C.      *"Uncharged Criminal Conduct"*

### 1.      *Allegations of the factors*

In the Third Notice Of Intent, the prosecution identifies ten uncharged incidents of criminal conduct as separate "non-statutory aggravating factors."[15]      Johnson

---

[15] The specific "non-statutory aggravating factors" are alleged as follows:

> 5.      <u>Prior Violent Criminal Conduct</u>:
>
> Defendant committed physical assault and battery of Mason City Police Officer, Dave Tyler, on September 11, 1989.
>
> 6.      <u>Uncharged Criminal Conduct</u>:
>
> Defendant committed perjury before the grand jury: October 27, 1993; March 5, 1996; July 23, 1996; and April 11, 2000.
>
> 7.      <u>Uncharged Criminal Conduct</u>:

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 67 of 123
Appellate Case: 13-1739     Page: 77     Date Filed: 06/14/2013 Entry ID: 4045610

On multiple occasions between 1995 and 1996, defendant threatened to harm Kathy Rick, Dustin Honken's former girlfriend.

8.      Uncharged Criminal Conduct:

In 1997, defendant threatened Daniel Cobeen, a person she then knew to be a witness cooperating with the United States Government, by making a hand gesture as if she was shooting him with a handgun.

9.      Uncharged Criminal Conduct:

Defendant aided and abetted the solicitation of crimes of violence.  In particular, defendant assisted Dustin Honken in 1996 in attempting to obtain the release of Dennis Putzier from the Woodbury County Jail for the purposes of killing witnesses and law enforcement officers.

10.      Uncharged Criminal Conduct:

Defendant conspired with Dustin Honken to aid his escape from the Woodbury County jail in 1996.

11.      Uncharged Criminal Conduct:

During the sentencing hearing of Dustin Honken in February 1998, defendant threatened to harm the judge, prosecutor, and law enforcement agents.

12.      Uncharged Criminal Conduct:

Defendant distributed controlled substances, specifically methamphetamine, after 1997.

13.      Uncharged Criminal Conduct:

In 1998, defendant threatened to kill or injure Doug Book, Chief of Police of Forest City, Iowa, and plotted to kill or injure Doug Book's dogs by use of poison.

14.      Uncharged Criminal Conduct:

Addendum p. 77

challenges all of these "uncharged criminal conduct" factors on three grounds: (1) evidence of most types of uncharged criminal conduct is inadmissible; (2) the specific incidents of uncharged criminal conduct at issue in this case are insufficient to constitute separate "non-statutory aggravating factors"; and (3) the "uncharged criminal conduct" factors are duplicative of the "future dangerousness" factor. I find that it is appropriate to begin my analysis with her "duplicativeness" challenge.

### 2. *Duplicativeness*

Johnson's "duplicativeness" argument hinges on her reading of the language of the "future dangerousness" "non-statutory aggravating factor" as including the ten "uncharged criminal conduct" factors. *See, infra*, p. 108 (quoting the "future dangerousness" factor). Johnson argues that the "out of prison" aspect of "future dangerousness" is premised on all violent conduct that she has allegedly committed in and out of prison, *i.e.*, including any "uncharged criminal conduct" factors. She also argues that, to the extent that the "in prison" aspect of "future dangerousness" is stated as "including, but not limited to" incidents of allegedly violent conduct in prison, it also includes the alleged incidents of violence out of prison, including the "uncharged criminal conduct" factors. She argues that, because the ten "uncharged criminal conduct" factors are duplicative of the "future dangerousness" factor, either the "uncharged criminal conduct" factors or the "future dangerousness" factor should be stricken.

---

Defendant solicited a crime of violence. In particular, between about March 24, 1998 and October 6, 1998, defendant attempted to hire an undercover agent and a confidential informant for the purpose of harming and/or kidnapping a drug dealer, J.R., who owed her drug proceeds.

The prosecution responds that neither the Supreme Court nor the Eighth Circuit Court of Appeals has adopted a rule barring the use of evidence to support more than one aggravating factor. The prosecution also argues that the "uncharged criminal conduct" and "future dangerousness" factors are not "logically duplicative." The prosecution explains that a jury might find that Johnson's commission of other criminal conduct was aggravating, but not find that it shows her "future dangerousness." The prosecution explains that, similarly, a jury could find that Johnson committed other criminal conduct, but not find that such conduct was aggravating, yet still find that her involvement in the murders and/or the prison assaults alleged in support of the "future dangerousness" factor show her "future dangerousness."

I set out the standards for determining "duplicativeness" of aggravating factors above, in Section IV.A.3., beginning on page 51. I find no "duplicativeness" problem as to the "uncharged criminal conduct" factors and "future dangerousness" factor. For reasons stated below, in Section IV.D.3., beginning on page 108, the "future dangerousness" factor in this case will be limited to "future dangerousness in prison." The prosecution has alleged five assaults by Johnson on other inmates while she was incarcerated, either in a county jail or in a federal prison, as the basis for the "future dangerousness in prison" factor. Contrary to Johnson's contentions, the incidents on which the "future dangerousness in prison" factor could rely do not include any of the ten "uncharged criminal conduct" factors, even though the "future dangerousness in prison" factor uses "including, but not limited to" language. This is so, because the full statement is, "Evidence that defendant will pose a danger to others in a prison setting *includes assault[s] of other inmates*, including but not limited to [five specified assaults]." Third Notice Of Intent, § C.15 (emphasis added). Thus, other incidents not specifically identified would have to be assaults of other inmates, and none of the "uncharged criminal conduct" factors involve such assaults. Therefore, in the

70

Addendum p. 79

circumstances of this case, the "uncharged criminal conduct" factors and the "future dangerousness" factor are based on factually distinct incidents. *Cf. Bolden*, 545 F.3d at 625 (considering whether allegedly duplicative aggravating factors had distinct factual components).

Johnson's "duplicativeness" argument as to the "uncharged criminal conduct" factors and the "future dangerousness" factor fails.

### 3. Inadmissibility in general

Johnson's argument that "uncharged criminal conduct" is generally inadmissible in capital sentencing proceedings has several prongs. I will consider each prong of that attack in turn.

#### a. Statutory and other limitations

##### i. Arguments of the parties

Johnson argues that evidence of most types of "uncharged criminal conduct" is barred by the controlling statute. Johnson contends that former § 848(n) states five "statutory aggravating factors" that refer to prior convictions, those in former § 848(n)(2), (3), (4), (10), and (11). She argues that the plain language of the statute contemplates that only criminal conduct that has resulted in a conviction for the crimes listed in these subdivisions of former § 848(n) may constitute aggravating factors and that, by listing such types of convictions, Congress necessarily meant to preclude the government from using as aggravating factors other convictions not specified. She also argues that the "catch-all" language of former § 848(j) cannot be read to "nullify" the meaning of former § 848(n). She argues that any ambiguity in the statute must be construed in her favor.

The prosecution argues that Johnson has mixed the roles of "statutory aggravating factors," which make a defendant "eligible" for the death penalty, with the role of "non-statutory aggravating factors," which focus on the defendant's character,

conduct, and circumstances for the purpose of individualized determination of whether a death sentence is justified.  The prosecution points out that the decision on which Johnson relies for her statutory prohibition argument has been rejected by other courts and that the Eighth Circuit Court of Appeals has recognized that "uncharged criminal conduct" is routinely permitted as a "non-statutory aggravating factor."

In reply, Johnson does not reiterate her statutory prohibition argument, but asserts that courts have not allowed unfettered or "routine" use of *uncharged* criminal conduct as an independent aggravator in capital cases.

### ii.    *The purported statutory bar*

Johnson's argument that the plain language of § 848(n) limits criminal conduct that can be considered as an aggravating factor to the specific *convictions* listed in § 848(n)(2), (3), (4), (10, and (11), is unconvincing.  As the prosecution suggests, this argument fails to recognize the difference between "statutory aggravating factors," which make a defendant "eligible" for the death penalty, and "non-statutory aggravating factors," which focus on the defendant's character, conduct, and circumstances for the purpose of an individualized determination of whether a death sentence is justified.  *See, supra*, Section II.B.1, beginning on page 14.  Once the threshold of "eligibility" has been crossed, former § 848(j) expressly allows the prosecution to assert, and the jurors to consider, "any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section."  Former 21 U.S.C. § 848(j); *see also United States v. Chong*, 98 F. Supp. 2d 1110, 1128 n.10 (D. Hawaii 1999) (rejecting *United States v. Peoples*, 74 F. Supp. 2d 930 (W.D. Mo. 1999), on which Johnson relies for her statutory limitation argument, as "resting on the erroneous factual premise that jurors cannot discern that statutory aggravating factors are more important than nonstatutory aggravating factors").  This language permitting consideration of "any other aggravating factor" as including uncharged criminal

Addendum p. 81

72

conduct does not "nullify" the limitations on criminal *convictions* relevant to the "eligibility" determination in § 848(n); rather, reading § 848(n) to preclude "non-statutory aggravating factors" based on prior criminal conduct, whether charged or uncharged, adjudicated or unadjudicated, would "nullify" § 848(j), at least to the extent that § 848(j) otherwise places no limitation on "non-statutory aggravating factors."

Indeed, the Eighth Circuit Court of Appeals rejected a similar statutory construction argument under the FDPA by defendant Holder in *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001), *cert. granted and judgment vacated on other grounds*, 536 U.S. 953 (2002):

> We turn next to Holder's challenges to the "other criminal acts" nonstatutory aggravating factor. Holder first contends that because six of the sixteen statutory aggravating factors listed in § 3592(c) of the FDPA are based on prior criminal acts, the FDPA precludes using prior criminal acts as a nonstatutory aggravating factor. We disagree. As noted previously, the FDPA specifically allows "any other aggravating factor for which notice has been given." 18 U.S.C. § 3592(c).

*Allen*, 247 F.3d at 789; *see also United States v. Corley*, 519 F.3d 716, 723 (7th Cir. 2008) ("It is a stretch, however, and one not supported in law, to contend that the FDPA's recognition that prior convictions are relevant factors in aggravation should be read as precluding the consideration of other actions by the defendant that did not result in a trial or conviction. In fact, the FDPA specifically provides that the jury 'may consider whether any other aggravating factor' supports a death sentence, 18 U.S.C. § 3592(c), and states that at the sentencing hearing 'information may be presented as to any matter relevant to the sentence. . . .' 18 U.S.C. § 3593(c)."); *United States v. Higgs*, 353 F.3d 281, 322-23 (4th Cir. 2003) (rejecting a similar statutory limitation argument).

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 73 of 123
Appellate Case: 13-1739   Page: 83   Date Filed: 06/14/2013 Entry ID: 4045610

### iii. Admissibility of unadjudicated conduct in capital cases

It also appears that every federal appellate court to consider the question, including the Eighth Circuit Court of Appeals, has concluded that introduction of evidence of unadjudicated criminal acts in a capital penalty phase is not barred by the Constitution. *See United States v. Lujan*, 603 F.3d 850 (10th Cir. 2010) (allowing introduction of unadjudicated homicides during the penalty phase); *United States v. Basham*, 561 F.3d 302, 331–32 (4th Cir. 2009) (unadjudicated sexual misconduct); *United States v. Corley*, 519 F.3d 716, 723–25 (7th Cir. 2008) (unadjudicated homicide); *Cummings v. Polk*, 475 F.3d 230, 238 (4th Cir. 2007) (noting that there is authority in the Fourth Circuit and the Supreme Court that evidence of unadjudicated crimes may be utilized in a capital sentencing trial); *Brown v. Dretke*, 419 F.3d 365, 376-77 (5th Cir. 2005) (noting that "admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments," nor does the Constitution require "that unadjudicated extraneous offenses be proved beyond a reasonable doubt"); *United States v. Lee*, 274 F.3d 485, 494 (8th Cir. 2001) (unadjudicated assaults, burglary, and arson).

In *Lee*, the Eighth Circuit Court of Appeals noted that the FDPA "erects very low barriers to the admission of evidence at capital sentencing hearings," and specifically authorizes evidence "as to any matter relevant to the sentence," and that the limitation of evidence at sentencing under the FDPA is the balance of probative value against the danger of prejudice, confusing the issues, or misleading the jury. 274 F.3d at 494. The court then concluded,

> The [district] court permitted the government to elicit a number of unadjudicated past bad acts by Lee, including instances in which Lee physically abused a girlfriend, assaulted his sister, committed burglary and arson offenses, assaulted inmates and patients at various facilities, and

> treated blacks more poorly than whites. These acts were probative of Lee's future dangerousness, but they were also relevant to the credibility of Dr. Cunningham. Dr. Cunningham's mitigation testimony selectively presented facts about Lee's past and his upbringing to cast him in a sympathetic light. The government's cross examination permissibly tested whether Dr. Cunningham's presentation produced a distorted account.

*Lee*, 274 F.3d at 494. Thus, the court concluded that these unadjudicated crimes were properly admitted, at least in support of a "future dangerousness" factor, as well as to attack the credibility of a defense expert. *Id.*

There seems to be little doubt that unadjudicated criminal conduct can be considered *in support of* another aggravating factor, such as "continuing threat" or "future dangerousness." *See, e.g., id.* (unadjudicated conduct was probative of "future dangerousness"); *see also, e.g., Welch v. Workman*, 639 F.3d 980, 1007 (10th Cir. 2011) (unadjudicated criminal conduct was probative of whether the defendant was a "continuing threat"); *Lujan*, 603 F.3d at 859-60 (an unadjudicated homicide was admissible to prove "future dangerousness," although the trial court had doubted that it could be admitted as an independent aggravating factor). Indeed, in that context, courts have held that the Constitution does not even require proof of the unadjudicated criminal conduct beyond a reasonable doubt. *See, e.g., Corley*, 519 F.3d at 726; *Brown*, 419 F.3d at 376-77.

### iv. Admissibility of unadjudicated criminal conduct as an independent aggravating factor

The question here, however, is whether unadjudicated criminal conduct can be considered *as an independent aggravating factor*. Courts, including the Eighth Circuit Court of Appeals, have also allowed this. For example, in *Allen*, the court rejected defendant Holder's challenge to an "other criminal acts" "non-statutory aggravating factor," in part, as follows:

> [T]he use of criminal history in sentencing has long been an accepted practice, even in the death penalty context. *See, e.g., Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630 (upholding use of prior criminal activity sentencing factor); *Zant*, 462 U.S. at 888, 103 S.Ct. 2733 (stating that "[n]othing in the United States Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination"). "Both a backward-looking and a forward-looking inquiry are a permissible part of the sentencing process …." *Tuilaepa*, 512 U.S. at 977, 114 S.Ct. 2630. Furthermore, Holder points to no authoritative federal precedent in support of his assertion that use of this factor violates the Constitution. In fact, the Supreme Court has noted that sentencing courts have "considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (stating that the Court has upheld the constitutionality of considering unadjudicated criminal behavior in *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). *See also Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir.1995) (noting that although the Court has subsequently called into doubt some of the logic of *Williams*, the Court has not called into doubt the essence of its holding that unadjudicated crimes may constitutionally be considered in imposing a death sentence), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *Devier v. Zant*, 3 F.3d 1445, 1464–65 (11th Cir.1993), *cert. denied*, 513 U.S. 1161, 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995); *Williams v. Lynaugh*, 814 F.2d 205, 207–08 (5th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987).

*Allen*, 247 F.3d at 789. More recently, in *United States v. Bolden*, 545 F.3d 609 (8th Cir. 2008), the Eighth Circuit Court of Appeals also rejected challenges to independent "non-statutory aggravating factors" of "obstruction of justice" and "other criminal

76

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 76 of 123
Appellate Case: 13-1739   Page: 86   Date Filed: 06/14/2013 Entry ID: 4045610

conduct," which were based, at least in part, on unadjudicated conduct. 545 F.3d at 624-25.

Similarly, in *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), the Fourth Circuit Court of Appeals upheld submission of an unadjudicated "obstruction of justice" offense as an independent "non-statutory aggravating factor," over the defendant's Fifth, Sixth, and Eighth Amendment objections that the evidence lacked the requisite indicia of reliability necessary to impose a sentence of death and because the jury would be unable to evaluate the evidence fairly. 353 F.3d at 322-23. The court upheld the independent aggravating factor, because "[t]he jury was carefully instructed that the government was required to 'prove beyond a reasonable doubt that the defendant tampered and attempted to tamper with evidence and witnesses for the purpose of obstructing the investigation of the kidnappings and murders' of the three women." *Id.* at 323.

In *Devier v. Zant*, 3 F.3d 1445 (11th Cir. 1993) *cert. denied*, 513 U.S. 1161 (1995), the Eleventh Circuit Court of Appeals upheld consideration of an unadjudicated criminal offense of rape six months prior to the charged murder as an independent "non-statutory aggravating factor." 3 F.3d at 1464. The court rejected the defendant's argument that evidence of an unadjudicated crime was inherently unreliable, and thus violated the Eighth Amendment, because the relevant inquiry in the penalty phase is the defendant's previous criminal activity, even uncharged crimes, and the rape victim's testimony provided sufficiently reliable evidence of the crime. *Id.* at 1464-65. The court also rejected the defendant's argument that the jury had not been instructed as to the burden of proof for the offense, because the defendant had not raised it until his state post-conviction relief proceedings, and even in the absence of an instruction requiring proof beyond a reasonable doubt, the rape victim's testimony was sufficiently reliable. *Id.* at 1465-66; *see also Pitsonbarger v. Gramley*, 141 F.3d 728, 735-36 (7th

Appellate Case: 13-1739    Page: 87    Date Filed: 06/14/2013 Entry ID: 4045610

Cir. 1998) (the due process clause did not require proof beyond a reasonable doubt of uncharged offenses of "window peeping" and "public indecency" before they could be considered as aggravating factors for capital sentencing).

Here, whether or not due process would require that an unadjudicated criminal offense must be proved beyond a reasonable doubt before it can be asserted as an independent "non-statutory aggravating factor," *see id.*; *Pitsonbarger*, 141 F.3d at 735-36, the applicable statute, former § 848 expressly *does* require proof of any aggravating factor—statutory or non-statutory—unanimously and beyond a reasonable doubt. *See* former 21 U.S.C. § 848(j) ("The burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless established beyond a reasonable doubt."); former 21 U.S.C. § 848(k) ("A finding with respect to any aggravating factor must be unanimous."); *see also Corley*, 519 F.3d at 724 (requiring consideration of the burden of proof for determining reliability and for a jury to determine whether the conduct may be considered); *Higgs*, 353 F.3d at 322-23 (the reliability requirement for an unadjudicated criminal offense to serve as an independent aggravating factor was met where the jury was required to find such a factor beyond a reasonable doubt).

### v. Summary

Thus, as a general matter, a jury may consider an uncharged or unadjudicated criminal offense as an independent non-statutory aggravating factor, if it finds that offense has been proved beyond a reasonable doubt. However, questions regarding the prejudicial and probative impact of the evidence of "uncharged criminal conduct" must wait until I turn to consideration of specific "uncharged criminal conduct" factors—and may have to wait until the "penalty retrial."

Appellate Case: 13-1739    Page: 88    Date Filed: 06/14/2013 Entry ID: 4045610

### b. Biased sentencing

Johnson's next "general" attack on incidents of "uncharged criminal conduct" as independent "non-statutory aggravating factors" is that consideration of such factors will result in a biased and unreliable sentencing decision in violation of the Fifth, Sixth, and Eighth Amendments. She contends that a criminal *conviction* meets the exacting standards for reliability, because it has been proved beyond a reasonable doubt to an unbiased jury, but uncharged and unadjudicated criminal conduct has not. She argues that, even where a sentencing jury in a capital case is required to find unadjudicated criminal conduct beyond a reasonable doubt, as is required by the applicable statute,[16] the admission of unadjudicated acts evidence in the "penalty phase" violates a defendant's right to a fair and impartial sentencing determination. This is so, she argues, because a jury cannot be expected to evaluate objectively allegations of unadjudicated criminal behavior in the "penalty phase" after the defendant has already been convicted of a capital offense. She also argues that use of "uncharged criminal conduct" violates the presumption that she is innocent of such conduct. The prosecution's terse response to this argument is that it is foreclosed by circuit precedent.

I agree with the prosecution that *Bolden*, 545 F.3d at 624, and *Allen*, 247 F.3d at 789-90, foreclose an argument that "uncharged criminal conduct" is necessarily too unreliable to be used as an independent "non-statutory aggravating factor." As I explained above, I believe that Johnson's "reliability" objection fails, where the jury will be required to find the "uncharged criminal conduct" beyond a reasonable doubt.

---

[16] Johnson erroneously identifies the applicable statute—not for the first or last time—as 18 U.S.C. § 3593(c), a provision of the FDPA, but the applicable statute in her "penalty retrial" is former § 848(j), a provision of the ADAA. The ADAA provision, however, also requires proof of aggravating factors beyond a reasonable doubt.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 79 of 123
Appellate Case: 13-1739   Page: 89   Date Filed: 06/14/2013 Entry ID: 4045610

On the other hand, it is not clear to me that *Bolden* and *Allen* foreclose an argument that allowing "uncharged criminal conduct" as independent "non-statutory aggravating factors" in the penalty phase of a capital sentencing proceeding presents a bias problem, based on the contention that jurors in that situation may not be able to make a fair and impartial determination or weighing of such conduct by a defendant who has been convicted of a capital offense. Certainly, those decisions do not specifically or expressly address bias or impartiality arguments.

Nevertheless, courts that have specifically considered such arguments have concluded that this concern—like the "unreliability" concern—does not reach constitutional proportions where the jury is properly instructed that it must find such conduct unanimously and beyond a reasonable doubt. *See Higgs*, 353 F.3d at 322-23 (rejecting the defendant's Fifth, Sixth, and Eighth Amendment objections that a capital sentencing jury would be unable to evaluate fairly evidence of uncharged criminal conduct where "[t]he jury was carefully instructed that the government was required to 'prove beyond a reasonable doubt that the defendant tampered and attempted to tamper with evidence and witnesses for the purpose of obstructing the investigation of the kidnappings and murders' of the three women"); *United States v. Umana*, 707 F. Supp. 2d 621, 631 (W.D.N.C. 2010); *United States v. Gilbert*, 120 F. Supp. 2d 147, 151-52 (D. Mass. 2000). I am unwilling to assume that a jury that is properly instructed on the burden of proof and the purposes for which it is to consider "uncharged criminal conduct" aggravating factors cannot fairly and impartially do so, even in the context of determining the appropriate penalty for a defendant already convicted of a capital offense. Even if it might be more difficult for a jury that has found a defendant guilty of a capital offense to consider whether the defendant has committed other criminal conduct, the jury for Johnson's "penalty retrial" is not the same jury that found her guilty of the CCE murders.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 80 of 123
Appellate Case: 13-1739   Page: 90   Date Filed: 06/14/2013 Entry ID: 4045610

Johnson's bias and unreliability objection to the "uncharged criminal conduct" "non-statutory aggravating factors" also fails.

### c. *More prejudicial than probative*

Next, Johnson argues that unadjudicated crimes evidence should be excluded because its probative value is necessarily far outweighed by the danger of unfair prejudice and confusing the jury. She admits, however, that this argument relies on her previous argument that evidence of unadjudicated criminal acts is unfairly prejudicial because it is unreliable. The prosecution asserts, again, that this argument is foreclosed by Eighth Circuit precedent. In reply, Johnson tries to explain her argument to be that, because the same "uncharged criminal conduct" is offered in support of both independent aggravating factors and as demonstrating "future dangerousness," the jury will be confused about which standard of proof to apply to those allegations. This is so, she argues, because only consideration of such conduct as an independent aggravating factor requires proof of the conduct beyond a reasonable doubt. She also argues that jurors will be confused and misled, to her prejudice, where the jurors must assess the reliability of decades-old misconduct that was not contemporaneously adjudicated. She also argues that this evidence of remote misconduct provides little probative insight into her current character.

Johnson's first "juror confusion" argument is unavailing here. Again, for the reasons stated below, in Section IV.D.3., beginning on page 108, the "future dangerousness" factor *in this case* will be limited to "future dangerousness in prison." Also, for the reasons stated above, in Section IV.C.2., and specifically beginning on page 70, the incidents on which the "future dangerousness in prison" factor could rely do not include any of the ten "uncharged criminal conduct" factors. I believe that Johnson's other "juror confusion" and "presumption of innocence" arguments are defeated, once again, by the requirement that the jurors must find the "uncharged

81

Addendum p. 90

criminal conduct" beyond a reasonable doubt. Her final argument that evidence of remote misconduct provides little insight into her current character is simply a "weight of the evidence" argument that should be made to the jury, but does not warrant exclusion of the "uncharged criminal conduct" evidence *per se*.

### d.    Relevance and heightened reliability

Johnson's last "general" argument to exclude the "uncharged criminal conduct" "non-statutory aggravating factors" is that there are relevance and heightened reliability requirements for "non-statutory aggravating factors" that are not met here. Her argument—although stated at much greater length—appears to be that the "uncharged criminal conduct" factors alleged here are not sufficiently serious, in the scale of societal values, to be weighed in the selection of who is to live or die, and that they do not have sufficient logical and legal "probity" in a life or death determination to produce a reliable penalty determination. The prosecution disputes what it takes to be Johnson's contention that there is a higher degree of reliability required for prior criminal conduct or "non-statutory aggravating factors" than for other aggravating evidence. Again, this argument by Johnson is one that is more properly considered as to *particular* "uncharged criminal conduct" factors than as to "uncharged criminal conduct" factors generally, and I will consider it in that context, below.

### 4.    Challenges to specific "uncharged criminal conduct" factors

### a.    Standards for sufficiency of "non-statutory aggravating factors"

In *Corley*, the Seventh Circuit Court of Appeals provided guidance on whether uncharged or unadjudicated criminal conduct should be admitted in the penalty phase *in support of another aggravating factor*, "future dangerousness." 519 F.3d at 724. Although the concern here is whether uncharged or unadjudicated criminal conduct

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 82 of 123
Appellate Case: 13-1739    Page: 92    Date Filed: 06/14/2013 Entry ID: 4045610

should be admitted *as an independent aggravating factor*, I find that *Corley* identifies considerations pertinent to that situation, as well. In *Corley*, the court observed,

> [The admissibility of unadjudicated criminal conduct generally] does not mean that such conduct may be considered in all cases. As Corley and the government recognize, the district court in determining whether such information may be considered must consider a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered.

*Corley*, 519 F.3d at 724. Similarly, in *Bolden*, the Eighth Circuit Court of Appeals suggested that "uncharged criminal conduct," in that case, "obstruction of justice," must have "sufficient relevance" to be considered as an independent "non-statutory aggravating factor":

> Bolden argues his post-offense conduct lacked sufficient relevance to whether he should be sentenced to death. We disagree. Other courts have approved use of an obstruction of justice non-statutory aggravating factor based upon post-offense conduct. *See, e.g., United States v. Higgs*, 353 F.3d 281, 322-23 (4th Cir. 2003) (disposing of murder weapon, destroying physical evidence, and directing witnesses to lie); *United States v. Edelin*, 134 F.Supp.2d 59, 76-77 (D.D.C. 2001) (threatening witnesses). This is consistent with the treatment of obstruction under the Sentencing Guidelines. U.S.S.G. § 3C1.1. The district court did not err in submitting this non-statutory factor based in part on Bolden's post-offense conduct.

*Bolden*, 545 F.3d at 624. Thus, the court acknowledged the "sufficient relevance" standard, but held that it was met by the recognition that the specific uncharged offense, obstruction of justice, had been recognized as relevant to the penalty determination.

It appears that the federal district courts, rather than the federal appellate courts, have been the most concerned to develop more specific standards for the "sufficiency"

of "non-statutory aggravating factors" that can be considered in the penalty phase of a capital trial, however. For example, in *United States v. Gilbert*, 120 F. Supp. 2d 147, 150 (D. Mass. 2000), one of the seminal decisions on this issue, United States District Court Judge Michael Ponsor observed,

> Through interpretation of the Federal Death Penalty Act and the rulings of the U.S. Supreme Court, the federal courts have arrived at a three-part test to guide their discretion in evaluating nonstatutory aggravating factors. *See United States v. Davis*, 912 F.Supp. 938, 943 (E.D. La. 1996). First, the information must be "relevant." *Id.* The provision on nonstatutory aggravating factors allows the introduction only of "relevant information" (of which the Government has given notice) that may tend to make the death penalty more appropriate. 18 U.S.C. § 3593(a)(2). Second, the information must meet the "heightened standard of reliability" the Supreme Court has required in death penalty cases. *Ford v. Wainwright*, 477 U.S. 399, 410–11, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *see also Spaziano v. Florida*, 468 U.S. 447, 456, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Finally, even if relevant and reliable, proposed aggravating factors may be excluded if their probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or a likelihood that the jury will be misled. *See* 18 U.S.C. § 3593(c).

*Gilbert*, 120 F. Supp. 2d at 150. Judge Ponsor then addressed more specifically each of the three key factors that he had identified.

As to "relevance," Judge Ponsor explained,

> For a nonstatutory aggravating factor to be "relevant" within the meaning of the statute, it must be "sufficiently relevant to the consideration of who should live and who should die." *Davis*, 912 F.Supp. at 943; *see also United States v. Friend*, 92 F.Supp.2d 534, 541 (E.D. Va. 2000); *United States v. Peoples*, 74 F.Supp.2d 930, 932 (W.D. Mo. 1999). Congress could not have intended the word "relevant" to mean anything less, given the strong

84

> Constitutional policy favoring guided and measurable jury determinations on capital punishment. *See generally Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). As the Supreme Court has held, aggravating factors in death penalty cases must be "particularly relevant to the sentencing decision," not merely relevant, in some generalized sense, to whether defendant might be considered a bad person. *Gregg*, 428 U.S. at 192, 96 S.Ct. 2909 (emphasis added).

*Gilbert*, 120 F. Supp. 2d at 150-51. As to "reliability," he explained,

> The second factor a court must consider is the reliability of the information. The Supreme Court has emphasized that heightened reliability is crucial in capital sentencing hearings because of the uniquely grave consequences of a death verdict. *See Ford v. Wainwrig*ht, 477 U.S. 399, 410–11, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion). Indeed, some information that might be admitted in a normal sentencing hearing will be insufficiently reliable for the jury to use in considering whether a defendant should be put to death. *See Davis*, 912 F.Supp. at 943.

*Gilbert*, 120 F. Supp. 2d at 151. Finally, as to "probative value versus prejudice," Judge Ponsor explained,

> Finally, even if the proffered information is relevant and sufficiently reliable, it may still be excluded if its probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases. Under the statute, probative value need not be "substantially" outweighed by prejudice, as Fed.R.Evid. 403 generally requires. *See id.*

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 85 of 123
Appellate Case: 13-1739   Page: 95   Date Filed: 06/14/2013 Entry ID: 4045610

*Gilbert*, 120 F. Supp. 2d at 151. Numerous district courts have articulated similar standards for determining the "sufficiency" of "non-statutory aggravating factors," often specifically citing *Gilbert*.[17]

I note that the "probative value versus prejudice" standard under the ADAA, at issue in this case, is somewhat different than it is under the FDPA, at issue in *Gilbert*.

---

[17] *See, e.g., United States v. Basciano*, 763 F. Supp. 2d 303, 358 (E.D.N.Y. 2011) ("While the court need not decide the issue, the court is concerned with the number of alleged acts of uncharged crimes that the Government is considering introducing and with the limited evidence that appears to support some of these alleged crimes. The penalty phase, if one is reached, should be focused on those acts relevant to the jury's decision and will not be permitted to become a forum to try dozens of alleged, past, uncharged crimes. The court further notes that to be relevant, the government must have proof that this uncharged conduct rose to the level of a sufficiently serious crime to be considered by a death penalty jury." (footnote omitted) (citing *Gilbert*, 120 F. Supp. 2d at 150)); *United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) ("[T]he Court is cognizant that the FDPA requires that any information proffered at the penalty phase 'may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury,' 18 U.S.C. § 3593(c), and makes clear that any such factors must be 'sufficiently relevant to the consideration of who should live and who should die.' *United States v. Davis*, 912 F. Supp. 938, 943 (E.D. La. 1996). Furthermore, the 'heightened reliability doctrine' applicable to capital sentencing also governs 'the admissibility of non-statutory aggravating factors.' *Bradley*, 880 F.Supp. at 285."); *United States v. Henderson*, 485 F. Supp. 2d 831, 868 (S.D. Ohio 2007) ("[T]his Court is aware that the FDPA requires that any information proffered at the penalty phase 'may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury,' 18 U.S.C. § 3593(c) (2004), and makes clear that any such factors must be 'sufficiently relevant to the consideration of who should live and who should die.' *Davis*, 912 F. Supp. at 943. Furthermore, the "heightened reliability doctrine" applicable to capital sentencing also governs 'the admissibility of nonstatutory aggravating factors.' *Bradley*, 880 F. Supp. at 285."); *United States v. Fell*, 372 F. Supp. 2d 753, 763-65 (D. Ver. 2005) ("Non-statutory aggravating factors must satisfy a variety of requirements," including that they be "sufficiently relevant to consideration of who should live and who should die," display "heightened reliability"; not be "overbroad"; "not be duplicative" (citing, *inter alia*, *Gilbert*, 120 F. Supp. 2d at 153).

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 86 of 123
Appellate Case: 13-1739   Page: 96   Date Filed: 06/14/2013 Entry ID: 4045610

*Compare* former 21 U.S.C. § 848(*l*) ("Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury." (emphasis added)); *with* 18 U.S.C. § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value *is outweighed* by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). Nevertheless, I also believe that Judge Ponsor has identified appropriate factors in *Gilbert* for the determination of whether alleged "non-statutory aggravating factors" are appropriate in this ADAA case.

I am less convinced by Judge Ponsor's conclusion that, in considering the "relevance" factor, "the court is guided by the statutory aggravating factors Congress has listed in [the applicable statute], which provide 'a ready framework for determining Congressional intent' on this matter." *Gilbert*, 120 F. Supp. 2d at 152 (quoting *Davis*, 912 F. Supp. at 944). More specifically, Judge Ponsor reasoned,

> The statutory aggravating factors list only very serious or repetitive felony offenses, such as child molestation, previous conviction of a capital crime, or prior conviction of a felony involving a firearm. *See* 18 U.S.C. § 3592(c). From these factors, it is clear that to be a relevant aggravating factor in favor of the death penalty, prior misconduct must at least be a crime, and a grave one at that. *See United States v. Friend*, 92 F.Supp.2d 534, 544 (E.D. Va. 2000). Consideration of relatively minor misbehavior, however disturbing, would undermine the seriousness of the death penalty decision. Rather than helping the jury's decision, the previous misconduct would be a "pernicious distraction[ ] … in considering whether a

> defendant shall live or die." *United States v. Peoples*, 74
> F.Supp.2d 930, 932 (W.D. Mo. 1999).

*Gilbert*, 120 F. Supp. 2d at 152-53. My problem with this reasoning is much the same as my problem with the argument that specification of certain *convictions* as "statutory aggravating factors" in the ADAA or the FDPA indicates a congressional intent to exclude unadjudicated criminal conduct from consideration as "non-statutory aggravating factors," which I explained above, in Section IV.C.3.a.ii., and more specifically, beginning at page 72, and which I note is an argument that Judge Ponsor had also rejected. *See Gilbert*, 120 F. Supp. 2d at 152.

First, as noted above, former § 848(j) expressly allows the prosecution to assert, and the jurors to consider, "any other aggravating factor for which notice has been provided," without limitation or specification of severity. Former 21 U.S.C. § 848(j). Reading former § 848(n), which defines "statutory aggravating factors," to impose a standard of "severity" or "gravity" on "non-statutory aggravating factors" would "nullify," in large part, the breadth of the "non-statutory aggravating factors" permitted by the plain language of former § 848(j).

Furthermore, neither the ADAA nor the FDPA provides a "general" or "generic" statutory definition of "aggravating factor"; they only provide definitions of certain kinds of conduct as what we call "statutory aggravating factors" that are sufficient to make a defendant "eligible" for the death penalty. Thus, "aggravating factor" must be understood in its ordinary sense. *See, e.g., United States v. Hansl*, 439 F.3d 850, 853-54 (8th Cir. 2006) (reiterating that, in the absence of an express definition for a term used in a criminal statute, the court must "interpret the words as having their ordinary, common meaning" (citing *United States v. Fountain*, 83 F.3d 946, 952 (8th Cir. 1996)). While the ordinary meaning of the word "aggravate" is "to make worse, more serious, or more severe," or to "intensify unpleasantly," it does not

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 88 of 123
Appellate Case: 13-1739   Page: 98   Date Filed: 06/14/2013 Entry ID: 4045610

suggest any high level of seriousness or severity or even any specific level of intensification. *See, e.g.,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed., 1993), 22. Indeed, it also means "to rouse to displeasure or anger by usu. persistent *and often petty* goading." *Id.* (emphasis added).

Finally, the significant difference in the functions of "statutory aggravating factors" and "non-statutory aggravating factors" counsels against reading the statute to require some kind of "proportionality" between such factors in terms of severity, gravity, or seriousness. *See, supra*, Section II.B.1.; *see also Chong*, 98 F. Supp. 2d 1128 n.10 (rejecting any supposed statutory limitation on "non-statutory aggravating factors" based on the definition of "statutory aggravating factors" as "resting on the erroneous factual premise that jurors cannot discern that statutory aggravating factors are more important than nonstatutory aggravating factors"). While there must certainly be significant gravity to any "statutory aggravating factor" that makes a defendant "eligible" for the death penalty, former § 848(k) expressly grants the jurors the power to determine the weight of the "non-statutory aggravating factors" by requiring them to consider all of the aggravating factors and mitigating factors found to exist to determine whether the aggravating factors sufficiently outweigh the mitigating factors to justify a death sentence. *See* former 21 U.S.C. § 848(k); *see also Bolden*, 545 F.3d at 617 n.6 ("As the evidence relevant to the Michigan drug convictions was admissible in any event and the jury could have given this evidence aggravating weight under the non-statutory aggravating factor 'other criminal conduct,' any error in submitting this statutory factor was harmless beyond a reasonable doubt."); *Higgs*, 353 F.3d at 320 ("[W]e reject the contention that the FDPA is unconstitutional merely because it allows the sentencing jury to weigh nonstatutory aggravating factors when deciding whether to impose the sentence of death upon a defendant convicted of a death-eligible offense."). Thus, whatever the merits, in a vacuum, of a "proportionality" requirement for the

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 89 of 123
Appellate Case: 13-1739   Page: 99   Date Filed: 06/14/2013 Entry ID: 4045610

gravity, severity, or seriousness of "non-statutory aggravating factors" as compared to "statutory aggravating factors," the *statute* does not support such a requirement.

This is not to say that "trivial" matters must be accepted as "non-statutory aggravating factors." The exclusion of "trivial" matters, however, comes from the requirement that a "non-statutory aggravating factor" must have sufficient relevance to whether the defendant should be sentenced to death, and not merely to whether the defendant could be considered a bad person. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. It also comes from the statutory requirement "that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151. This is so, because a trivial matter would have slight probative value to the determination of the appropriate penalty, in light of its potential for prejudice, confusion of the issues, or misleading the jury.

With these standards in mind, I turn to consideration of Johnson's challenges to specific "uncharged criminal conduct" factors.

### b. The "assault" on Officer Tyler

The fifth "non-statutory aggravating factor" alleged in the Third Notice Of Intent is that "[Johnson] committed physical assault and battery of Mason City Police Officer, Dave Tyler, on September 11, 1989." Johnson asserts that, far from being a violent altercation between her and a police officer, the incident involved her pushing the officer after he had arrested Terry DeGeus for disorderly conduct or public intoxication and DeGeus had resisted arrest. She contends that this incident is properly characterized as interference with an officer, an infraction at best, not as an "assault and battery." Thus, she asserts that this incident simply lacks the same sort of seriousness or severity as the "statutory aggravating factors" and should not be weighed

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 90 of 123
Appellate Case: 13-1739    Page: 100    Date Filed: 06/14/2013 Entry ID: 4045610

with those factors to determine whether or not the death penalty is justified—a "proportionality" argument that I rejected just above. The prosecution does not concede that Johnson accurately describes the factual circumstances underlying any of the "uncharged criminal conduct" factors, including this one.[18] Moreover, the prosecution asserts that this incident, like the others alleged, is sufficiently relevant, and that relevance is not substantially outweighed by any potential prejudice, because this factor demonstrates Johnson's commission of violent acts beyond those involved in the CCE murders.

Again, as a general premise, "uncharged criminal conduct," and particularly such conduct demonstrating violence or obstruction of justice, is admissible as a "non-statutory aggravating factor" in a capital sentencing. *Bolden*, 545 F.3d at 624-25; *Allen*, 247 F.3d at 789. Thus, an incident of alleged violence, particularly against a police officer, as is alleged here, is sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. Evidence in the form of first-hand testimony about the incident from officers present at the scene is also sufficient to meet the "reliability' requirement set out in *Gilbert*, 120 F. Supp. 2d at 150-51. *See, e.g., Zant*, 3 F.3d at 1464-65 (concluding that a rape victim's testimony was sufficient to meet the "reliability" requirement). Ultimately, of course, the prosecution must prove the incident beyond a reasonable doubt. *See* former 21 U.S.C. § 848(j) ("The burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless established beyond a reasonable doubt."); *see also Corley*, 519 F.3d at 724 (requiring consideration of the burden of proof for determining reliability and for a jury to

---

[18] *Compare* Prosecution's Resistance (docket no. 919) at 26 n.2 ("The government does not concede defendant has accurately described the facts."); *with* Defendant's Reply (docket no. 929) at 19 ("[W]ith one exception, the government does not contest the accuracy of the facts outlined by Ms. Johnson in her motion.").

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 91 of 123
Appellate Case: 13-1739   Page: 101   Date Filed: 06/14/2013 Entry ID: 4045610

determine whether the conduct may be considered); *Higgs*, 353 F.3d at 322-23 (the reliability requirement for an unadjudicated criminal offense to serve as an independent aggravating factor was met where the jury was required to find such a factor beyond a reasonable doubt). Furthermore, the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Cf. Bolden*, 545 F.3d at 625 (considering such a factor as mitigating any "duplicativeness").

It is possible that, when I have heard the evidence relating to this factor in the context of the "penalty retrial," I will be convinced that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151. However, I am reluctant, at least at this point in the proceedings, to take from the jury the opportunity to determine whether or not the incident can be proved beyond a reasonable doubt and to determine what weight, if any, it deserves in the determination of the appropriate penalty. For now, it is sufficient to conclude that the prosecution has shown that the incident is relevant to the determination of the penalty, and that it may satisfy the other requirements for a "non-statutory aggravating factor," so that it will not be stricken from the Third Notice Of Intent at this time.

### c. The "perjury" factor

The sixth "non-statutory aggravating factor" alleges that Johnson "committed perjury before the grand jury: October 27, 1993; March 5, 1996; July 23, 1996; and April 11, 2000." Johnson argues that such perjury offenses are neither sufficiently grave to be relevant to capital sentencing nor sufficiently reliable to be considered as part of the decision on whether a capital defendant should be executed. More

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 92 of 123
Appellate Case: 13-1739   Page: 102   Date Filed: 06/14/2013 Entry ID: 4045610

specifically, she argues that none of the statutory factors listed in the ADAA relates to perjury, and this aggravating factor fails both prongs of the relevance/heightened reliability test. The prosecution makes no specific defense of the sufficiency of this "non-statutory aggravating factor."

While these alleged incidents of perjury might have involved obstruction of justice, they did not involve the sort of obstruction of justice by violent means at issue in *Bolden*, 545 F.3d at 625, involving a motive to kill a person to eliminate a witness, or the tampering with witnesses, including plans to eliminate a witness and tampering with evidence, at issue in the "obstruction of justice" factor in *Higgs*, 353 F.3d at 322-23. Indeed, I have difficulty seeing how these incidents of alleged perjury, even if they are proved beyond a reasonable doubt, are sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. That being so, the danger of unfair prejudice, confusion of the issues, or misleading the jury that these incidents pose substantially outweighs their probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151.

Therefore, the "uncharged criminal conduct" factor based on alleged "perjury" will be stricken.

### d.    The "threats and bravado" incidents

Johnson contends that the following "uncharged criminal conduct" factors should also be stricken as involving nothing more than "threatening words and warped bravado": number seven, alleging that "[o]n multiple occasions between 1995 and 1996, defendant threatened to harm Kathy Rick, Dustin Honken's former girlfriend"; number eight, alleging that "[i]n 1997, defendant threatened Daniel Cobeen, a person she then knew to be a witness cooperating with the United States Government, by making a hand gesture as if she was shooting him with a handgun"; number eleven,

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 93 of 123
Appellate Case: 13-1739    Page: 103    Date Filed: 06/14/2013 Entry ID: 4045610

alleging that "[d]uring the sentencing hearing of Dustin Honken in February 1998, defendant threatened to harm the judge, prosecutor, and law enforcement agents"; and number thirteen, alleging that "[i]n 1998, defendant threatened to kill or injure Doug Book, Chief of Police of Forest City, Iowa, and plotted to kill or injure Doug Book's dogs by use of poison," at least to the extent that the threats only related to the dogs.

### i.      Arguments of the parties

Johnson contends that threatening words and warped bravado, without affirmative acts, are simply not sufficient to justify a death sentence; that some of these incidents are too attenuated to have any probative value; and that any probative value that they may have is outweighed by the potential for prejudice and confusion. The prosecution argues that these "uncharged criminal conduct" factors are not just threatening words and warped bravado, because, in other circumstances, Johnson has acted on her words to commit violent acts. More specifically, the prosecution argues that Johnson threatened to harm Dan Cobeen, a government witness, after she had, in fact, helped to kill a government witness, Greg Nicholson, and that she threatened to harm other inmates, and in fact, assaulted them. Thus, the prosecution argues, this is not simply a defendant who makes empty threats, but a defendant who carries them out. The prosecution also argues that the jury should determine whether this conduct constitutes empty threats or aggravating circumstances. Johnson responds that none of these incidents actually involved violent acts, so that she did not carry out these threats.

### ii.      Analysis

Johnson is correct that, in *United States v. Davis*, 912 F. Supp. 938 (E.D. La. 1996), the district court rejected aggravating factors based solely on "threatening rhetoric," as follows:

> Threatening words and warped bravado, without affirmative
> acts, are simply too slippery to weigh as indicators of
> character; too attenuated to be relevant in deciding life or

> death; and whatever probative value they might have is far outweighed by the danger of unfair prejudice and confusion of the issues.

*Davis*, 912 F. Supp. 2d at 945. In my view, this analysis overlooks circumstances in which threats can, indeed, constitute criminal offenses and aggravating circumstances. Moreover, in my view, this analysis overlooks the fact that the question of whether a statement constitutes mere "threatening words" or "warped bravado," rather than a true threat, is for the jury to decide, and any danger of unfair prejudice is mitigated, because the jury must find a true threat beyond a reasonable doubt.

For example, the Supreme Court has noted, in a number of decisions, that various states identify a conviction of a felony involving the use or *threat* of violence as an aggravating factor. *See, e.g., Porter v. McCollum*, 558 U.S. 30, ___ n.2, 130 S. Ct. 447, 449 n.2 (2009) (Florida law); *House v. Bell*, 547 U.S. 518, 532 (2006) (Tennessee law); *Rompilla v. Beard*, 545 U.S. 374, 399 (2005) (Pennsylvania law). Indeed, former § 848(n)(5) identifies a "statutory aggravating factor" involving a "grave risk" of death to others, during the commission of the capital offense or while escaping apprehension for such an offense, and one district court has concluded that if the government could prove that the defendant threatened bystanders at gunpoint, the jury could consider the aggravating factor of grave risk to others. *See United States v. Walker*, 910 F. Supp. 837, 849-50 (N.D.N.Y. 1995), cited in *United States v. Barnette*, 211 F.3d 803, 819 (4th Cir. 2000). The fact that a "non-statutory aggravating factor" *does* have a statutory analogue does reasonably suggest that the "non-statutory aggravating factor" is sufficiently relevant to the determination of whether a death sentence is justified. I also note that, under Iowa criminal law, "assault" is defined, *inter alia*, as "[a]ny act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act." IOWA CODE § 708.1(2). Thus,

95

no physical act of violence is actually required to constitute an "assault" under Iowa law, a threat is sufficient, if the defendant has the apparent ability to execute the threat.

In light of these authorities, I am satisfied that, to the extent that the prosecution can prove at the "penalty retrial," beyond a reasonable doubt, that any of these "uncharged criminal conduct" incidents would have constituted an "assault" or other *crime* under Iowa or federal law, then the fact that they are based on a *threat* of violence, but no other violent "act," does not mean that they are insufficient to be "non-statutory aggravating factors."

I am also satisfied that, if the prerequisite identified above is met, then these incidents are sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. This is so, because they indicate Johnson's character by showing that, in other circumstances besides those involved in the CCE murders, she resorted to threats of violence. Moreover, I will be better able to determine, when the evidence is presented in the context of the "penalty retrial," whether any danger of unfair prejudice, confusion of the issues, or misleading the jury that these incidents might pose substantially outweighs their probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151. Furthermore, the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Cf. Bolden*, 545 F.3d at 625 (considering such a factor as mitigating any "duplicativeness").

Johnson's challenges to these "uncharged criminal conduct" factors are denied for the present.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 96 of 123
Appellate Case: 13-1739   Page: 106   Date Filed: 06/14/2013 Entry ID: 4045610

### e. Assisting in the release of Putzier

Johnson also challenges the ninth "non-statutory aggravating factor," which alleges the following:

> Defendant aided and abetted the solicitation of crimes of violence. In particular, defendant assisted Dustin Honken in 1996 in attempting to obtain the release of Dennis Putzier from the Woodbury County Jail for the purposes of killing witnesses and law enforcement officers.

I will consider this factor, at least for the present, to be limited to the attempt to obtain the release of Dennis Putzier.

### i. Arguments of the parties

Johnson argues that Putzier omitted this incident in some testimony, and changed his testimony about it from one proceeding to another, which casts doubt on the reliability of the evidence supporting this factor. Johnson also argues that this incident does not satisfy the requirements of an factor, because there was no hope that Putzier was ever going to escape from the jail in the manner indicated in his and other testimony in various proceedings. Johnson also argues that, apart from Honken's statements to Putzier, there is no evidence that she even knew about Honken's plan for Putzier's escape, much less that she did any act to assist or encourage the escape. The prosecution asserts that Johnson's rendition of the facts is demonstrably unreliable. The prosecution also argues that this factor is based on evidence of Johnson's own conduct and other evidence, beside Putzier's testimony, although the prosecution argues that this is not the time or place to discuss the evidence.

### ii. Analysis

I am not convinced that the likelihood of success of a plan to help a felon to escape from custody so that he could harm witnesses against the defendant and others has anything to do with its relevance to the determination of the proper penalty in a

capital case. Rather, however unlikely success might have been, evidence that the defendant and her cohorts took steps to put such a plan into action is, in my view, sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. This is so, because that evidence indicates Johnson's character by showing that she was willing to resort to extreme measures to attempt to eliminate witnesses or to retaliate against them and to harm others involved in the investigation of her crimes or the administration of justice. Furthermore, the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Cf. Bolden*, 545 F.3d at 625 (considering such a factor as mitigating any "duplicativeness"). Finally, when the evidence is presented in the context of the "penalty retrial," I will be better able to determine whether any danger of unfair prejudice, confusion of the issues, or misleading the jury that this incident might pose substantially outweighs its probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151.

Johnson's challenge to this "non-statutory aggravating factor" is denied, at least for now.

### f. Conspiring to help Honken escape

Johnson also challenges "non-statutory aggravating factor" number ten, which alleges that she "conspired with Dustin Honken to aid his escape from the Woodbury County jail in 1996." Again, Johnson argues that this factor does not resemble any "statutory aggravating factor" and that the witness who provides most of the evidence for this "non-statutory aggravating factor," and who would also supposedly obtain a

rocket launcher to break inmates out of the jail, is unreliable and did not have access to a rocket launcher. She also contends that the plan, as explained by that witness, was actually for Honken to remain in jail until the charges against him were dropped, because the escapees had killed the witnesses against him. Johnson also contends that there is no credible evidence linking her to this plot, or "scam," as she prefers to call it, or that she even knew about it.

Although the prosecution offers no specific defense of this "non-statutory aggravating factor," to the extent that the prosecution can ultimately prove the scheme and Johnson's involvement in it beyond a reasonable doubt, it is, in my view, sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. This is so, because, again, this incident indicates Johnson's character by showing that she was willing to resort to extreme measures to attempt to obtain Honken's release or the release of persons who would help eliminate witnesses. Furthermore, the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Cf. Bolden*, 545 F.3d at 625 (considering such a factor as mitigating any "duplicativeness"). Finally, I will be better able to determine, when the evidence is presented in the context of the "penalty retrial," whether any danger of unfair prejudice, confusion of the issues, or misleading the jury that this incident might pose substantially outweighs its probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151.

Johnson's challenge to this "non-statutory aggravating factor" is denied, at least for now.

### g. Uncharged distribution of methamphetamine after 1997

#### i. Arguments of the parties

Next, Johnson challenges "non-statutory aggravating factor" number twelve, which alleges that she "distributed controlled substances, specifically methamphetamine, after 1997." Although she admits that this "non-statutory aggravating factor" has a corollary among the "statutory aggravating factors," in former § 848(n)(4), she argues that it should be excluded, because it does not involve "death-worthy" conduct. She argues that, if the prosecution is permitted to submit this "non-statutory aggravating factor" to the jury, unadjudicated conduct would be submitted to the jury, but the jury would not be informed that the convictions identified in the statute are more significant than uncharged conduct. Thus, she contends, in deliberations, jurors could weigh a single instance of unadjudicated conduct just as heavily as a conviction identified in the statute as making a defendant worthy of death. The prosecution makes no specific defense of this "non-statutory aggravating factor."

#### ii. Analysis

Notwithstanding the lack of any specific defense of this "non-statutory aggravating factor" by the prosecution, I have already rejected Johnson's "statutory prohibition" and "proportionality" arguments. Moreover, the situation here, as Johnson acknowledges, is that there is, in fact, a "corollary" "statutory aggravating factor," former § 848(n)(4), which is defined as follows:

> The defendant has previously been convicted of *two or more* State or Federal offenses punishable by a term of imprisonment of more than one year, *committed on different occasions*, involving the *distribution of a controlled substance*.

Former 21 U.S.C. § 848(n)(4) (emphasis added). Both the former § 848(n)(4) factor and the "non-statutory aggravating factor" alleged here involve distribution of a

100

Addendum p. 109

controlled substance. They differ in that the former § 848(n)(4) factor requires *convictions*, but the "non-statutory aggravating factor" involves an "uncharged" offense. That difference is undermined, however, by the requirement that, to stand as a "non-statutory aggravating factor," the *uncharged* offense, like a prior conviction, would have to be proved beyond a reasonable doubt. The only salient difference, then, is that the former § 848(n)(4) factor requires "two or more" offenses, but the "non-statutory aggravating factor" appears to allege only *one* distribution of methamphetamine after 1997. While identification of certain convictions as "statutory aggravating factors" certainly does not preclude identification of uncharged offenses as "non-statutory aggravating factors," I have already acknowledged that the fact that a "non-statutory aggravating factor" *does* have a statutory analogue does reasonably suggest that the "non-statutory aggravating factor" is sufficiently relevant to the determination of whether a death sentence is justified.

Nevertheless, there are three reasons why I find this "non-statutory aggravating factor" too troubling to be allowed in this case. First, I believe that it is "duplicative" of the underlying CCE murders. This is so, because, in order to convict Johnson of aiding and abetting the CCE murders, the prosecution was required to prove, and the jury was required to find, beyond a reasonable doubt, the existence of the CCE, including a "series of three or more violations." *See* Preliminary Instructions (docket no. 520), No. 7 — Requirements For Proof: Counts 6 Through 10: CCE Murder, and No. 8 — Requirements For Proof: "Continuing Criminal Enterprise" Defined; ["Merits"] Verdict Form (docket no. 527), Counts 6 Through 10, Step 2. The original jurors found, unanimously and beyond a reasonable doubt, that the "series of violations" included "[d]istribution of a methamphetamine mixture from about 1992 to and including 1998," and that such violations occurred both before and after the killings. The original jury also found that Johnson was a member of the CCE who

acted "in concert" with Honken both before and after the killings. ["Merits"] Verdict Form (docket no. 527), Counts 6 Through 10, Step 2. Thus, Johnson's "distribut[ion of] controlled substances, specifically methamphetamine, after 1997," would necessarily have been included in the "[d]istribution of a methamphetamine mixture from about 1992 to and including 1998" included in the "series of violations" establishing the existence of the CCE. It does not appear to me that this "non-statutory aggravating factor" involves, in any respect, factual elements or components that differ from the underlying offense; instead, this factor merely duplicates an element of the underlying capital offense, to the extent that the underlying offense required proof of violations pursuant to a CCE. *Williams*, 576 F.3d at 870.

Second, defining a single *uncharged* incident of distribution of a controlled substance as a "non-statutory aggravating factor," where two or more *convictions* are required to establish the "statutory aggravating factor," seems to me to be something of an "end run" around the statute. The difference here between this "uncharged methamphetamine distribution" "non-statutory aggravating factor" and other "uncharged criminal conduct" "non-statutory aggravating factors" that I concluded were not barred by former § 848(n), in light of former § 848(j), is that this one provides a "second bite at the apple." That is, if the prosecution has failed to allege or prove a "statutory aggravating factor" based on two or more convictions of methamphetamine distribution, to establish the defendant's "eligibility" for the death penalty, I do not believe that, in light of the sequential process for determining the penalty under former § 848, the prosecution should be allowed to try to assert a single incident of methamphetamine distribution, whether adjudicated or unadjudicated, charged or uncharged, as a "non-statutory aggravating factor." *See, supra*, p. 19 (discussing the effect of the sequential penalty process on "second bites").

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 102 of 123
Appellate Case: 13-1739    Page: 112    Date Filed: 06/14/2013 Entry ID: 4045610

Third, notwithstanding identification of at least two comparable *convictions* as a "statutory aggravating factor," I have difficulty seeing how a single incident of drug dealing (if it is not, in fact, duplicative of the underlying offense), even if it is proved beyond a reasonable doubt, is sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. That being so, the danger of unfair prejudice, confusion of the issues, or misleading the jury that proof of this "non-statutory aggravating factor" would pose substantially outweighs its probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151.

Therefore, the "uncharged criminal conduct" factor based on "uncharged distribution of methamphetamine after 1997" will be stricken.

### h.     *Soliciting a crime of violence*

Finally, Johnson challenges "non-statutory aggravating factor" number fourteen, which alleges the following:

> Defendant solicited a crime of violence. In particular, between about March 24, 1998 and October 6, 1998, defendant attempted to hire an undercover agent and a confidential informant for the purpose of harming and/or kidnapping a drug dealer, J.R., who owed her drug proceeds.

Third Notice Of Intent, § C.14.

### i.     *Arguments of the parties*

Johnson argues that there is no evidence that any acts to further the objectives alleged in this factor were done or that any harm came to the alleged target. She contends that this is simply another incident of "threatening words and warped bravado," unaccompanied by any affirmative acts, that should not be considered a "non-statutory aggravating factor." Again, the prosecution makes no specific defense

103

of this "non-statutory aggravating factor," but argues generally that this and other incidents of threatened violence are sufficiently serious to constitute "non-statutory aggravating factors," because they demonstrate Johnson's commission of or intent to commit violent acts beyond those involved in the CCE murders.

### ii. Analysis

Johnson's argument fails, because, to the extent that the prosecution can prove beyond a reasonable doubt that Johnson attempted to hire an undercover agent and a confidential informant for the purpose indicated, it will have proved more than just "threatening words" or "warped bravado," but will, instead, have proved *an act*, the alleged "solicitation," to attempt to cause violence and harm to the drug dealer. Again, I do not believe that success of the plan is relevant to the penalty determination. Rather, to the extent that the prosecution can prove that soliciting someone to attempt to harm or kidnap another is a crime, then such conduct is sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. This is so, because the incident indicates Johnson's character by showing that, in other circumstances besides those involved in the CCE murders, she resorted to threats of violence, an attempt at violence, or solicitation of violence. Furthermore, the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Cf. Bolden*, 545 F.3d at 625 (considering such a factor as mitigating any "duplicativeness"). Finally, I will be better able to determine, when the evidence is presented in the context of the "penalty retrial," whether any danger of unfair prejudice, confusion of the issues, or misleading

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 104 of 123
Appellate Case: 13-1739   Page: 114   Date Filed: 06/14/2013 Entry ID: 4045610

the jury that this incident might pose substantially outweighs its probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151.

Johnson's challenge to this "non-statutory aggravating factor" is denied, at least for now.

### D. Future Dangerousness

#### 1. Allegation of the factor

The Third Notice Of Intent also identifies "future dangerousness" as a "non-statutory aggravating factor," as follows:

> 15. <u>Future Dangerousness</u>:
>
> Defendant will pose a future danger to others both in prison, if sentenced to a life sentence, or out of prison if sentenced to less than life in prison without the possibility of parole. Evidence that defendant will pose a danger to others in a prison setting includes assault of other inmates, including but not limited to:
>
> A. Assault of Amy Rawhouser on December 28, 2001, in the Linn County Jail;
>
> B. Assault of Destiny Jefferson on January 28, 2004, in the Linn County Jail;
>
> C. Assault of Cathy Hewing on September 28, 2005, in the Linn County Jail;
>
> D. Assault of Ethel Mitchell on November 20, 2005, in the Linn County Jail;
>
> E. Assault of Deidra Pickler on August 29, 2007, in FMC Carswell.
>
> Evidence defendant will pose a future danger to others outside of a prison setting, if sentenced to less than life in prison without the possibility of parole, includes all the

105

Addendum p. 114

> violent conduct defendant has committed both in and out of a
> prison setting.

Third Notice Of Intent, § C.15. I agree with the parties that this factor has two aspects: "future dangerousness in prison," including the five alleged incidents of assaults on other inmates, and "future dangerousness out of prison," which "includes all the violent conduct defendant has committed both in and out of a prison setting." *Id.*

Johnson makes the following challenges to this "non-statutory aggravating factor": (1) it is barred by collateral estoppel/double jeopardy; (2) it should be limited to "future dangerousness in prison," because imprisonment for less than life without parole is not a sentencing option in the case; (3) it fails to provide constitutionally sufficient notice, because it is stated as "including, but not limited to" certain specified conduct; and (4) the five alleged incidents of assaults on other inmates are not the stuff of which death sentences should be made. I will consider these challenges in turn.

### 2. *Collateral estoppel/double jeopardy*

Johnson argues that this factor should be excluded on the grounds of collateral estoppel/double jeopardy, because not a single original juror found the prosecution's "non-statutory aggravating factor" that she would be a danger in the future to the lives and safety of other persons. She contends that this issue has, therefore, necessarily been decided against the prosecution, that decision amounts to an "acquittal" of that factor, and the prosecution should not be allowed a second chance to prove it. The prosecution contends that there is no such collateral estoppel/double jeopardy bar to the "future dangerousness" factor, because controlling authority demonstrates that a capital defendant is not "acquitted" of a certain aggravating factor, even if a jury does not find it in prior trials, because such aggravating factors are "standards" to guide the jury's decision, not separate sentences.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 106 of 123
Appellate Case: 13-1739   Page: 116   Date Filed: 06/14/2013 Entry ID: 4045610

I reject Johnson's "collateral estoppel/double jeopardy" argument for the same reasons that I concluded, above, that an argument that Johnson had been "acquitted" of the "substantial planning and premeditation" "statutory aggravating factor" as to all of the CCE murders except that of Terry DeGeus, was unavailing, *see, supra,* beginning on p. 20, and the reasons that I also rejected Johnson's argument that seeking the death penalty for the CCE murder of Greg Nicholson violated double jeopardy, *see, supra,* beginning on p. 26. *See, e.g., Sattazahn v. Pennsylvania*, 537 U.S. 101, 109 (2003) ("[T]he touchstone of double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.'"). Somewhat more specifically, under the ADAA, a *finding* of an "aggravating factor," either "statutory" or "non-statutory," had to be unanimous, but a *rejection* of any "aggravating factor" did not have to be unanimous. *See* former 21 U.S.C. § 848(k) ("A finding with respect to any aggravating factor must be unanimous," but "[a] finding with respect to a mitigating factor may be made by one or more of the members of the jury."). The statute does not require unanimity as to the *non-existence* of any "aggravating factor," and the original jury was not instructed that unanimity was required to reject an "aggravating factor." Thus, Johnson's assertion that not a single original juror found the "future dangerousness" factor is wrong; all that is apparent from the prior "penalty phase" verdict is that the original jurors did not *unanimously* agree that the factor had been proved beyond a reasonable doubt. *Rejection* of this "non-statutory aggravating factor" has only the non-preclusive effect of a "deadlocked" or "hung" jury. *Sattazahn*, 537 U.S. at 109-10.

Moreover, as the prosecution points out, in *Storey v. Roper*, 603 F.3d 507 (8th Cir. 2010), the Eighth Circuit Court of Appeals concluded that submission of a "pecuniary gain" aggravating circumstance in the defendant's third trial on capital charges under Missouri law, even after the sentencing juries had failed to find that

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 107 of 123
Appellate Case: 13-1739    Page: 117    Date Filed: 06/14/2013 Entry ID: 4045610

aggravating circumstance in two prior trials, did not violate double jeopardy. 603 F.3d at 521. Citing *Poland v. Arizona*, 476 U.S. 147, 155-56 (1986), the Eighth Circuit Court of Appeals concluded that the defendant had never been "acquitted" of the death sentence, and that aggravating circumstances are not separate penalties or offenses, but are standards to guide the making of the choice between the alternative verdicts of death and life imprisonment. *Storey*, 603 F.2d at 521-22.

This challenge to the "non-statutory aggravating factor" of "future dangerousness" is denied.

### 3. *Limitation to "future dangerousness in prison"*

Next, Johnson argues that any "future dangerousness" "non-statutory aggravating factor" must be limited to "future dangerousness in prison." She reiterates her arguments that this is so, because a sentence of less than life in prison is simply not an option in this case, where she has already been sentenced to life imprisonment without possibility of release on **Count 6**, charging the CCE murder of Greg Nicholson; because the capital sentencing provisions of former § 848 grant only the court, not the jury, the authority to impose a sentence less than death or life without parole; and because the prosecution should not be allowed to hammer away at a defendant's future dangerousness, if she is ever released, when such release is actually improbable; and because allowing the jury to consider a sentence less than life without parole might tempt jurors to vote for death to preclude from sentencing her to any term less than life without parole. The prosecution, likewise, reiterates its arguments that a sentence less than life without parole is possible in this case, not only on **Count 6**, but on the other charges.

I will not reiterate all of my reasons for concluding that *all* of the penalties for CCE murder in this case were vacated by my ruling on Johnsons § 2255 Motion, including the life sentence for the CCE murder of Greg Nicholson in **Count 6**; that,

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 108 of 123
Appellate Case: 13-1739     Page: 118     Date Filed: 06/14/2013 Entry ID: 4045610

consequently, Johnson is *not* currently serving a sentence of life without parole for the CCE murder of Nicholson; and that, *in this case*, I will instruct the jury that I will impose a sentence of life without parole if even one juror finds that death is not justified, so that, *in this case*, the jury will never be permitted to consider any penalty less than life without parole in its determination of whether or not Johnson should be sentenced to death, as those reasons are set out in Section II.C.2., above. I simply clarify that the effect of that analysis here is that only Johnson's "future dangerousness in prison" is properly at issue in this case.

Some further analysis of the question is appropriate here, however, in light of precedents that have considered it. For example, the Eighth Circuit Court of Appeals has held that due process does not require an express limitation on "future dangerousness" evidence, where the jury is informed of the defendant's ineligibility for parole. *See Allen*, 247 F.3d at 788-89 (stating, "A defendant in prison for life is still a risk to prison officials and to other inmates, and even though a life sentence without the possibility of parole greatly reduces the future danger to society from that particular defendant, there is still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence," and holding that a "non-statutory aggravating factor" of "future dangerousness" was properly submitted, even without a limitation to future dangerousness in prison); *accord United States v. Fields*, 516 F.3d 923, 942-43 (10th Cir. 2008) (agreeing with *Allen* that due process did not require limitation of the evidence of "future dangerousness" to "future dangerousness in prison," where the jury was informed of the defendant's ineligibility for parole); *see also Richmond v. Polk*, 375 F.3d 309, 331-32 (4th Cir. 2004) (concluding, conversely, that, where the prosecution limits its argument about "future dangerousness" to "future dangerousness in prison," the jury need not be informed of the defendant's ineligibility for parole, citing *Simmons v. South Carolina*, 512 U.S. 154, 175-78 (O'Connor, J., concurring),

Appellate Case: 13-1739     Page: 119     Date Filed: 06/14/2013 Entry ID: 4045610

but finding that the prosecution had not so limited its argument). Nevertheless, in this case, my conclusion that the "future dangerousness" factor should be limited to "future dangerousness in prison" rests, in large part, on my conclusion that there is a potential for prejudice to Johnson if the jury is allowed to consider a sentence less than death or life without parole, when any lesser sentence is improbable in this case. *See, e.g., Flores*, 63 F.3d at 1368; *see also Jones v. United States*, 527 U.S. 373, 416 (1999) (Ginsburg, J. dissenting, joined by Stevens, Souter, and Breyer, JJ.) (concluding that a juror presented with the possibility of a lesser authorized sentence could be "persuaded to switch from life to death to ward off . . . any chance of a lesser sentence by the judge").

Moreover, it bears reiterating that the limitation of the "future dangerousness" factor to "future dangerousness in prison" in this case means that the incidents on which the "future dangerousness in prison" factor can rely are limited to the five specific assaults on inmates listed in the Third Notice Of Intent and any other assaults on inmates, notwithstanding that the factor uses "including, but not limited to" language. This is so, because the full statement is, "Evidence that defendant will pose a danger to others in a prison setting *includes assault[s] of other inmates*, including but not limited to [five specified assaults]." Third Notice Of Intent, § C.15. (emphasis added). Thus, other incidents not specifically identified would have to be assaults of other inmates, and none of the "uncharged criminal conduct" factors involve such assaults.

The "future dangerousness" factor will be limited to "future dangerousness in prison," and in support of that factor, the prosecution may rely only on incidents of assaults by Johnson on other inmates.

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 110 of 123
Appellate Case: 13-1739    Page: 120    Date Filed: 06/14/2013 Entry ID: 4045610

### 4. Insufficient notice

Next, Johnson contends that the allegation of the "future dangerousness" factor fails to provide constitutionally sufficient notice, because of the open ended qualifier "including but not limited to," particularly where the prosecution has indicated its intention to assert an additional but as yet undisclosed incident in support of "future dangerousness in prison." The prosecution asserts that Johnson has failed to consider contrary authority. Indeed, the prosecution asserts that it has provided more notice than is required by listing instances of conduct showing a future danger. The prosecution also asserts that "future danger" has a common meaning that jurors can understand, so that the "including but not limited to" language is not unconstitutionally vague. In reply, Johnson attempts to show that the cases relied on by the prosecution are inapposite.

The Eighth Circuit Court of Appeals has recognized that, "'[a]s long as an aggravating factor has a core meaning . . . capable of understanding, it will pass constitutional muster'" over an allegation of vagueness. *Moore v. Kinney*, 320 F.3d 767, 774 (8th Cir. 2003) (quoting *Jones v. United States*, 527 U.S. 373, 400 (1999) (Thomas, J., for a plurality); *Allen*, 247 F.3d at 786 (concluding that there was "no constitutional vagueness problem" where an aggravating factor was adequately defined, "such that the jury was capable of understanding the commonsense core meaning of the statutory aggravating factor" (citing *Tuilaepa v. California*, 512 U.S. 967, 973 (1994)). More specifically, the prosecution is correct that "including, but not limited to" language in the statement of an aggravating factor does not necessarily render the factor unconstitutionally vague or provide insufficient notice of the factor. As the district court explained in *United States v. Cisneros*, 363 F. Supp. 2d 827 (E.D. Va. 2005):

> The Court rejects Defendant's argument that the "but not limited to" language renders non-statutory aggravating factor (2) unconstitutionally vague because the Court finds

Addendum p. 120

> that the full text of the factor properly limits the scope of the factor, and it provides the defendant with adequate notice as required by the death penalty statute. The government is not required to spell out the evidence it intends to use during sentencing. *See Higgs*, 353 F.3d at 325 ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor…not notice of the specific evidence that will be used to support it"); 18 U.S.C. § 3593(a) (requiring notice of non-statutory aggravating factors, not evidence supporting those factors). Because the words "pattern of criminal activity" have a common sense core of meaning as required by the Constitution—unlawful conduct over the age of eighteen—the Court holds that this non-statutory aggravating factor is not vague despite its use of the words "including, but not limited to." *See United States v. O'Driscoll*, 203 F.Supp.2d 334, 339 (M.D. Pa. 2002) (permitting this language in a non-statutory aggravating factor regarding victim impact). In other words, the Court will allow the government to introduce evidence concerning Mr. Cisneros's prior criminal activity so long as it is relevant to the determination of a pattern of criminal activity as an adult justifying the death penalty and its probative value outweighs the danger of creating unfair prejudice, confusing the issues or misleading the jury. *See* 18 U.S.C. § 3593(c); *see also Zant*, 462 U.S. at 888, 103 S.Ct. 2733.

*Cisneros*, 363 F. Supp. 2d at 837.

Here, as I reiterated just above, the "future dangerousness in prison" "non-statutory aggravating factor" is expressly limited to the five specific assaults on inmates listed and any other assaults *on inmates*, notwithstanding that the factor uses "including, but not limited to" language. Thus, here, as in *Cisneros*, "the full text of the factor properly limits the scope of the factor, and it provides the defendant with adequate notice as required by the death penalty statute." 363 F. Supp. 2d at 837. Moreover, "assault[s] of other inmates" has a "common sense core of meaning as required by the

112

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 112 of 123
Appellate Case: 13-1739     Page: 122     Date Filed: 06/14/2013 Entry ID: 4045610

Constitution," such that it "is not vague despite [this factor's] use of the words 'including, but not limited to.'" *Id.*; *accord Moore*, 320 F.3d at 774; *Allen*, 247 F.3d at 786. This is true, even though the prosecution has represented that it has learned of another assault on an inmate by Johnson, which it will add to the Third Notice Of Intent, if it obtains sufficient details to warrant doing so.

Johnson's challenge to this factor as providing insufficient notice, thus, fails.

### 5.    *Sufficiency of the inmate assaults alleged*

As her last challenge to this factor, Johnson contends that the five alleged incidents of assaults on other inmates are not the stuff of which death sentences should be made. I find it unnecessary to discuss each of the five listed incidents separately. Suffice it to say that, in each incident, Johnson was found guilty of "fighting" in disciplinary proceedings in the jail or prison, despite her contention that, in some of the incidents, she acted in self-defense. These incidents and, more specifically, the "future dangerousness in prison" factor that they support are sufficiently relevant to whether the defendant should be sentenced to death. *See Bolden*, 545 F.3d at 624; *Gilbert*, 120 F. Supp. 2d at 150. This is so, because they indicate Johnson's character by showing that, even while incarcerated, she has resorted to violence against other inmates. Furthermore, the new jury for Johnson's "penalty retrial" will be properly instructed that, in weighing the aggravating and mitigating factors, they must not simply count each factor and reach a decision based on which number is greater, but should individually consider the weight and value of each factor before deciding whether a sentence of death is justified on a particular count. *Cf. Bolden*, 545 F.3d at 625 (considering such a factor as mitigating any "duplicativeness"). Finally, I will be better able to determine, when the evidence is presented in the context of the "penalty retrial," whether any danger of unfair prejudice, confusion of the issues, or misleading

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 113 of 123
Appellate Case: 13-1739    Page: 123    Date Filed: 06/14/2013 Entry ID: 4045610

the jury that these incidents might pose substantially outweighs their probative value. Former 21 U.S.C. § 848(j); *Corley*, 519 F.3d at 724; *Gilbert*, 120 F. Supp. 2d at 151.

Johnson's challenge to the sufficiency of the incidents supporting this "non-statutory aggravating factor," as limited to "future dangerousness in prison," is denied.

### E.     *Victim Impact*

#### 1.     *Allegations of the factors*

The last two "non-statutory aggravating factors" alleged in the Third Notice Of Intent are the following:

> 16.     Victim Impact:
>
> The victim's personal characteristics; each of the victims had unique characteristics as individual human beings.
>
> * * *
>
> 17.     Victims' Family Member Impact:
>
> Impact on the victims' surviving family members; the family victims have suffered psychological and emotional harm, suffering, and loss as a result of the murders of the victims. The family members of each of the victims suffered mental and emotional injury, harm, and suffering as a result of the victims' murders. The victims' surviving family members['] pain and suffering was exacerbated by the years during which the victims' fates were unknown, their bodies undiscovered, and their remains deprived of a proper Christian burial.
>
> * * *

Third Notice Of Intent, § C.16-17. Each factor then alleges specific facts relating to each victim's "unique characteristics" and relating to each victim's family members' loss or suffering because of the victim's death, respectively.

114

Addendum p. 123

### 2. *Arguments of the parties*

Johnson contends that the prosecution has improperly severed into two separate "non-statutory aggravating factors" "victim impact" and "victims' family member impact," which really constitute only a single aggravator. She contends that the Supreme Court has authorized consideration of both "victim impact" and "victims' family member impact" as a *single* factor, and that severing the two aspects allows improper "double counting" of duplicative aggravating factors under the weighing scheme under the ADAA. In addition, Johnson asks me to exercise my inherent authority to impose reasonable limits on the "victim impact" evidence at the "penalty retrial," noting that I have remarked on the powerfulness of that evidence in her case and in Honken's case.

The prosecution responds that there is authority from the Eighth Circuit Court of Appeals that these factors may be asserted separately and that the two factors are not logically "duplicative," where they involve impact on the victims, on the one hand, and on the victims' family members, on the other. The prosecution also points out that Johnson has not articulated what sort of "limits" she believes that I should put on this evidence.

In reply, Johnson argues that the Supreme Court's ruling that evidence about the victim and the impact of the victim's murder on the victim's family is relevant to the decision of whether or not the death penalty should be imposed is authority that such information constitutes only a single class of aggravating evidence. She contends that the lack of objection to consideration of "victim impact" and "impact on victims' family members" in Eighth Circuit cases, where there was no objection to treating them separately, provides no authority for separate consideration of these duplicative factors.

### 3.	Analysis

I believe that Johnson reads far too much into the Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808 (1991), when she reads it as authority only for the *combined* consideration of "victim impact" and "impact on victims' family members" as a single aggravating factor.  In *Payne*, the Court explained,

> We granted certiorari . . . to reconsider our holdings in *Booth [v. Maryland*, 482 U.S. 496 (1987)], and [*South Carolina v.] Gathers*[, 490 U.S. 805 (1989),] that the Eighth Amendment prohibits a capital sentencing jury from considering "victim impact" evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family.

*Payne*, 501 U.S. at 817.  The Court ultimately held, as follows:

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar.  A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed.  There is no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, 501 U.S. at 827.

Johnson's error is the obverse of the one with which she charges the prosecution: The Court in *Payne* was never asked to consider whether "victim impact" and "victims' family member impact" constituted but a single aggravating factor, and she has pointed to nothing in *Payne* that suggests, for example, that the Court considered only the combination of the two sufficient to constitute an aggravating factor.  I believe that the proper question, not directly posed or answered in *Payne*, is whether "victim impact"

Addendum p. 125
Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 116 of 123
Appellate Case: 13-1739     Page: 126     Date Filed: 06/14/2013 Entry ID: 4045610

and "victims' family member impact" are "duplicative," if they are asserted as separate "non-statutory aggravating factors."

As I have elsewhere explained in more detail, the "duplicativeness" analysis as to two aggravating factors considers whether or not the two purportedly separate factors are based on the same facts, but those facts support different inferences, and whether the factors involve at least one distinct element, such that they form different aggravators, on the one hand, instead of skewing the jury's weighing of the aggravating and mitigating factors in deciding whether to impose the death penalty by placing too much weight on aggravators. *Bolden*, 545 F.3d at 625; *Paul*, 217 F.3d at 1001-02 (concluding that aggravating factors are not duplicative, even if they arise from the same factual circumstances, as long as each factor "is directed to entirely distinct aspects or components of the offense," and that a "heinous, cruel, or depraved" factor, directed at the violence of the attack by the defendant, and the "vulnerable victim," directed at the victim's age and physical inability to resist his attackers, were not "duplicative"). While the decision in *Payne* did not consider "duplicativeness," I find that it is nevertheless instructive.

This is so, because, in *Payne*, the Court described both the victim's personal characteristics, *see id.* at 817, and the victim's uniqueness as an individual human being, *see id.* at 823, as aspects of "victim impact." When the Court described "victims' family member impact," however—albeit as a kind of "victim impact"—the Court referred specifically to the effect or emotional impact of the crimes on the victim's family. *Id.* at 817, 821. While the same facts may be the basis for both "victim impact" and "victims' family member impact," those facts would support different inferences: inferences concerning *the victim's* character or uniqueness and what he or she lost, on the one hand, and inferences concerning the effect or emotional impact on *the victim's family members*, on the other. *Bolden*, 545 F.3d at 625. This is

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 117 of 123
Appellate Case: 13-1739     Page: 127     Date Filed: 06/14/2013 Entry ID: 4045610

comparable to the distinction between inferences about *the defendant's conduct* and inferences about *the victim* in *Paul* arising from the same evidence about the nature, circumstances, and effect of the attack on the victim. 217 F.3d at 1001-02. To put it another way, the effect or emotional impact of the victim's murder on the victim's family is a distinct aspect from the victim's personal characteristics and uniqueness as an individual human being, whether or not it is based, in part, on the victim's personal characteristics and uniqueness. Moreover, "impact on victim's family members" might focus exclusively on such "impersonal" facts as the loss of financial support ensuing from the victim's death, rather than on the victim's personal characteristics or uniqueness as an individual human being.

Johnson's challenge to the "victim impact" factor and the "victims' family member impact" factor as duplicative is denied.


## V.    *VINDICTIVENESS*

I turn, finally, to Johnson's contention that the Third Notice Of Intent is "vindictive." Johnson contends that inferences of "vindictiveness" arise from the following circumstances:   (1) expansion of the list of "non-statutory aggravating factors," some of which are new and some of which are based on incidents that were all well known to the prosecution long before the Second Notice Of Intent was filed in 2002; (2) the timing of the new allegations, which she contends is intended to punish her for successfully pursuing § 2255 relief; (3) the novel ways (Johnson alleges that there are five ways) in which the prosecution has artificially expanded the number of aggravating factors; and (4) "fairness" problems, as a matter of due process or scheduling, arising from assertion only now of very old incidents as separate aggravating factors and asserting them only after the Court had set a firm trial date. The prosecution counters that, if Johnson is asserting "vindictive prosecution," she has

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 118 of 123
Appellate Case: 13-1739    Page: 128    Date Filed: 06/14/2013 Entry ID: 4045610

not met the heavy burden she must carry to present "objective evidence" of vindictiveness, in light of the discretion afforded prosecutors in performing their duties. The prosecution also argues that it has properly and fairly taken advantage of the opportunity for a "redo" of the "penalty phase," just as Johnson has done, by reexamining and reformulating its case in light of hindsight and a fresh look at the available evidence and applicable law. The prosecution also asserts that any inference of "vindictiveness" dissipates completely, because it has properly asserted the various aggravating factors that Johnson challenges. In reply, Johnson asserts that prosecutors not only have an obligation to be "zealous," but an obligation to be fair and just to the defendant, but the prosecution's Third Notice Of Intent in this case strays well outside of the prosecution's obligation to serve justice.

At the very least, the standards applicable to claims of "vindictive prosecution" provide some guidance for the analysis of Johnson's present "vindictive death notice" claim. As the Eighth Circuit Court of Appeals has explained,

> In *North Carolina v. Pearce*, the Supreme Court explained that "[d]ue process of law … requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

*United States v. Graham*, 323 F.3d 603, 606 (8th Cir. 2003). Similarly, I believe that due process requires that vindictiveness play no part in the manner in which the prosecution attempts to obtain the death penalty against a defendant on a "penalty retrial" in a capital case after the defendant has successfully attacked the penalties imposed in the original "penalty phase" after her conviction.

As the Eighth Circuit Court of Appeals has also explained,

Addendum p. 128 119

We have stated that "[a] defendant may demonstrate prosecutorial vindictiveness in two ways." *United States v. Beede*, 974 F.2d 948, 951 (8th Cir. 1992). "First, a defendant may prove through objective evidence that the prosecutor's decision was intended to punish him or her for the exercise of a legal right." *Id*. (citing [*United States v.]* *Goodwin*, 457 U.S. [368,] 384 n.19, 102 S.Ct. 2485 [(1982)]). "Second, a defendant may in certain circumstances rely on a presumption of vindictiveness." *Id*.

*Graham*, 323 F.3d at 607. Any presumption of vindictiveness, in turn, may be overcome, for example, by the prosecution presenting objective evidence justifying the prosecutor's actions. *Id*. at 608.

Without attempting to ascertain who bears what burden or what presumptions might obtain for a claim of a "vindictive death notice," I am satisfied that the record does not present the inferences of vindictiveness of the Third Notice Of Intent that Johnson asserts. Where the detailed analysis, above, of Johnson's challenges to the Third Notice Of Intent indicates that, in almost every instance, the prosecution has properly asserted the challenged aggravating factors, I believe that there is "objective evidence" defeating any inference that the form and content of the Third Notice Of Intent are the result of vindictiveness. *Id*. Moreover, I cannot conclude that, even where my conclusions differed from the prosecution's positions, that the prosecution's positions were not reasonably justified. *Id*. at 608 (considering whether objective evidence justified the prosecution's actions). Indeed, at least in my view, it was more often the case that Johnson, rather than the prosecution, was mistaken about the permissible scope of the "penalty retrial," the preclusive effect of any determinations by the original jury, the manner in which specific aggravating factors could be asserted, and the sufficiency of specific aggravating factors as alleged. Nothing precluded the prosecution from taking a new approach to the case when I authorized a "penalty retrial," any more than Johnson was precluded from doing so, and no inference of

120
Addendum p. 129

"vindictiveness" can properly be drawn from the prosecution's efforts to take best advantage of the "redo" that I have afforded in this case, just as Johnson has attempted to do.

Moreover, I have little doubt that Johnson's current defense team also will frame the mitigating factors for the "penalty retrial" in such a way that there are not only many more of them than in the original "penalty phase," but in such a way that specific incidents or specific facts will be cast as separate mitigating factors. I think that this is very likely, because, in Johnson's § 2255 Motion, Johnson attempted to assert, as a belated amendment, a claim that her trial attorneys provided ineffective assistance by using multifaceted, overly-complicated yet incomplete mitigating factors for the jury to weigh, rather than simple, straightforward facts that encompassed all of the mitigation. *See Johnson*, 860 F. Supp. 2d at 873. Similarly, in my ruling on Johnson's § 2255 Motion, I acknowledged my mistake in failing to act on my misgivings that Johnson's original defense team had proposed multifaceted, complex, convoluted, and confusing mitigating factors that did not adequately guide the jurors in their death penalty determination, and I observed that, had Johnson timely asserted a claim that her trial attorneys provided ineffective assistance in drafting mitigating factors, I would likely have granted relief on such a claim. *See id.* at 875-76. In the Third Notice Of Intent, the prosecution appears to have taken to heart the same lesson by reformulating certain "non-statutory aggravating factors," such as the "uncharged criminal conduct" factors, as separate factors, rather than as a single, multifaceted factor. What Johnson perceives as "vindictiveness," appears to me, in most cases, to be "equal opportunity" refinement of the prosecution's "penalty phase" case, particularly where I have rejected her arguments that various "non-statutory aggravating factors" are "duplicative."

This final challenge to the Third Notice Of Intent is also denied.

121

Addendum p. 130

Appellate Case: 13-1739     Page: 131     Date Filed: 06/14/2013 Entry ID: 4045610

## *VI. CONCLUSION*

Although the motion before me specifically challenged certain aggravating factors in the Third Notice Of Intent, the parties' arguments raised a number of issues that were relevant to the greater context of the "penalty retrial." I urge the parties to take careful note of my resolution of those "contextual" issues, even though they are not reflected in the summary disposition, below, of Johnson's November 1, 2012, Motion To Dismiss Certain Statutory And Non-Statutory Aggravating Factors From The Government's Third Amended Notice Of Intent To Seek The Death Penalty (Challenge To Third Notice Of Intent) (docket no. 906).

UPON THE FOREGOING, Johnson's November 1, 2012, Motion To Dismiss Certain Statutory And Non-Statutory Aggravating Factors From The Government's Third Amended Notice Of Intent To Seek The Death Penalty (Challenge To Third Notice Of Intent) (docket no. 906) is **granted in part, and denied in part**, as follows:

1.      The part of the Challenge To Third Notice Of Intent asking that I strike the sixth "non-statutory aggravating factor" in the Third Notice Of Intent (docket no. 879), alleging that Johnson "committed perjury before the grand jury: October 27, 1993; March 5, 1996; July 23, 1996; and April 11, 2000," is **granted**, and that "non-statutory aggravating factor" is **stricken**;

2.      The part of the Challenge To Third Notice Of Intent asking that I strike the twelfth "non-statutory aggravating factor" in the Third Notice Of Intent (docket no. 879), alleging that Johnson "distributed controlled substances, specifically methamphetamine, after 1997," is granted, and that "non-statutory aggravating factor" is **stricken.**

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 122 of 123
Appellate Case: 13-1739     Page: 132     Date Filed: 06/14/2013 Entry ID: 4045610

3.     The Challenge To Third Notice Of Intent is **otherwise denied**.

**IT IS SO ORDERED**.

**DATED** this 16th day of January, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

Case 3:01-cr-03046-MWB   Document 951   Filed 01/16/13   Page 123 of 123
Appellate Case: 13-1739    Page: 133    Date Filed: 06/14/2013 Entry ID: 4045610

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ANGELA JOHNSON,

        Defendant.

No. CR 01-3046-MWB

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO RECONSIDER PORTIONS OF THE JANUARY 16, 2013, MEMORANDUM OPINION AND ORDER**

_____

This capital case, which is set for a "penalty retrial" beginning on June 3, 2013, is before me on the prosecution's February 15, 2013, Motion To Reconsider Portions Of The Court's Order Dated January 16, 2013 (docket no. 966). The challenged decision is my Memorandum Opinion And Order Regarding Defendant's Motion To Dismiss Certain Statutory And Nonstatutory Aggravating Factors From The Government's Third Amended Notice Of Intent To Seek The Death Penalty (docket no. 951), *published at United States v. Johnson*, ___ F.3d ___, 2013 WL 163463 (N.D. Iowa Jan. 16, 2013). The challenged portions of that decision are the following rulings: (1) that the new jury will not redetermine the defendant's eligibility for the death sentence; (2) that I will instruct the new jury that the defendant's only possible sentences are death or life without parole; and (3) that evidence of the defendant's future dangerousness outside of prison will be excluded. I reviewed the parties' positions and stated my own regarding this motion during a status conference on March 4, 2013, which was primarily devoted to matters relating to jury selection, and indicated that this written ruling would follow.

Addendum p. 133

As to the first issue that the prosecution asks me to reconsider, the prosecution has not convinced me that the applicable sentencing statute, former 21 U.S.C. § 848(g)-(r), prohibits a retrial of only the "penalty phase" of the trial, but not the "eligibility phase," or that case law permitting the "bifurcation" of the sentencing hearing into "eligibility" and "penalty" phases is unpersuasive or wrong. Thus, I reiterate my conclusion that the "penalty retrial" here is properly limited to a retrial of the "penalty phase," involving the determination of the existence of "non-statutory aggravating factors" and "mitigating factors" by the new jury and the new jury's weighing of the "statutory aggravating factors" found by the original jury with the "non-statutory aggravating factors" found by the new jury against any "mitigating factors" found by the new jury. The new jury will not redetermine whether or not the defendant is "eligible" for the death penalty on any counts.

In the alternative, the prosecution asked me to clarify what evidence will be admissible in the "penalty retrial," because the prosecution argues that the practical effect of my ruling limiting the scope of the "penalty retrial" is to preclude the prosecution from presenting certain evidence of substantial planning and premeditation of the July 1993 murders, as well as precluding the jury from considering a statutory aggravating factor of substantial planning and premeditation as to those murders. As I explained in the challenged ruling,

> In this case, the obvious exception to use of evidence from the original trial or live testimony is that any evidence of "substantial planning and premeditation" relating to any of the CCE murders other than the murder of Terry DeGeus in **Count 10** will not be admissible *for the purpose of reopening the consideration of that "statutory aggravating factor" as to those other murders*. Admitting trial evidence, or any other evidence, of "substantial planning and premeditation" *for that purpose* would be unfairly prejudicial, where that "statutory aggravating factor" is not properly at issue as to those Counts in light of the standing "eligibility phase" verdicts.

Case 3:01-cr-03046-MWB   Document 973   Filed 03/05/13   Page 2 of 4
Appellate Case: 13-1739    Page: 135    Date Filed: 06/14/2013 Entry ID: 4045610

January 16, 2013, Memorandum Opinion And Order (docket no. 951) at 21-22, *Johnson*, ___ F.3d at ___, 2013 WL 163463 at *10 (emphasis added). At the status conference, I observed that I was unable to recall any evidence of "substantial planning and premeditation" relating to the July 1993 murders that would not have been admissible for some other proper purpose in the "penalty retrial," including demonstrating the defendant's culpability, and the defendant was unable to identify any such evidence. Thus, I would be surprised if there is any such evidence. Saying so does not preclude the defendant from filing a pretrial motion in limine, however, if she identifies *specific evidence* that she believes is relevant *only* to "substantial planning and premeditation" of the July 1993 murders or that she believes is substantially more prejudicial than probative on an issue properly before the jury in the "penalty retrial." *See* Former 21 U.S.C. § 848(j).

As to the second and third issues raised by the prosecution in its Motion To Reconsider, I stand firm on my prior conclusions that I will instruct the jury that the defendant's only possible sentences are death or life without parole and that evidence of the defendant's future dangerousness outside of prison will be excluded. The prosecution has not convinced me that my original reasons for these conclusions are suspect or wrong. Moreover, the defendant has now indicated that she will stipulate that the available sentences are death or life without parole and that she will not seek any lesser sentence, essentially mooting the prosecution's grounds for seeking to reopen these issues.

For her part, in her February 28, 2013, Resistance To Government's Motion To Reconsider Portions Of The Court's Order Dated January 16, 2013 (docket no. 969), Johnson argues that, to the extent that I reconsider any portion of the pertinent ruling, I should also reconsider my ruling allowing the government to subdivide its single unadjudicated misconduct aggravator into multiple aggravators. *See* January 16, 2013, Memorandum Opinion And Order (docket no. 951) at 121, *Johnson*, ___ F.3d at ___, 2013 WL 163463 at *63. Although I do not retreat from my conclusion that the

3

Addendum p. 135

Case 3:01-cr-03046-MWB   Document 973   Filed 03/05/13   Page 3 of 4
Appellate Case: 13-1739   Page: 136   Date Filed: 06/14/2013 Entry ID: 4045610

defendant has not raised an inference of "vindictiveness" in the prosecution's formulation of "non-statutory aggravating factors," I now question whether "mitigating factors" and "non-statutory aggravating factors" are necessarily subject to "symmetrical" standards, in light of authorities that Johnson has cited. *Compare, e.g., McCleskey v. Kemp*, 481 U.S. 279, 305-06 (1987) (mitigating circumstances include *any relevant circumstances*) *with, e.g., Stringer v. Black*, 503 U.S. 222 (1992) (there is an Eighth Amendment prohibition on artificially inflating the number of aggravating factors). Consequently, if the defendant can demonstrate that specific separate "non-statutory aggravating factors" are so closely-related factually or that they are probative of essentially the same issue such that treating them as separate factors improperly inflates the number of "aggravating factors," I will likely require the prosecution to reformulate those factors into a single "umbrella" factor. For example, separate incidents of uncharged criminal conduct may more properly be reformulated as a single "uncharged criminal conduct" "non-statutory aggravating factor." On the other hand, I will likely allow the defendant more leeway in formulating related incidents or factors as separate "mitigating factors."

THEREFORE, the prosecution's February 15, 2013, Motion To Reconsider Portions Of The Court's Order Dated January 16, 2013 (docket no. 966) is **denied** in its entirety.

**IT IS SO ORDERED**.

**DATED** this 5th day of March, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

Addendum p. 136

4

## CERTIFICATE OF FILING AND SERVICE

I certify that on June 14, 2013, I, Sali Van Weelden, Legal Assistant for the Attorney for Plaintiff-Appellant, the United States of America, electronically filed the foregoing addendum with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system.  The electronic addendum attached to the brief, if any, have been scanned for viruses using Trend Micro OfficeScan and the scan showed no virus.

SEAN R. BERRY
Acting United States Attorney

BY: _s/ S. Van Weelden_

Copies to:
Mr. Michael Burt
1000 Brannan Street, Suite 400
San Francisco, California 94103