# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1739

_____

United States of America

*Plaintiff - Appellant*

v.

Angela Johnson

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: January 16, 2014
Filed: August 25, 2014

_____

Before WOLLMAN, BYE, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Angela Johnson was convicted of five counts of aiding and abetting murder in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. She was sentenced to death for four of the murders and to life imprisonment without possibility of parole for the fifth. The district court vacated the sentences after it determined that Johnson's trial counsel had rendered ineffective assistance during the sentencing hearing.

Appellate Case: 13-1739     Page: 1     Date Filed: 08/25/2014 Entry ID: 4189056

The district court limited the scope of the sentencing rehearing. It ordered that the original jury's decision that Johnson was eligible for the death penalty would stand and that the new jury would decide only the penalty to be imposed for each count of conviction. In doing so, the district court disallowed the government from presenting evidence to prove an aggravating factor that the original jury did not unanimously find. The government filed this interlocutory appeal from the district court's order, arguing that 21 U.S.C. § 848 requires a full sentencing rehearing—that is, that the statute requires the new jury to decide whether Johnson is eligible for the death penalty and whether the death penalty should be imposed. Relatedly, the government argues that the district court erred in excluding evidence. We vacate the district court's order in part and remand the case for further proceedings.

## I. Background

### A. Statutory Background

Under the Anti-Drug Abuse Act (ADAA), the government may seek the death penalty for the offense of murder in furtherance of a continuing criminal enterprise. See 21 U.S.C. § 848(e)(1)(A), § 848(h). The government must file notice of its intent to do so and set forth the aggravating factors that it will try to prove as the basis for the death penalty. § 848(h). If the jury returns a guilty verdict, the district court must "conduct a separate sentencing hearing to determine the punishment to be imposed." § 848(i)(1). If redetermination of a sentence under the ADAA is necessary, the sentencing rehearing must be conducted "before a jury impaneled for the purpose of the hearing[.]" § 848(i)(1)(B)(iv). We have held that a district court may bifurcate a capital sentencing hearing into an "eligibility phase" and a "[penalty-]selection phase." United States v. Bolden, 545 F.3d 609, 618-19 (8th Cir. 2008) (applying the Federal Death Penalty Act, 18 U.S.C. § 3593).

-2-

The ADAA sets forth what the jury must consider and decide during the sentencing hearing. "The jury . . . shall consider all information received during the hearing. It shall return special findings identifying any aggravating factors set forth in subsection (n) of this section, found to exist." § 848(k). The defendant is eligible for the death penalty only if the jury unanimously finds that the government has proved at least one of the aggravating factors set forth in § 848(n)(1) and at least one of the aggravating factors set forth in § 848(n)(2)-(12). § 848(k) (setting forth the findings the jury must return and requiring that "[a] finding with respect to any aggravating factor must be unanimous"); see § 848(j) (requiring the government to prove beyond a reasonable doubt the existence of any aggravating factor). If the jury finds the defendant eligible, it then decides whether the death penalty should be imposed. In making that decision, the jury considers whether the government proved any of the non-statutory aggravating factors that were alleged in the notice of intent and whether the defendant proved any mitigating factors. See § 848(j) (requiring the defendant to prove by a preponderance of the evidence the existence of any mitigating factor); § 848(k) (providing that a finding with respect to a mitigating factor may be made by one or more of the members of the jury, who can then weigh that factor). The jury must then weigh the statutory and non-statutory aggravating factors that it unanimously found to exist, along with any mitigating factors that any juror found to exist, to determine the defendant's sentence.[1]

---

[1]The sentencing procedures set forth in 21 U.S.C. § 848 (2000) were repealed after Johnson was convicted and sentenced. See USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 221, 120 Stat. 192, 231 (2006) (striking 21 U.S.C. § 848(g)-(p)). The district court has ruled that Johnson's sentencing rehearing "will proceed to a 'penalty retrial,' pursuant to the provisions of former § 848(g)-(r)[.]" D. Ct. Order of Oct. 25, 2012, at 6. The parties do not challenge that ruling on appeal, and this opinion applies the provisions of § 848 that were codified in 2000 and later repealed.

Appellate Case: 13-1739     Page: 3     Date Filed: 08/25/2014 Entry ID: 4189056

## B. Factual and Procedural Background

In July 1993, Johnson helped Dustin Honken abduct and kill Greg Nicholson, Lori Duncan, and Duncan's young daughters, Kandi and Amber. A few months later, she helped Honken kill Terry DeGeus. Both Nicholson and DeGeus had distributed methamphetamine that they had purchased from Honken and were killed after police began investigating their involvement in the drug enterprise led by Honken. Johnson was charged with five counts of aiding and abetting murder in furtherance of a continuing criminal enterprise, among other crimes.

The government filed its notice of intent to seek the death penalty, setting forth the statutory and non-statutory aggravating factors that it would seek to prove at the sentencing hearing. After the jury found Johnson guilty of the murder charges, the district court held a separate sentencing hearing to determine the punishment to be imposed.[2] The district court bifurcated the sentencing hearing, so that the jury was first required to decide whether Johnson was eligible for the death penalty and then, if it found her eligible, to decide whether she should be sentenced to death or life imprisonment.

During the eligibility phase of the sentencing hearing, the jury heard only argument from counsel; no evidence was presented. The jury found that Johnson was eligible for the death penalty on each count of conviction because the government had proved certain statutory aggravating factors. Specifically, the jury found that Johnson

---

[2]Johnson also was convicted of five counts of aiding and abetting murder while engaging in a drug conspiracy. Those convictions were vacated as multiplicitous of the convictions for aiding and abetting murder in furtherance of a continuing criminal enterprise. See United States v. Johnson, 495 F.3d 951, 980-81 (8th Cir. 2007) (remanding with instructions to vacate the multiplicitous convictions and sentences); D. Ct. Order of June 11, 2009 (vacating the convictions and sentences for conspiracy murder).

Appellate Case: 13-1739     Page: 4     Date Filed: 08/25/2014 Entry ID: 4189056

had "intentionally engaged in conduct intending that [each victim] be killed or that lethal force be employed against the victim, which resulted in the death of the victim." See § 848(n)(1)(c). With respect to Nicholson, Lori Duncan, and DeGeus, the jury also found that Johnson had committed each offense in an especially heinous, cruel, or depraved manner in that each offense involved torture and serious physical abuse to the victim. See § 848(n)(12). The jury determined that the children, Kandi and Amber, were particularly vulnerable due to their young ages. See § 848(n)(9). Although the government had alleged that Johnson committed each offense after substantial planning and premeditation, the jury unanimously found that factor only as to the murder of DeGeus. See § 848(n)(8).

After the jury returned its eligibility verdict, the government presented evidence to support the non-statutory aggravating factors that it had alleged, and Johnson presented mitigating evidence. The jury was instructed to weigh the statutory aggravating factors that it had found in the eligibility phase, together with any of the non-statutory aggravating factors and mitigating factors that it found in the penalty-selection phase, to determine whether to impose a sentence of death or life imprisonment on each count. The jury returned a sentence of life imprisonment for the murder of Nicholson and sentences of death for the murders of Lori Duncan, Kandi Duncan, Amber Duncan, and DeGeus.

On direct appeal, we affirmed the five counts of conviction for aiding and abetting murder in furtherance of a continuing criminal enterprise and the sentences imposed on those counts. United States v. Johnson, 495 F.3d 951 (8th Cir. 2007). The United States Supreme Court denied Johnson's petitions for certiorari and for rehearing. Johnson v. United States, 555 U.S. 828 (2008) (denying cert.), 555 U.S. 1081 (2008) (denying rehearing).

After her direct appeal concluded, Johnson moved to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. The district court held four evidentiary

-5-

hearings, spanning eighteen days. After considering the witnesses' testimony, extensive documentary evidence, and the parties' briefing and argument, the district court granted Johnson's motion in part. The district court concluded that Johnson's counsel had failed to investigate and present certain mitigating evidence. The order gave the government sixty days to request a new sentencing hearing or to withdraw the notice of intent to seek the death penalty. The district court indicated that if the notice were withdrawn, it would enter a sentence of life imprisonment without parole.

The government thereafter requested a new sentencing hearing. It relied upon the same statutory aggravating factors that were submitted to the original jury during the eligibility phase of Johnson's sentencing hearing, including whether Johnson had substantially planned and premeditated the five murders. As set forth above, the original jury had returned a unanimous verdict on that factor only as to the murder of DeGeus.

Johnson moved to dismiss the substantial planning and premeditation statutory aggravating factor, among others. She argued that the new jury should be bound by the original jury's findings with respect to the statutory aggravating factors, including the original jury's finding that the government had not proved beyond a reasonable doubt that Johnson had substantially planned and premeditated the murders of Nicholson and the Duncans. Johnson thus argued that the original jury's determination that she was eligible for the death penalty should stand and that only the penalty-selection phase of the sentencing hearing should be retried. The government responded that § 848 requires one sentencing rehearing, even if the original sentencing hearing was bifurcated and there was reversible error only in the penalty-selection phase. The district court rejected the government's argument:

> [T]he [sentencing rehearing] here is properly limited to a retrial of the "penalty phase," involving the determination of the existence of "non-statutory aggravating factors" and "mitigating factors" by the new jury

-6-

and the new jury's weighing of the "statutory aggravating factors" found by the original jury with the "non-statutory aggravating factors" found by the new jury against any "mitigating factors" found by the new jury.

D. Ct. Order of Jan. 16, 2013, at 13-14. Consistent with this limitation, the district court ruled that it would not admit "any evidence of 'substantial planning and premeditation' relating to any of the [continuing criminal enterprise] murders other than the murder of Terry DeGeus . . . for the purpose of reopening the consideration of that 'statutory aggravating factor' as to th[e] other murders." Id. at 21.

The government appeals from the district court's order limiting the sentencing rehearing to the penalty-selection phase and excluding evidence offered to prove that Johnson substantially planned and premeditated the murders of Nicholson, Lori Duncan, Kandi Duncan, and Amber Duncan.

## II. Jurisdiction

Johnson argues that we do not have jurisdiction to decide this interlocutory appeal. Title 18, United States Code, section 3731, allows the government to appeal from orders suppressing or excluding evidence in certain circumstances:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

Johnson argues that the district court's order did not suppress or exclude evidence because the order indicated that the government would be permitted to introduce the evidence underlying the substantial planning and premeditation of the murders, so

-7-

long as it was not introduced for the purpose of proving that statutory aggravating factor as to the murders of Nicholson and the Duncans. Section 3731, however, does not require that the order suppress or exclude evidence for all purposes. "Such a construction . . . would contravene not only § 3731's plain language, but also Congress's express desire to allow Government appeals from *all* pretrial orders suppressing or excluding evidence in criminal proceedings." United States v. Delatorre, 157 F.3d 1205, 1208-09 (10th Cir. 1998) (citing S. Rep. No. 91-1296, at 18 (1970)); see United States v. Wilson, 420 U.S. 332, 337 (1975) ("[T]he legislative history [of § 3731] makes it clear that Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit."). The district court here entered an order excluding evidence, and there is no dispute that the remaining requirements of § 3731 have been met. We thus have jurisdiction to consider the government's appeal.

## III. Discussion

To determine whether the district court's exclusion of evidence was proper, we must first consider whether § 848 permits a partial sentencing rehearing before the new jury or whether the statute requires the new jury to decide (1) whether the defendant is eligible for the death penalty and (2) whether the defendant should be sentenced to death. If the statute requires a full sentencing rehearing, the district court erred in excluding categorically any evidence offered to prove that Johnson substantially planned and premeditated the murders of Nicholson and the Duncans. We review the antecedent question of statutory interpretation *de novo*. See United States v. Tebeau, 713 F.3d 955, 959 (8th Cir. 2013) (reviewing *de novo* the interpretation and application of a statute); see also Delatorre, 157 F.3d at 1208 (reviewing *de novo* "the legal questions involved in this appeal").

Johnson argues that the district court properly granted partial retrial of the sentencing hearing. She contends that the district court tailored the sentencing

Appellate Case: 13-1739     Page: 8     Date Filed: 08/25/2014 Entry ID: 4189056

rehearing to address the constitutional error in Johnson's first trial, ineffective assistance of counsel during the penalty-selection phase of the sentencing hearing. Because a district court may, as a matter of trial management, bifurcate a sentencing hearing, see Bolden, 545 F.3d at 618-19, Johnson argues that the district court here is able to limit the sentencing rehearing to the penalty-selection phase. We disagree.

The ADAA provides that, in certain circumstances, the jury that determines a defendant's sentence may be different from the jury that determined the defendant's guilt. See § 848(i)(1)(B)(iii)-(iv). For example, when the original jury has been discharged for good cause or when a defendant's original sentence has been vacated and must be redetermined, the district court must conduct a sentencing hearing "before a jury impaneled for the purpose of the hearing." Id. In those cases, the information presented to the new jury may include transcripts and exhibits from the trial on the defendant's guilt. § 848(j). The statute thus contemplates that, in certain circumstances, two different juries will serve on a capital case—one jury will decide the defendant's guilt, and a different jury will decide the defendant's sentence—and it provides guidance regarding the information that may be presented to the jury that will decide the defendant's sentence.

In contrast, the ADAA requires that one jury decide a defendant's sentence. The statute does not contemplate a capital sentencing procedure that would allow one jury to determine the defendant's eligibility for the death sentence and a different jury to decide the defendant's punishment. Sections 848(g) through (o) repeatedly and unambiguously refer to "a jury" or "the jury" and "a hearing" or "the hearing," and the sentencing procedures set forth in the ADAA do not permit a capital sentence to be imposed based on the findings of two different juries made after two separate sentencing hearings.

For the jury to complete all the tasks § 848(j) and (k) require, the district court must conduct a full sentencing rehearing. As § 848(k) provides, the jury must

Appellate Case: 13-1739     Page: 9     Date Filed: 08/25/2014 Entry ID: 4189056

consider all information received during the sentencing hearing, return its findings as to the statutory aggravating factors, and, if necessary, decide the defendant's punishment by considering whether the statutory and non-statutory aggravating factors outweigh any mitigating factors. Section 848(k) also explains that the jury's findings with respect to the aggravating factors must be unanimous, but that findings with respect to mitigating factors need not be. Moreover, different burdens of proof apply to aggravating and mitigating factors. § 848(j). Accordingly, a jury charged with determining a defendant's sentence must consider the evidence, apply the correct standards, make certain findings, weigh the aggravating and mitigating factors, and return its verdict. To fulfill these responsibilities, the new jury cannot be bound by the findings of the original jury.

The district court's approach to Johnson's sentencing rehearing contradicts the procedure set forth in § 848(j) and (k) in that the new jury would not decide whether the government has proved beyond a reasonable doubt the statutory aggravating factors set forth in the notice of intent to seek the death penalty. The new jury would be ordered to accept the eligibility-phase findings of the original jury. It would be required to decide Johnson's sentence by weighing the original jury's findings on the statutory aggravating factors with any findings it makes on the non-statutory aggravating factors and mitigating factors. Because this approach does not follow the procedures set forth in § 848(j) and (k), it violates § 848(g), which allows the imposition of the death sentence "only if a hearing is held in accordance with this section[,]" and § 848(i), which requires the rehearing to be conducted "before a jury impaneled for the purpose of the hearing."

The new jury must determine for itself whether the government has proved the statutory aggravating factors alleged in the notice of intent to seek death penalty. If it finds that the defendant is eligible for the death penalty, it must weigh those statutory aggravating factors it found beyond a reasonable doubt with any non-statutory aggravating factors it finds beyond a reasonable doubt against any

-10-

mitigating factors any juror finds.  The new jury must engage in the entire process of finding and weighing those factors to determine the defendant's sentence.  We thus hold that the district court must conduct a full sentencing rehearing.

Our holding accords with our precedent that a district court may bifurcate a capital sentencing hearing.  See Bolden, 545 F.3d at 618-19.  When a district court exercises its discretion to bifurcate a sentencing hearing, the eligibility phase and penalty-selection phase together comprise the sentencing hearing prescribed by the statute.  Bifurcation thus does not run afoul of the ADAA's sentencing procedures.  See id. at 618 (rejecting the government's argument that bifurcation is statutorily impermissible and remarking that "the statute contemplates but does not require a single penalty phase proceeding").  Although a bifurcated hearing is conducted in two phases, the district court conducts only one sentencing hearing and only one jury decides whether the defendant is eligible for the death penalty and whether the death penalty should be imposed.

## IV.  Conclusion

We hold that the district court must conduct a full sentencing rehearing and that it erred in categorically excluding evidence offered to prove that Johnson substantially planned and premeditated the murders of Nicholson, Lori Duncan, Kandi Duncan, and Amber Duncan.  The case is remanded for proceedings consistent with this opinion.

BYE, Circuit Judge, dissenting.

I respectfully dissent.

The government attempts to present an interlocutory appeal, stemming from the district court's grant of habeas corpus relief.  The district court found Angela

Appellate Case: 13-1739     Page: 11     Date Filed: 08/25/2014 Entry ID: 4189056

Johnson received ineffective assistance of counsel only in the final, penalty-selection phase of her capital trial; therefore, the district court only granted a rehearing of that phase. Johnson v. United States, 860 F. Supp. 2d 663, 873 (N.D. Iowa 2012). Pursuant to this relief, the district court ordered evidence excluded as it pertained to the death-eligibility phase, because the district court would not retry Johnson's eligibility for the death penalty. The government appeals that order.

Interlocutory appeals are not generally heard from grants of habeas corpus relief because there is no final decision until a new sentence has been imposed. See Andrews v. United States, 373 U.S. 334, 340 (1963). The government, however, asks us to review its interlocutory appeal on three alternative grounds: (1) the text of the Criminal Appeals Act, codified at 18 U.S.C. § 3731, (2) the collateral order doctrine, or (3) by granting a writ of mandamus. I do not find the appeal reviewable under the first two, and I would not grant a writ of mandamus. Accordingly, I would dismiss the appeal. Because the majority addresses the merits of the government's appeal, I will also explain why, assuming arguendo we had jurisdiction, I would affirm.

I

The government's three asserted bases for jurisdiction do not provide this court jurisdiction to hear the government's interlocutory appeal.

A

The majority accepts the government's invitation to find jurisdiction in the text of the Criminal Appeals Act. This statute expressly contemplates interlocutory appeals from "a criminal case[.]" 18 U.S.C. § 3731. Here, instead, we are presented with an interlocutory appeal from a grant of habeas corpus. The Supreme Court has made clear habeas corpus "is a separate proceeding, independent of the original

-12-

Appellate Case: 13-1739     Page: 12     Date Filed: 08/25/2014 Entry ID: 4189056

criminal case." Andrews, 373 U.S. at 338. Therefore, the Supreme Court ruled the "Criminal Appeals Act has no applicability to such a proceeding." Id.

Sister circuits have concluded Andrews forecloses any appeal stemming from a grant of habeas corpus until after the inmate has been resentenced. See Sampson v. United States, 724 F.3d 150, 158 (1st Cir. 2013) (rejecting jurisdiction based on 18 U.S.C. § 3731 because "Andrews is binding on us."); United States v. Stitt, 459 F.3d 483, 488 (4th Cir. 2006) (Williams, J., concurring) ("[T]he purpose of a capital sentence hearing . . . is to determine the proper punishment to be imposed on a criminal wrongdoer, not to determine whether a defendant should be convicted of the charged crime. Accordingly, under Andrews, a district court's order granting a future capital resentencing hearing . . . is not appealable."); United States v. Hammer, 564 F.3d 628, 634 (3d Cir. 2009) (citing approvingly the concurring opinion in Stitt, concluding a habeas corpus "proceeding is not final until the prisoner is resentenced."). I agree with the holdings of these circuits.

Those cases did not present evidentiary issues, as the majority believes this case does. The government argues it is appealing the exclusion of evidence. The evidence, however, was only excluded as it pertained to Johnson's eligibility for the death penalty and, indeed, may be introduced in the new penalty selection phase. The government's appeal, therefore, is more properly understood as an appeal of the habeas corpus relief because the government seeks to change the relief granted by the district court. For this reason, I cannot ignore the Supreme Court's plain rule: the Criminal Appeals Act does not apply to a habeas corpus proceeding.

B

The government also seeks jurisdiction under the collateral order doctrine. For us to hear an interlocutory appeal "under the collateral order doctrine, the decision appealed from must satisfy three requirements: (1) it must conclusively determine the

-13-

disputed question; (2) it must resolve an important issue completely separate from the merits of the action; and (3) the decision must be effectively unreviewable on appeal from a final judgment." Howard v. Norris, 616 F.3d 799, 802 (8th Cir. 2010) (citing Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 130 (2009)). The Supreme Court has warned courts to limit appellate review under the collateral order doctrine, lest the exception "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." Mohawk Indus., Inc., 558 U.S. at 106 (2009) (citation and quotation omitted).

Because the evidence which the government seeks to introduce relates directly to Johnson's eligibility for the death penalty, the government's issue on appeal is not completely separate from the merits. As a result, the government cannot satisfy the second prong necessary to obtain review under the collateral order doctrine.

C

Finally, the government asks this court to issue a writ of mandamus, compelling a reversal of the district court's order in the most extraordinary fashion our judicial system allows. The writ is "among the most potent weapons in the judicial arsenal." Will v. United States, 389 U.S. 90, 107 (1967). For a court to grant this extraordinary relief, the party seeking the writ (1) must "have no other adequate means to attain the [desired] relief," and (2) "must satisfy the burden of showing [its] right to issuance of the writ is clear and indisputable." Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81 (2004) (internal citations and quotation marks omitted). Further, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." Id. at 381.

Long-standing law indicates "the writ of mandamus may not be made to perform the office of an appeal." United States v. Judges of U.S. Court of Appeals,

-14-

85 F. 177, 180 (8th Cir. 1898); <u>see also</u> <u>Bath Cnty. v. Amy</u>, 80 U.S. 244, 249 (1871) ("[T]he writ cannot be used to confer a jurisdiction which the Circuit Court would not have without it."). A writ of mandamus "should not be used as a substitute for interlocutory appeal. This is especially true in criminal cases." <u>Duffy v. Dier</u>, 465 F.2d 416, 417-18 (8th Cir. 1972) (internal citation omitted).

Because I have separately concluded we do not have jurisdiction to hear this interlocutory appeal, and because the government sought alternative jurisdiction in the writ as a substitute for an interlocutory appeal, I would not grant a writ to create jurisdiction where there is none. I also believe the writ would be inappropriate in these circumstances, as I do not find the district court erred in its order.

II

The majority's ruling also troubles me because, in effect, it vacates an errorless jury decision. To that end, I will explain why I do not find the district court erred and, assuming arguendo we had jurisdiction, would affirm.

In Johnson's original criminal case, the district court bifurcated[3] the sentencing phase to "cure . . . potential unfair prejudice, confusion, and misdirection" relating to the evidence presented to determine Johnson's eligibility for the death penalty. <u>United States v. Johnson</u>, 362 F. Supp. 2d 1043, 1110 (N.D. Iowa 2005) <u>aff'd in part</u>, 495 F.3d 951 (8th Cir. 2007).[4] We have endorsed such a bifurcation as a

---

[3]Because a federal capital case is already bifurcated into a guilt phase and a penalty phase, some courts have referred to this situation as trifurcation, where there is (1) a guilt phase, (2) a death-eligibility phase, and (3) a penalty-selection phase. This appeal does not concern Johnson's guilt; therefore, I use bifurcation to mean the bifurcation of the sentencing phase.

[4]On appeal, we noted the sentencing bifurcation, but did not discuss its appropriateness. <u>Johnson</u>, 495 F.3d at 960.

-15-

Appellate Case: 13-1739     Page: 15     Date Filed: 08/25/2014 Entry ID: 4189056

discretionary trial management device.  <u>United States v. Bolden</u>, 545 F.3d 609, 618 (8th Cir. 2008) (citing approvingly <u>United States v. Fell</u>, 531 F.3d 197, 240 n. 28 (2d Cir. 2008)).  Bifurcating the sentencing phase is done to allay concerns over the relaxed evidentiary rules governing the jury's determination of eligibility.  <u>See</u> <u>United States v. Jordan</u>, 357 F. Supp. 2d 889, 903-04 (E.D. Va. 2005); <u>see generally</u> Michael D. Pepson & John N. Sharifi, <u>Two Wrongs Don't Make A Right: Federal Death Eligibility Determinations and Judicial Trifurcations</u>, 43 Akron L. Rev. 1, 49 (2010).

In <u>Bolden</u>, we found the district court did not abuse its discretion in denying a motion to bifurcate the sentencing phase.  545 F.3d at 618.  In support of this conclusion, we commended the district court for "carefully instruct[ing] the jury" to not consider certain evidence for death-eligibility.  <u>Id.</u> at 619.  In other words, we have recognized the evidentiary concerns which prompt some courts, in their discretion, to bifurcate a capital sentencing hearing.  By reversing a grant of habeas corpus today – one written to maintain the integrity of the original decision to bifurcate the sentencing hearing – I fear we have made our endorsement of sentencing bifurcation hollow.

The government argues the eligibility and selection phases are only properly understood as a single hearing, a sentencing phase.  The statute under which Johnson was sentenced contemplates separate hearings to determine guilt and sentencing.  21 U.S.C. § 848(i)(1).  Though the statute prefers the same jury hear the guilt and sentencing phases, <u>see</u> 21 U.S.C. § 848(i)(1)(A) (not listing any predicates for using the same jury), a jury empaneled for the sole purpose of sentencing is allowed if "the jury which determined the defendant's guilt has been discharged for good cause."  21 U.S.C. § 848(i)(1)(B)(3).  There is no dispute the previous jury was discharged for good cause.

The government argues the statute's text, however, demands a jury must be empaneled to hear *both* the eligibility *and* selection phases of a sentencing hearing.

-16-

I do not find such a demand in the statute; I do find, however, the possibility of bringing in a new jury, one bound by the findings of a previous jury. The statute does not prohibit bifurcation of the sentencing phase, nor does our case law. See Bolden, 545 F.3d at 618. Further, because the statute contemplates separate juries for the separate phases, I find the statute considers the separate phases – whether two or three – as distinct.

In its grant of habeas corpus, the district court found trial counsel was constitutionally ineffective only in the selection phase of Johnson's capital trial. The district court then followed the Supreme Court's mandate to "tailor[]" relief "to the injury suffered from the constitutional violation." United States v. Morrison, 449 U.S. 361, 364 (1981). To that end, the district court ordered a new proceeding to determine only whether Johnson should be put to death. This new proceeding would take as res judicata Johnson's guilt and eligibility for the death penalty, as determined by the jury in phases of the proceedings below which were without error. For this new proceeding, the government seeks to introduce evidence to prove statutory aggravating factors. These factors would be determinative in the eligibility phase of the trial. Because the district court's tailoring did not require eligibility to be retried, however, the district court ordered that evidence excluded, but only as it pertained to eligibility. The district court did not exclude the evidence from introduction at the selection phase. The majority believes this order effectively excluded evidence and vacates the order, but in so doing remands for a new eligibility *and* selection phase, even though Johnson's constitutional rights were not injured before the jury in her eligibility phase.

In this eligibility phase, the government needed to prove at least one of the following statutory aggravating factors: (1) all five murders showed substantial planning and premeditation, (2) the adult victims suffered substantial abuse, and (3) the child victims were vulnerable. The jury found Johnson eligible for the death penalty (1) for substantial planning and premeditation with respect to only one

-17-

murder, (2) because the adult victims suffered substantial abuse, and (3) because the children were vulnerable victims.  With today's opinion, the government gets a second bite at the apple – a chance to retry Johnson for death eligibility regarding the substantial planning and premeditation of the other four murders.

III

The district court in the criminal case permissibly bifurcated the sentencing hearing and, in so doing, created two distinct phases.  After  finding a constitutional injury occurred only in the latter of those two distinct phase, the district court permissibly tailored habeas corpus relief to only retry the phase in which error occurred.

In other words, a jury lawfully has found Johnson eligible for the death penalty.  No errors tainted that jury's decision.  A jury then found Johnson deserved the death penalty, but that decision was tainted by the ineffective assistance of Johnson's trial counsel.  It is only that jury decision we must vacate.  This is what the district court has done.  Therefore, assuming we had jurisdiction, I would affirm the district court's order granting habeas corpus relief.

_____

-18-